# EXHIBIT "14"

Westlaw.

Page 1

Slip Copy, 2012 WL 3040043 (Ohio App. 8 Dist.), 2012 -Ohio- 3354
**(Cite as: 2012 WL 3040043 (Ohio App. 8 Dist.))**

H

CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.
Larry Elliot **KLAYMAN**, Plaintiff–Appellant
v.
Stephanie Ann **LUCK**, Defendant–Appellee.

Nos. 97074, 97075.
Decided July 26, 2012.

**Background:** Mother moved to modify child support and temporarily suspend father's visitation with children. The Common Pleas Court, Cuyahoga County, No. D–316840, granted mother's motion and found father in contempt. Father appealed.

**Holdings:** The Court of Appeals, Mary J. Boyle, J., held that:
(1) choice of law clause in marriage settlement agreement did not apply to mother's motion for modification of child support obligations and visitation;
(2) trial court in custody dispute did not abuse its discretion when it denied father's motion to disqualify the magistrate;
(3) trial court in child custody dispute was not required to interview the children; and
(4) trial court did not abuse its discretion in awarding mother $325,000 in attorney fees.

Affirmed.

West Headnotes

[1] **Child Custody** 76D ⌐574

76D Child Custody
    76DIX Modification
        76DIX(B) Grounds and Factors
            76Dk570 Agreements
                76Dk574 k. Operation and Effect. Most Cited Cases

Choice of law clause in marriage settlement agreement, which stated that the agreement was governed by Virginia law, did not apply to mother's motion for modification of child support obligations and visitation; under the terms of the agreement, the clause only applied to the validity, enforceability and interpretation of the agreement.

[2] **Justices of the Peace** 231 ⌐57(1)

231 Justices of the Peace
    231III Civil Jurisdiction and Authority
        231k57 Disqualification to Act
            231k57(1) k. In General. Most Cited Cases

Trial court in custody dispute did not abuse its discretion when it denied father's motion to disqualify the magistrate; the trial court independently reviewed the magistrate's decision and found no bias or prejudice because it overruled father's objections, adopted the magistrate's decision as its own, and ordered it into law, and father did not argue that the trial court was biased or failed to independently review the magistrate's findings.

[3] **Child Custody** 76D ⌐455

76D Child Custody
    76DVIII Proceedings
        76DVIII(B) Evidence
            76Dk453 Presumptions

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 3040043 (Ohio App. 8 Dist.), 2012 -Ohio- 3354
**(Cite as: 2012 WL 3040043 (Ohio App. 8 Dist.))**

76Dk455 k. Fitness. Most Cited Cases

Magistrate in child custody proceeding was free to draw an adverse inference from father's decision not to testify regarding allegations that he engaged in inappropriate touching of children.

**[4] Child Custody 76D ⇐427**

76D Child Custody
    76DVIII Proceedings
        76DVIII(A) In General
            76Dk427 k. In Camera Examination of Child. Most Cited Cases

Trial court in child custody dispute was not required to interview the children in the absence of a request by one of the parties to do so. R.C. § 3109.04.

**[5] Child Custody 76D ⇐632**

76D Child Custody
    76DIX Modification
        76DIX(C) Proceedings
            76DIX(C)2 Evidence
                76Dk632 k. Admissibility. Most Cited Cases

Children services' social workers' file, which contained notes mother took prior to her divorce, was relevant in proceeding to modify father's visitation with children. R.C. § 3109.051.

**[6] Child Custody 76D ⇐400**

76D Child Custody
    76DVIII Proceedings
        76DVIII(A) In General
            76Dk400 k. In General. Most Cited Cases

Dismissal of father's motion to show cause, alleging that mother was in contempt for denying him child visitation, was warranted when father failed to appear on the final date of the trial after being warned by the magistrate that there would be no further continuances.

**[7] Child Custody 76D ⇐943**

76D Child Custody
    76DXIV Costs
        76Dk943 k. Attorney Fees. Most Cited Cases

Trial court did not abuse its discretion in awarding mother $325,000 in attorney fees in child custody dispute; father repeatedly interfered with mother's legitimate discovery requests, and refused to accept and adhere to decisions of the court and the court of appeals, and he purposefully prolonged litigation, causing mother to spend $464,041 in attorney fees and an additional $17,208 in expenses. R.C. 3105.73(B).

Civil Appeal from the Cuyahoga County, Common Pleas Court, Domestic Relations Division, Case No. D–316840.Roger L. Kleinman, Cavitch, Familo & Durkin Co., LPA, Cleveland, OH, for Plaintiff–Appellant.

Suzanne M. Jambe, James H. Rollinson, Baker & Hostetler, LLP, Jennifer L. Malensek, The Bradley Building, Cleveland, OH, for Defendant–Appellee.

Before BOYLE, J., STEWART, P.J., and ROCCO, J.

MARY J. BOYLE, J.
    *1 {¶ 1} Plaintiff-appellant, **Larry Klayman**, appeals from two judgments denying his motion to modify parental rights and responsibilities and finding him in contempt of court. He raises seven assignments of error for our review:

"[1.] The trial court erred as a matter of law in failing to apply the law of the State of Virginia,

Slip Copy, 2012 WL 3040043 (Ohio App. 8 Dist.), 2012 -Ohio- 3354
**(Cite as: 2012 WL 3040043 (Ohio App. 8 Dist.))**

where the Virginia divorce decree specifically provides that Virginia law applies.

"[2.] The magistrate's personal animosity towards appellant constitutes bias or prejudice disqualifying him from ruling.

"[3.] The trial court's finding that appellant engaged in inappropriate touching of his child is contrary to the manifest weight of the evidence and an abuse of discretion.

"[4.] The trial court erred as a matter of law in terminating appellant's right to free access to his children without any expert testimony or interview with the children, thereby resulting in the magistrate himself functioning as an expert witness.

"[5.] The trial court erred as a matter of law in considering evidence which predated the filing of appellee's motions to modify the visitation order.

"[6.] The trial court abused its discretion by denying appellant's motion to show cause where appellee admitted she denied visitation without a court order.

"[7.] The trial court's award of $325,000 in attorney's fees is an abuse of discretion."

{¶ 2} Finding no merit to his appeal, we affirm the judgment of the trial court.

*Procedural History and Factual Background*
{¶ 3} Klayman and defendant-appellee, Stephanie Luck, were married in Washington D.C. in July 1996. They had two children born during the marriage, the first in December 1997, and the second in November 1999. They were divorced in Virginia in June 2003 after entering into a Marriage Settlement Agreement ("Agreement") that was incorporated into their divorce decree.

{¶ 4} The Agreement provides that Luck would have "legal and physical custody of the children and shall have full control and supervision of their care, guidance, maintenance and education, subject to [Klayman's] rights of reasonable access and visitation" as further set forth in the Agreement. With respect to visitation, the Agreement provided:

The Husband shall have visitation with the minor children as is reasonable, particularly since the parties agree that the Wife and children may move to Cleveland, Ohio, and the Husband resides in Florida and the Washington D.C. Metropolitan area. The Husband shall have visitation with the minor children on the first and third weekends per month on Saturday from at least 9:00 a.m. until 8:00 p.m. and on Sunday from at least 10:00 a.m. until 5:00 p.m. The Wife shall have the final decision regarding the children staying overnight with their Father, and the Wife shall not unreasonably withhold her consent. Subject to the Wife having the final say regarding the children staying overnight with their Father, the Husband shall have the right to request that the children visit him away from Cleveland and for reasonable summer vacation and the Wife shall not unreasonably withhold her consent.

*2 {¶ 5} Regarding child support, Klayman agreed to pay $1,800 per month, as well as pay for the children's private school education up to $5,000 per year.

{¶ 6} The Agreement further provided, under "Governing Law," that "[t]he validity, enforceability and interpretation of this Agreement shall be determined and governed by the laws of the State of Virginia."

{¶ 7} As specified in the Agreement, Luck moved to the Cleveland area with the children in 2004. The record reveals that the parties began arguing over

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Klayman's visitation with the children and his failure to pay support. In October 2007, a Virginia court found Klayman in contempt of court for failing to pay $74,015 in support. To purge his contempt, Klayman paid the full amount to Luck, plus interest and attorney fees.

{¶ 8} In July 2007, Klayman filed a motion to modify parental rights and responsibilities in Cuyahoga County, alleging that Luck failed to comply with the visitation schedule set forth in their Agreement. He simultaneously filed a petition to register their foreign divorce decree. In August 2007, he filed a motion to show cause claiming that Luck was denying him visitation. In September 2007, Luck moved to modify child support and temporarily suspend visitation. Luck further filed several motions to show cause regarding Klayman's nonpayment of child support.

{¶ 9} Separate magistrates heard the issues. One magistrate heard the parenting issues, and one magistrate presided over the child support issues. Regarding the parenting issues, the magistrate granted Luck's motion, imposed supervised visitation on Klayman, and ordered that Klayman pay Luck $325,000 in attorney fees. With respect to the child support issues, the magistrate found Klayman in contempt of court.

{¶ 10} Klayman filed objections to both magistrate's decisions. The trial court overruled Klayman's objections, adopted the magistrate's decisions in their entirety, and ordered them into law. It is from these judgments that Klayman appeals.

*Standard of Review*
{¶ 11} Unless otherwise noted, our standard of review is whether the trial court abused its discretion in adopting the magistrates' decisions. A trial court's ruling on objections to a magistrate's decision will not be reversed absent an abuse of discretion. *Gobel v. Rivers,* 8th Dist. No. 94148, 2010–Ohio–4493, ¶ 16. Furthermore, when reviewing the propriety of a trial court's determination in a domestic relations case, an appellate court generally applies an abuse of discretion standard. *Gray v. Gray,* 8th Dist. No. 95532, 2011–Ohio–4091, ¶ 7, citing *Booth v. Booth,* 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989).

{¶ 12} An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "Abuse of discretion" is a term of art, describing a judgment neither comporting with the record, nor reason. *See, e.g., State v. Ferranto,* 112 Ohio St. 667, 676–678, 148 N.E. 362 (1925). "A decision is unreasonable if there is no sound reasoning process that would support that decision." *AAAA Ent., Inc. v. River Place Comm. Urban Redevelopment,* 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). Further, an abuse of discretion may be found when the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland,* 176 Ohio App.3d 401, 2008–Ohio–1720, 892 N.E.2d 454, ¶ 15 (8th Dist.).

*Choice–of–Law Clause*
*3 [1] {¶ 13} In his first assignment of error, Klayman argues that the magistrate erred by not applying Virginia law as required by the Settlement Agreement. He maintains that if the magistrate would have applied Virginia law, specifically *Hartman v. Hartman,* 33 Va.Cir. 373, 1994 WL 1031136 (Apr. 13, 1994), he would have prevailed. We disagree.

{¶ 14} The parties' Settlement Agreement is a contract. The interpretation of a contract is a question of law that we review de novo. *Allstate Indemn. Co. v. Collister,* 11th Dist. No.2006–T–0112, 2007–Ohio–5201, ¶ 15, citing *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm,* 73 Ohio St.3d 107, 108, 652 N.E.2d 684 (1995). Our primary goal is to ascertain and give effect to the intent of the parties. *Hamilton Ins. Servs., Inc. v. Nationwide Ins. Cos.,* 86

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 3040043 (Ohio App. 8 Dist.), 2012 -Ohio- 3354
**(Cite as: 2012 WL 3040043 (Ohio App. 8 Dist.))**

Ohio St.3d 270, 273, 652 N.E.2d 684 (1999). We presume the intent of the parties to a contract resides in the language used in the written instrument. Kelly v. Med. Life Ins. Co., 31 Ohio St.3d 130, 509 N.E.2d 411 (1987), paragraph one of the syllabus.

{¶ 15} A choice-of-law clause is "[a] contractual provision by which the parties designate the jurisdiction whose law will govern any disputes that may arise between the parties." Black's Law Dictionary 275 (9th Ed.2009). The substantive law of jurisdictions can differ significantly, and this type of clause is employed to reflect the justified expectations of the parties who bargained over this term. Ohio has adopted the 1 Restatement of the Law 2d, Conflict of Laws, Section 187, at 2 (1971), to determine whether the state's law chosen by the parties should govern the contractual dispute. Schulke Radio Prods., Ltd. v. Midwestern Broadcasting Co., 6 Ohio St.3d 436, 453 N.E.2d 683 (1983), syllabus; Ohayon v. Safeco Ins. Co., 91 Ohio St.3d 474, 486, 747 N.E.2d 206 (2001). But an Ohio court cannot invoke this section unless it is "satisfied that the parties have actually made an express choice of law regarding the issue before the court." Ohayon at 486, 747 N.E.2d 206, citing 1 Restatement of the Law 2d, Conflict of Laws, Section 187, Comment a (1971). The law of the forum state, in this case Ohio, determines whether the parties did in fact choose the law to govern the dispute. See Restatement, Section 187, Comment a ("The rule of this Section is applicable only in situations where it is established to the satisfaction of the forum [Ohio] that the parties have chosen the state of the applicable law.").

{¶ 16} After reviewing the Agreement, we find that the choice-of-law clause does not apply in this case. The clause only applies to "[t]he validity, enforceability and interpretation" of the Agreement. It says nothing about Virginia law applying to modifications of parental rights and responsibilities. See DeSantis v. Lara, 1 st Dist. No. C–080482, 2009–Ohio–2570 (where agreement lacks a choice-of-law clause governing modifications, Ohio law applies). Having found that Ohio law applies, we need not address Klayman's arguments regarding Hartman, 33 Va.Cir. 373.

*4 {¶ 17} Accordingly, Klayman's first assignment of error is overruled.

*Bias or Prejudice*
[2] {¶ 18} In his second assignment of error, Klayman argues that the magistrate's opinion regarding the parenting issues "is so infused with personal animosity towards [him] that it should be viewed as a textbook example of an abuse of discretion." Klayman raises many instances where he claims the magistrate was prejudiced against him.

{¶ 19} The docket reveals that after the trial was over, Klayman moved to disqualify the magistrate. The trial court denied his motion.

{¶ 20} Civ.R. 53(D)(6) provides that disqualification of a magistrate for bias or other cause is within the discretion of the court. See also In re Disqualification of Wilson, 77 Ohio St.3d 1250, 1251, 674 N.E.2d 360 (1996). Accordingly, we will not reverse the trial court's decision absent an abuse of discretion. *Id.*

{¶ 21} Klayman does not contend that the trial court was also biased, nor does he argue that the trial court failed to independently review the magistrate's findings of fact and conclusions of law. We therefore presume that the trial court independently reviewed the magistrate's decision and found no bias or prejudice because it overruled Klayman's objections, adopted the magistrate's decision as its own, and ordered it into law. Thus, we conclude that the trial court did not abuse its discretion when it denied Klayman's motion to disqualify the magistrate.

{¶ 22} Klayman's second assignment of error is

Slip Copy, 2012 WL 3040043 (Ohio App. 8 Dist.), 2012 -Ohio- 3354
**(Cite as: 2012 WL 3040043 (Ohio App. 8 Dist.))**

overruled.

*Manifest Weight of the Evidence*

[3] {¶ 23} In his third assignment of error, Klayman argues that the magistrate's finding that he engaged in inappropriate touching of his child was against the manifest weight of the evidence.

{¶ 24} A judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. *Myers v. Garson,* 66 Ohio St.3d 610, 614 N.E.2d 742 (1993). Where the decision in a case turns upon credibility of testimony, and where there exists competent and credible evidence supporting the findings and conclusions of the trial court, deference to such findings and conclusions must be given by the reviewing court. See *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984); *Cohen v. Lamko, Inc.,* 10 Ohio St.3d 167, 462 N.E.2d 407 (1984).

{¶ 25} The issues raised by Klayman involve credibility assessments made by the magistrate. Klayman challenges these findings. The magistrate heard evidence from the children's pediatrician who reported allegations of sexual abuse to children services, and from a social worker at children services who found that sexual abuse was "indicated." Although the social worker's finding was later changed to "unsubstantiated" when Klayman appealed, the magistrate explained that the supervisor who changed the social worker's finding did not testify. The magistrate pointed out that he was obligated to make his own independent analysis based upon the parties and the evidence before him. In doing so, the magistrate found

*5 on more than one occasion [Klayman] act[ed] in a grossly inappropriate manner with the children. His conduct may not have been sexual in the sense that he intended to or did derive any sexual pleasure from it or that he intended his children would. That, however, does not mean that he did not engage in those acts or that his behavior was proper.

{¶ 26} The magistrate further found it significant that although Klayman denied any allegations of sexual abuse, he never denied that he did not engage in inappropriate behavior with the children. The magistrate further found it notable that Klayman, "for all his breast beating about his innocence * * * [he] scrupulously avoided being questioned by anyone from [children services] or from the Sheriff's Department about the allegations," and that he refused to answer any questions, repeatedly invoking his Fifth Amendment rights, about whether he inappropriately touched the children. "Even more disturbing" to the magistrate was the fact that Klayman would not even answer the simple question regarding what he thought inappropriate touching was. The magistrate stated that he could draw an adverse inference from Klayman's decision not to testify to these matters because it was a civil proceeding, not criminal.

{¶ 27} After reviewing the record, we find no abuse of discretion on the part of the trial court in overruling Klayman's objections regarding the magistrate's finding that Klayman inappropriately touched the children.

{¶ 28} Klayman's third assignment of error is overruled.

*Expert Testimony*

[4] {¶ 29} In his fourth assignment of error, Klayman maintains that the trial court erred in terminating his "right to free access to his children" without any expert testimony or interview with the children. He claims that the magistrate acted as a psychologist

Slip Copy, 2012 WL 3040043 (Ohio App. 8 Dist.), 2012 -Ohio- 3354
**(Cite as: 2012 WL 3040043 (Ohio App. 8 Dist.))**

in reaching this "draconian result."

{¶ 30} After review, we find no abuse of discretion on the part of the trial court in adopting the magistrate's decision. In child custody proceedings, a court is not required to interview the children without a request by one of the parties to do so. R.C. 3109.04. Klayman never requested the court interview the children. Further, the magistrate was permitted to make decisions based upon the evidence before him, which is what he did. If Klayman wanted the magistrate to consider expert testimony, it was his burden to place expert testimony on the record. He failed to do so.

{¶ 31} Klayman's fourth assignment of error is overruled.

*Motion to Modify Parenting Time*

[5] {¶ 32} In his fifth assignment of error, Klayman contends that the magistrate erred by considering evidence that predated Luck's motion to modify his parenting time. Specifically, Klayman argues that the magistrate erred by considering notes that Luck had taken before she and Klayman were divorced. Luck's notes were part of the children services' social worker's file. Although Klayman did not object to these notes being admitted at trial, we will briefly address his argument.

*6 {¶ 33} In support of this argument regarding Luck's motion to modify parenting time, Klayman incorrectly cites to R.C. 3109.04(E)(1)(a). But it is R.C. 3109.051 that addresses parenting time rights. Pursuant to R.C. 3109.051, "a trial court is permitted to modify visitation rights if it determines that the modification is in the child's best interest." *Lisboa v. Lisboa,* 8th Dist. No. 92321, 2009–Ohio–5228, ¶ 11. In determining whether a modification is in the child's best interest, the court is guided by the enumerated factors listed in R.C. 3109.051(D), which includes, among other things, the health and safety of the child, the prior interaction and interrelationships of the child with the child's parents, and whether there is reason to believe that either parent has acted in a manner resulting in the child being an abused or neglected child. R.C. 3109.051(D)(1), (7), and (11).

{¶ 34} Accordingly, we find no error on the part of the magistrate in considering the social worker's file as it was relevant to determining Luck's motion to modify parenting time. Specifically, it was relevant to determining what was in the children's best interest.

{¶ 35} Klayman's fifth assignment of error is overruled.

*Motion to Show Cause*

[6] {¶ 36} In his sixth assignment of error, Klayman argues that the trial court abused its discretion when it failed to find Luck in contempt where she admitted that she denied him visitation without a court order.

{¶ 37} According to the record, the magistrate dismissed Klayman's motion to show cause after he failed to appear on the final date of the trial after being warned that there would be no further continuances. Klayman does not argue that the magistrate erred when it dismissed his motion to show cause. Thus, we find no abuse of discretion on the part of the trial court in adopting the magistrate's decision.

{¶ 38} Klayman's sixth assignment of error is overruled.

*Attorney Fees*

[7] {¶ 39} In his final assignment of error, Klayman argues that the trial court's award of attorney fees to Luck in the amount of $325,000 was not equitable and was an abuse of discretion.

{¶ 40} R.C. 3105.73(B) provides that in any post-decree motion or proceeding, "the court may

Slip Copy, 2012 WL 3040043 (Ohio App. 8 Dist.), 2012 -Ohio- 3354
**(Cite as: 2012 WL 3040043 (Ohio App. 8 Dist.))**

award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable." In determining whether an award of attorney fees is equitable, "the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets."

{¶ 41} After reviewing the record, we find no abuse of discretion on the part of the trial court in adopting the magistrate's decision. Although the award was significant, we find it to be entirely appropriate under the facts of this case. The magistrate found that Klayman's conduct "made this matter anything but routine and straightforward." He found that not only did Klayman file many motions in the case, he also battled the release of his financial records "here as well as in Alabama and Florida." Additionally, Klayman filed a petition for writ of mandamus, four interlocutory appeals, and sued Luck and her counsel in federal district courts in Florida. Klayman "repeatedly interfered with" Luck's legitimate discovery requests, and refused to "accept and adhere" to decisions of the court and the court of appeals. The magistrate found that Klayman purposefully prolonged litigation, telling Luck's mother that if she did not settle, he would take the case through years of litigation which would cost them hundreds of thousands of dollars. Klayman did not deny that he made the statement.

*7 {¶ 42} The magistrate further considered the testimony of Luck's counsel, who practices almost exclusively in domestic relations matters, that this was the most "atypical domestic relations matter" that she had ever been involved in. Luck's counsel testified that since 2007 she had charged Luck $464,041 in attorney fees and an additional $17,208 in expenses.

{¶ 43} Considering all of the factors, the magistrate found that an award of $325,000 was appropriate and equitable. After reviewing the record, we find no abuse of discretion.

{¶ 44} Klayman's seventh assignment of error is overruled.

{¶ 45} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

MELODY J. STEWART, P.J., and KENNETH A. ROCCO, J., Concur.

Ohio App. 8 Dist.,2012.
Klayman v. Luck
Slip Copy, 2012 WL 3040043 (Ohio App. 8 Dist.), 2012 -Ohio- 3354

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.