UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.  13-20610-CIV-ALTONAGA

LARRY KLAYMAN,

       Plaintiff,

v.

JUDICIAL WATCH, INC., *et al.*,

       Defendants.

_____/

## ORDER

**THIS CAUSE** came before the Court on Defendants' Motion to Dismiss Plaintiff's Amended Complaint ("Motion") [ECF No. 16], filed July 9, 2013.  The Court has carefully reviewed the parties' written submissions and applicable law.

## I.      BACKGROUND

### A.      Plaintiff's Allegations

Plaintiff, Larry Klayman ("Klayman"), filed his Amended Complaint [ECF No. 5] against Defendants Judicial Watch, Inc. ("Judicial Watch"); Judicial Watch president and chief operating officer Thomas Fitton ("Fitton"); members of Judicial Watch's board of directors Paul Orfanedes ("Orfanedes") and Christopher Farrell ("Farrell"); and Judicial Watch office administrator Constance Ruffley ("Ruffley").  (*See id.* ¶¶ 5–9).  Klayman alleges he resides and does business in this district (*see id.* ¶ 2), and Judicial Watch is headquartered in Washington, D.C. and has a physical presence in this judicial district (*see id.* ¶ 5).  Klayman does not allege the citizenship or residency of Fitton, Orfanedes, and Farrell.  (*See id.* ¶¶ 6–8).  Klayman alleges Ruffley works in California.  (*See id.* ¶ 9).  Klayman alleges the case arose in large part in this

judicial district, and he was harmed here.  (*See id.* ¶ 10).

Klayman is an attorney licensed in Florida, he founded Judicial Watch to serve as a government ethics watchdog — a "type of Peoples' Justice Department," he ran for the U.S. Senate in Florida, and he has represented the Cuban community as well as the family of Elian Gonzales in this district.  (*Id.* ¶ 2).  Klayman alleges he "gained national exposure through his high profile lawsuits against the Clinton, Bush, and Obama administrations, as well as other high-profile public interest endeavors." (*Id.* ¶ 4).  He recounts other activities that allegedly have made him "famous," including having "a semi-fictitious character" created after him in "West Wing." (*Id.*).

Klayman alleges that on or about February 22, 2012, Ruffley, at the direction of the other Defendants, with Fitton, Orfanedes, and Farrell acting in their individual capacity and as members of Judicial Watch's board, "negligently, maliciously and/or willfully published and furthered the publication of a false statement that Plaintiff Klayman had been 'convicted' of a crime for not paying a large amount of child support with regard to his children, on the internet and elsewhere within this judicial district, Florida, and elsewhere throughout the United States and the world." (*Id.* ¶ 12).  The false statement "was intended to be and was published on 'The World's Leading Obama Eligibility Website' of Dr. Orly Taitz [("Taitz")] of the Defend Our Freedom Foundation and disseminated in this district, . . . causing publication on other internet websites and elsewhere." (*Id.* ¶ 13).  Prior to this publication, Klayman had made it known he planned to file a high profile case in Florida involving the eligibility of President Barack Obama to run as a candidate in Florida in 2012.  (*See id.* ¶ 14).  The false publication was done by each of the Defendants negligently and/or with the willful and malicious intent to harm Klayman personally and professionally in the South Florida community and elsewhere.  (*See id.* ¶ 15).

2

The Defendants' defamatory statement has caused Klayman harm.  (*See id.* ¶ 16).

On these facts, Klayman states four causes of action against all named Defendants. Count I is for defamation, Count II is for defamation by implication, Count III is for tortious interference with a contract, and Count IV is for intentional infliction of emotional distress.  (*See id.* 6–10).

### B.      Additional Jurisdictional Facts

In response, the Defendants filed the Motion seeking a dismissal of the Amended Complaint on the following grounds: (1) Fitton, Orfanedes, Farrell and Ruffley (the "Individual Defendants") challenge the Court's personal jurisdiction over them; (2) all Defendants assert venue is improper; (3) the doctrine of *forum non conveniens* compels a dismissal as to all Defendants; and (4) there has been insufficient service of process upon Defendant Orfanedes. The parties have submitted affidavits and other documents for the Court's consideration of these arguments.

The Individual Defendants insist Klayman no longer resides in this district.  (*See* Mot. 2–4).  They maintain on at least three occasions Klayman has made representations in court filings that he resides in the Middle District of Florida (*see* Mot. Exs. 1–3 [ECF Nos. 16-1, 16-2, 16-3]); he resided in California at the time of the events at issue in this case, as Klayman's lawyer in the California criminal matter involving Klayman's failure to pay child support advised the court there that Klayman resided and practiced law in Los Angeles, California (*see id.* Ex. 6 [ECF No. 16-6]); the two addresses used by Klayman in this litigation appear to be only mailboxes; the Florida Bar website lists a Washington, D.C. address for Klayman (*see id.* Ex. 7 [ECF No. 16-7]); Klayman advised a California court on November 26, 2008 that he had been a California resident for six months (*see id.* Ex. 8 [ECF No. 16-8]); and on June 3, 2013, Klayman signed an

affidavit in which he stated he had resided in Washington, D.C. for over twenty years (*see id.* Ex. 9 [ECF No. 16-9]).

The Individual Defendants are not Florida residents.  Fitton is a resident of Washington, D.C. (*see id.* Ex. 10, ¶ 3 [ECF No. 16-10]); Orfanedes and Farrell are residents of Virginia (*see id.* Exs. 11 & 12, ¶ 3 [ECF Nos. 16-11, 16-12]); and Ruffley resides in California (*see id.* Ex. 13, ¶ 3 [ECF No. 16-13]).

According to the Individual Defendants, they lack minimum contacts with the State of Florida, beginning with insufficient contacts arising from the incident at issue in this case. Ruffley avers she made one verbal statement in California to Taitz while present at a regularly-scheduled monthly meeting of the California Coalition for Immigration Reform in California. (*See id.* Ex. 13, ¶ 7).  The only information Ruffley conveyed to her was information Ruffley had learned from public records, including information related to court proceedings for failure to pay child support.  (*See id.*).  Ruffley expected that Taitz would not restate those comments on a website or in any other format.  (*See id.* ¶ 8).  No one from Judicial Watch advised Ruffley to convey the information to Taitz.  (*See id.* ¶ 9).

The Individual Defendants also state they lack minimum contacts with Florida as they do not own or lease any real property in the State; they do not have telephone listings or mailing addresses in the State; they do not have any Florida bank accounts; they do not have any Florida property tax liability; they do not have vehicles registered in Florida or Florida driver licenses; they do not hold any Florida professional licenses; they do not vote in Florida; they do not operate, conduct, engage in, or carry on any personal business in Florida; they do not travel to Florida except occasionally to visit family or conduct business on behalf of Judicial Watch; they do not contract to insure any person or thing in Florida; they did not commit any tortious act in

4

Florida; they did not cause injury to people or to property in Florida; and they have not entered into contracts to be performed in Florida.  (*See* Mot. 6).

Fitton recalls making only one trip to Florida for a personal vacation in the past twenty years, although he supervises Judicial Watch's two Florida employees.  (*See id.* Ex. 10, ¶¶ 9–10). Fitton did not have knowledge of the Ruffley-Taitz statement before it was made.  (*See id.* ¶ 7).

Orfanedes acknowledges as part of his responsibilities at Judicial Watch he occasionally communicates with one of the two Florida Judicial Watch employees by telephone and email, but not about the alleged statement made to Taitz, a statement made without Orfanedes's knowledge.  (*See* Mot. Ex. 11, ¶¶ 7–8).  Orfanedes has traveled to Florida for the following occasions: in May 2012 to attend a family member's graduation; in March 2011 for ten days for family reasons, during which time he attended two or three meetings on behalf of Judicial Watch; in January 2005 on business for Judicial Watch; and in 2006 and 2007 for vacation.  (*See id.* ¶ 10).  Orfanedes also states he was improperly served with process, as Klayman's Amended Complaint was left with a Judicial Watch co-worker who is not authorized to receive process for Orfanedes.  (*See* Mot. Ex. 15, ¶ 6 [ECF No. 16-15]).

Farrell, like Orfanedes, occasionally communicates with one of the Florida Judicial Watch employees by telephone and email, but not about the Ruffley-Taitz statement, which was made without his knowledge.  (*See id.* Ex. 12, ¶¶ 7–8).  Farrell traveled to Florida on Judicial Watch business in June 2012, and he traveled here for a brief vacation in July 2012.  (*See id.* ¶ 10).

Ruffley works for Judicial Watch in California, and the only information she relayed to Taitz in California was from public records, and consisted of Klayman being involved in court proceedings for failing to pay child support, not that he had been convicted of a crime.  (*See* Mot.

Ex. 13, ¶¶ 4, 7).  Ruffley expected Taitz to keep the information to herself.  (*See id.* ¶ 8).  Ruffley was not instructed by any person at Judicial Watch to utter the statement.  (*See id.* ¶ 9).  Ruffley has traveled to Florida twice, both times on Judicial Watch business.  (*See id.* ¶ 12).  The last time she was here was in 2001.  (*See id.*).

Klayman disagrees with the picture Defendants try to paint.  With regard to Klayman's residency in Florida, Klayman states it is true he does not reside in this district as he has moved to Ocala, Florida.  (*See* Pl.'s Opp'n 4 [ECF No. 29]).  But Klayman, a Florida attorney with a Florida driver's license and Florida concealed weapon permit, maintains substantial ties to the district and resides in Florida.  (*See id.* 4–5).

Klayman devotes a substantial portion of his Opposition to addressing the contacts Judicial Watch has with Florida, including having two employees in a Florida regional office.  (*See generally id.*).  This discussion is largely irrelevant.  For while the Motion asserts Judicial Watch is a resident of Washington, D.C., as is alleged by Klayman himself, the Motion does not challenge the Court's exercise of personal jurisdiction over Judicial Watch.  It is only the Individual Defendants who assert they lack sufficient contacts with Florida.

Klayman disputes Ruffley's characterization of the meeting with Taitz and the innocence of the communication.  (*See id.*).  Klayman asserts during the conversation, Ruffley intentionally conveyed a false and defamatory statement about him, stating he had been convicted of a crime of not paying child support.  (*See id.* 2).  Klayman states he has never been convicted of a crime anywhere.  (*See id.* 2, n.1).  Klayman states the information was conveyed with the intention that Taitz would spread it on her popular and widely viewed website, in this district and worldwide; curiously, Klayman's personal knowledge of Ruffley's nefarious intentions is not revealed.  (*See id.* 2).  Klayman also does not address the factual support for accusing the other Individual

Defendants or Judicial Watch of being responsible for Ruffley's alleged wrongdoing.[1]

Klayman offers up the following information about the Individual Defendants.  Fitton has testified that Judicial Watch maintains an office in Miami and has people working in the Miami office.  (*See id.* 9; Pl.'s Opp'n Ex. E, 100, ll. 17–21, 102, l. 5 [ECF No. 29-5]).  Farrell, Fitton and Orfanedes communicate with Judicial Watch's Florida office and its employees as part of those Defendants' responsibilities and duties for Judicial Watch.  (*See* Pl.'s Opp'n 9).  Indeed, Fitton, as part of his responsibilities and duties as president of Judicial Watch, actually oversees and supervises the Miami office and its employees.  (*See id.*).  As part of Judicial Watch's mission, Fitton and a Miami employee have frequently participated in public speaking engagements in Florida.  (*See id.*; Pl.'s Opp'n Ex. E, 103, ll. 5–21).  Most importantly, according to Klayman, "by conveying the defamatory statement to Taitz, fully aware of the high likelihood that the false statement would be published on Taitz [sic] website, Defendants have directed the communication about a Florida resident to readers worldwide, including readers in Florida." (Pl.'s Opp'n 11).

## II.        STANDARDS

### A.        Lack of Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) allows a defending party to move to dismiss a claim for relief by asserting the defense of lack of personal jurisdiction.  *See* FED. R. CIV. P. 12(b)(2).  A challenge to personal jurisdiction presents a two-step inquiry for the court.  A federal court may properly exercise personal jurisdiction over a non-resident defendant only if two requirements are satisfied: (1) the state long-arm statute; and (2) the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  *See Posner, et al. v. Essex Ins. Co., Ltd.,* 178 F.3d 1209, 1214 (11th Cir. 1999); *Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d

---

[1]  Defendants do not move to dismiss the Amended Complaint for failure to state a claim for relief.

623, 626 (11th Cir. 1996).  Thus, if the applicable state statute governing personal jurisdiction is satisfied, the Court must then determine whether sufficient "minimum contacts" exist to satisfy the due process requirements of the Fourteenth Amendment, including "traditional notions of fair play and substantial justice."  *Future Tech. Today, Inc. v. OSF Healthcare Sys.,* 218 F.3d 1247, 1249 (11th Cir. 2000) (per curiam) (citing *Sculptchair,* 94 F.3d at 626); *see also Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).

The extent of the applicable long-arm statute is governed by Florida law, and federal courts must construe it as would the Florida Supreme Court.  *See Sculptchair,* 94 F.3d at 627 (citation omitted).  And absent an indication that the Florida Supreme Court would hold otherwise, the Court is bound by the decision of the intermediate Florida courts.  *See id.* (citation omitted).  Furthermore, the Florida long-arm statute must be strictly construed.  *See id.* (citation omitted).

Under Florida law, "[a] plaintiff seeking to obtain jurisdiction over a nonresident defendant initially need only allege sufficient facts to make out a prima facie case of jurisdiction."  *Posner,* 178 F.3d at 1214 (citing *Electro Eng'g Prods. Co. v. Lewis,* 352 So. 2d 862, 864 (Fla. 1977)).  "Plaintiff's burden in alleging personal jurisdiction is to plead sufficient material facts to establish the basis for exercise of such jurisdiction."  *Future Tech.,* 218 F.3d at 1249 (citing *Prentice v. Prentice Colour, Inc.,* 779 F. Supp. 578, 583 (M.D. Fla. 1991)); *see also Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989).  If a plaintiff pleads sufficient material facts to support the exercise of personal jurisdiction, the burden shifts to the defendant to challenge the plaintiff's allegations by affidavits or other competent evidence.  *See Future Tech.,* 218 F.3d at 1249.  The plaintiff then bears the burden of proving jurisdiction by affidavits, testimony or documents "when a non-resident defendant raises a meritorious defense

to personal jurisdiction through affidavits, documents or testimony." *Musiker v. Projectavision, Inc.,* 960 F. Supp. 292, 294 (S.D. Fla. 1997) (citation omitted); *Kim v. Keenan,* 71 F. Supp. 2d 1228, 1231 (M.D. Fla. 1999) ("If defendants sufficiently challenge plaintiff's assertions, then plaintiff must affirmatively support his or her jurisdictional allegations, and may not merely rely upon the factual allegations set forth in the complaint.").

### B.      Improper Venue

In defending a motion to dismiss based on Federal Rule of Civil Procedure 12(b)(3), the plaintiff must show that venue in the chosen forum is proper. *See Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004) (citations omitted). Although "the court may consider matters outside the pleadings, particularly when the motion is predicated upon key issues of fact," *Webster v. Royal Caribbean Cruises, Ltd.*, 124 F. Supp. 2d 1317, 1320 (S.D. Fla. 2000) (citing *Thomas v. Rehab. Serv. of Columbus, Inc.*, 45 F. Supp. 2d 1375, 1376 (M.D. Ga. 1999)), it "must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *Wai*, 315 F. Supp. 2d at 1268 (citations omitted).

Even if a plaintiff has brought a claim in a proper venue, a court may transfer a civil case to a different venue "[f]or the convenience of parties and witnesses," and "in the interest of justice." 28 U.S.C. § 1404(a). To determine whether transfer to another district is appropriate under 28 U.S.C. section 1404(a), courts engage in a two-step analysis. *See Vivant Pharm., LLC v. Clinical Formula, LLC*, No. 10-21537-Civ, 2011 WL 1303218, at *6 (S.D. Fla. Mar. 31, 2011) (citing *Thermal Techs., Inc. v. Dade Serv. Corp.*, 282 F. Supp. 2d 1373, 1376 (S.D. Fla. 2003); *Jewelmasters, Inc. v. May Dep't Stores*, 840 F. Supp. 893, 894–95 (S.D. Fla. 1993)). First, the court must determine whether the action could have been brought in the other venue. *See id.* Second, it must assess whether "convenience and the interest of justice" require transfer. *Id.*

If a court finds the suit could have been brought in the proposed transferee forum, the court "must weigh various factors . . . to determine if a transfer" is justified.  *Windmere Corp. v. Remington Prods., Inc.*, 617 F. Supp. 8, 10 (S.D. Fla. 1985) (citation omitted); *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) ("A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors.").  Courts should consider the following factors to determine whether transfer is appropriate:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005) (citation omitted).  When weighing these factors, "[t]he plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations."  *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (quotation marks and citation omitted).  Additionally, it is the movant's burden to establish transfer is warranted.  *See Cent. Money Mortg. Co. v. Holman*, 122 F. Supp. 2d 1345, 1346 (M.D. Fla. 2000).

### C.    *Forum Non Conveniens*

A motion to dismiss based on *forum non conveniens* is a motion to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3).  *See Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1290 (11th Cir. 1998).  The plaintiff must show that venue in the chosen forum is proper.  *See Wai*, 315 F. Supp. 2d at 1268 (citations omitted).  For its part, the defendant invoking *forum non conveniens* "bears a heavy burden in opposing the plaintiff's chosen forum."  *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430

(2007); *Wilson v. Island Seas Investments, Ltd.*, 590 F.3d 1264, 1269 (11th Cir. 2009).  Although "the court may consider matters outside the pleadings, particularly when the motion is predicated upon key issues of fact," *Webster*, 124 F. Supp. 2d at 1320, it "must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff," *Wai*, 315 F. Supp. 2d at 1268 (citations omitted).

The Supreme Court has "characterized *forum non conveniens* as, essentially, 'a supervening venue provision, permitting displacement of the ordinary rules of venue when, in light of certain conditions, the trial court thinks that jurisdiction ought to be declined.'" *Sinochem Int'l Co. Ltd.*, 549 U.S. at 429 (quoting *Am. Dredging Co. v. Miller*, 510 U.S. 443, 453 (1994)).  "The doctrine of *forum non conveniens* permits a court with venue to decline to exercise its jurisdiction when the parties' and court's own convenience, as well as the relevant public and private interests, indicate that the action should be tried in a different forum."  *Pierre-Louis v. Newvac Corp.*, 584 F.3d 1052, 1056 (11th Cir. 2009); *see also Aldana v. Fresh Del Monte Produce, Inc.*, No. 01-3399-CIV, 2007 WL 3054986, at *3 (S.D. Fla. Oct. 16, 2007) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 506–07 (1947)).  "This tool 'is to be favored' for ensuring that federal courts only hear 'those cases where contacts with the American forum predominate.'"  *Aldana*, 2007 WL 3054986, at *3 (quoting *Sigalas v. Lido Mar., Inc.*, 776 F.2d 1512, 1519 n.10 (11th Cir. 1985)).

### III.    ANALYSIS

#### A.    Personal Jurisdiction Over the Individual Defendants

The Court's consideration of whether personal jurisdiction exists over the Individual Defendants must be undertaken in the light of the claims presented, and the Court should therefore first determine whether the Amended Complaint states any claim for relief against the

Individual Defendants, and if so, on what theories.  *See Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002) (threshold question that must be determined in order to state whether the cause of action arises from complained-of communications into Florida, in order to then determine whether personal jurisdiction is satisfied under Florida long-arm statute, is whether the allegations of the complaint state cause of action); *8100 R.R. Ave. Realty Trust v. R.W. Tansill Constr. Co.*, 638 So. 2d 149, 151 (Fla. 4th DCA 1994) (where threshold issue of personal jurisdiction depends on whether a tort is committed in Florida, court must review the allegations of the complaint to determine if a cause of action is stated).  As stated, Defendants do not move to dismiss the Amended Complaint for failure to state a claim.  The Court therefore assumes, without accepting,[2] that the Amended Complaint states four viable causes of action against the Individual Defendants.

---

[2] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).  Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 555.  Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).  To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).  "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678), *overruled on other grounds by Mohamad v. Palestinian Auth.*, 132 S.Ct. 1702 (2012).

The four causes of action are supported by conclusory allegations about the Individual Defendants' actions and intentions.  For example, Klayman alleges labels and conclusions to link the Individual Defendants to his theories of wrongdoing: "Ruffley, . . . at the direction and with the authority, actual, implied and apparent, of Defendants Judicial Watch, Fitton, Orfanedes and Farrell, in their individual capacity and as members of Judicial Watch's board of directors . . . ." (Am. Compl. ¶ 12); "The false and defamatory statement alleged herein was intended to be and was published . . . ." (*Id.* ¶ 13).  Factual matter linking each Individual Defendant to Ruffley's alleged defamation, and describing the basis for attributing evil intentions to all of the Individual Defendants, is missing.

CASE NO.  13-20610-CIV-ALTONAGA

The Individual Defendants' approach in the Motion is to provide factual matter — consisting of the Individual Defendants' affidavits and other documents — rebutting the allegations.  The Individual Defendants assert, and Klayman contests, that they do not conduct business in Florida, they did not commit a tort in this State or cause an injury in this State, and they do not engage in substantial activity in Florida.  The Individual Defendants insist they have met their burden in challenging jurisdiction, and the burden shifted to Klayman to present affidavits or declarations sufficient to establish jurisdiction, a burden he failed to meet.  (*See* Mot. 7).  The Court must agree with the Individual Defendants.

As stated, to determine if personal jurisdiction exists over nonresident defendants, the court must (1) assess whether the state long-arm statute applies and (2) decide whether the exercise of personal jurisdiction would comply with the Due Process Clause of the Fourteenth Amendment.  *See Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (citations omitted).  A court may only exercise personal jurisdiction over a nonresident defendant if both prongs are satisfied.  *See id.*

### 1.	Florida Long-Arm Statute

The Florida long-arm statute contains two provisions that confer personal jurisdiction over a non-resident defendant.  The first, Florida Statute section 48.193(1), confers specific jurisdiction if a claim "arises from" a defendant's specific forum-related contacts.  *See* FLA. STAT. § 48.193(1).  "Although the term 'arising from' is somewhat broader than the concept of proximate cause, under Florida law there must nevertheless be some 'direct affiliation,' 'nexus,' or 'substantial connection' between the cause of action and the activities within the state."  *Sun Trust Bank v. Sun Int'l Hotels Ltd.*, 184 F. Supp. 2d 1246, 1269 (S.D. Fla. 2001) (citation omitted).  The second, Florida Statute section 48.193(2), confers general jurisdiction if a

defendant's contacts with Florida are sufficiently pervasive.  *See* FLA. STAT. § 48.193(2). General jurisdiction arises from a non-resident defendant's contacts with the forum that are unrelated to the cause of action being litigated.  *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000).

Klayman asserts that subsections (1)(a), (1)(b), and (2) are satisfied and support the exercise of jurisdiction over the Individual Defendants.  (*See* Pl.'s Opp'n 8–12).  The relevant provisions state:

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>
> (a)  Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
>
> (b)  Committing a tortious act within this state.
>
>        *            *            *
>
> (2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

FLA. STAT. § 48.193.

As to the Court's exercise of specific jurisdiction over the Individual Defendants, under subsection (1)(a) Klayman must show the Individual Defendants are carrying on a business or business venture in Florida either themselves or through an agent.  *See* FLA. STAT. § 48.193(1)(a).  Klayman must demonstrate these Defendants' "activities 'considered collectively show a general course of business activity in the state for pecuniary benefit.'"  *Design-Build Concepts, Inc. v. Jenkins Brick Co.*, No. 3:06cv558/MCR/MD, 2008 WL 686150, at *3 (S.D.

CASE NO.  13-20610-CIV-ALTONAGA

Fla. Mar. 10, 2008) (alteration omitted) (quoting *Sculptchair*, 94 F.3d at 627).   Thus, for example, to show that necessary general course of business activity in the state for pecuniary benefit, it is insufficient that a chief executive officer of a nonresident corporation made phone calls to a resident stock purchaser, faxed and mailed corporate materials to the purchaser, and gave a presentation to stockbrokers at a meeting in Florida.  *See Musiker*, 960 F. Supp. at 295.  In determining whether the Individual Defendants engage in business in Florida, relevant factors "include the presence and operation of an office in Florida, the possession and maintenance of a license to do business in Florida, the number of Florida clients served, and the percentage of overall revenue gleaned from Florida clients."  *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005) (internal citations omitted).

Klayman fails to satisfy the foregoing standard under subsection (1)(a).  The Individual Defendants do not have offices in Florida; Judicial Watch does.  The Individual Defendants do not have licenses to do business in Florida; presumably Judicial Watch has necessary licenses, if any.  The Individual Defendants do not have clients in Florida, nor are the Individual Defendants engaged in business activities here for pecuniary benefit.  Long-arm statutes are strictly construed, and the text of the statute cannot be read as broadly as Klayman suggests, allowing a nonresident corporation's employees' activities to be considered the carrying on of a business venture by the employees in this state.  *See, e.g., Palm Beach Grading, Inc. v. Picerne Constr./FBG, L.L.C.*, No. 09-80182-CIV, 2009 WL 3010478, at *4–5 (S.D. Fla. Sept. 16, 2009).  As stated, Klayman's many arguments directed to Judicial Watch doing business in Florida are misdirected and fail to address the statutory language.

Turning then to subsection (1)(b), Klayman next asserts the Court may exercise specific jurisdiction over the Individual Defendants because they committed an intentional tort in Florida.

15

Relying on *Wendt*, 822 So. 2d 1252, Klayman argues the Individual Defendants committed an intentional tort in Florida by sending an electronic, defamatory communication about a Florida resident into the State through the Web.  (*See* Pl.'s Opp'n 10).  In opposing specific jurisdiction on this statutory ground, the Individual Defendants rely on the "corporate shield" or "fiduciary shield" doctrine, and their uncontested declarations denying Klayman's allegations.   The Individual Defendants again are correct.

Under the corporate shield doctrine, "acts performed by a person exclusively in his corporate capacity not in Florida but *in a foreign state* may not form the predicate for the exercise of personal jurisdiction over the employee in the forum state."  *Kitroser v. Hurt*, 85 So. 3d 1084, 1088 (Fla. 2012) (emphasis in original) (citing *Doe v. Thompson*, 620 So. 2d 1004, 1006 (Fla. 1993)).  The rationale behind this doctrine is the unfairness in forcing an individual to defend an action filed against him or her personally in a forum in which the only relevant contacts are acts performed outside the forum state and not for the employee's benefit but for the exclusive benefit of the employer.  *See id.* (citations omitted).  An exception to the corporate shield doctrine is fraud or other intentional misconduct committed by the corporate officer outside of Florida.  *See id.* at 1088 n.3 (citations omitted).  Thus, "[i]n order for a non-resident corporate officer to be subject to personal jurisdiction in Florida, it must be established that the officer acted not only in his capacity as agent for the corporation, but that he acted individually, for his own benefit, and thereby caused harm in the forum state."  *Lane v. Capital Acquisitions and Mgmt. Co.*, No. 04-60602, 2006 WL 4590705, at *4 (S.D. Fla. Apr. 14, 2006) (citing *Thompson*, 620 So. 2d at 1006).

The Individual Defendants' affidavits show Ruffley made a statement to Taitz gleaned from publicly available information, and that Ruffley never expected Taitz to convey the

information to others or to post it on any website.  Ruffley did not discuss Klayman's conviction

for a crime, but rather, his non-payment of child support.  No person from Judicial Watch

directed Ruffley to utter the information, nor did any of the other Individual Defendants know

about it.   Given that the Individual Defendants sufficiently challenged Klayman's assertions

about what was uttered, the Defendants' intentions, and the Individual Defendants' collective

involvement in the defamatory statement, it was Klayman's burden to "affirmatively support his"

jurisdictional allegations and not merely rely on the allegations of the Amended Complaint.

*Kim*, 71 F. Supp. 2d at 1231.  Because Klayman wholly failed to meet this burden, the corporate

shield doctrine is fully applicable and the exception is not satisfied.  *See Two Worlds United v.

Zylstra*, 46 So. 3d 1175, 1178 (Fla. 2d DCA 2010) ("The corporate shield doctrine applies here

to shield Zylstra from being haled into court based on personal jurisdiction because he denied

committing the alleged negligent and intentional acts and Two Worlds did not rebut Zylstra's

sworn affidavit."); *Oesterle v. Farish*, 887 So. 2d 412, 415 (Fla. 4th DCA 2004).  Klayman fails

to show specific jurisdiction can be exercised over the Individual Defendants pursuant to

subsection (1)(b).

### 2.    Due Process

The remaining consideration is whether general jurisdiction is satisfied under Florida

Statute section 48.193(2).  For Klayman to satisfy this provision of the Florida long-arm statute,

he must show that the Individual Defendants are engaged in substantial and not isolated activity

in the State, whether such activity is wholly interstate, intrastate, or otherwise; under subsection

(2) it is irrelevant whether the claims in the litigation arise from the Florida-activity.  *See* FLA.

STAT. § 48.193(2).  "The reach of this provision extends to the limits on personal jurisdiction

imposed by the Due Process Clause of the Fourteenth Amendment."  *Fraser v. Smith*, 594 F.3d

842, 846 (11th Cir. 2010) (citation omitted).  In other words, "[a] finding that a defendant's activities satisfy section 48.193(2)'s requirements also necessitates a finding that minimum contacts exist.  Therefore, the analysis of jurisdiction under section 48.193(2) and the Due Process clause merge." *Exhibit Icons, LLC v. XP Cos., LLC*, 609 F. Supp. 2d 1282, 1295 (S.D. Fla. 2009) (internal citation omitted).

To comport with due process, the non-resident defendant must be shown to have "established 'certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *Fraser*, 594 F.3d at 846 (citations omitted).  "The defendant's contacts with the forum must be 'continuous and systematic' to support the exercise of general jurisdiction." *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)).  The contacts "'must be so extensive to be tantamount to [a defendant] being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in [the forum state's courts] in any litigation arising out of any transaction or occurrence taking place anywhere in the world.'" *Exhibit Icons, LLC*, 609 F. Supp. 2d at 1295 (quoting *Baker v. Carnival Corp.*, No. 06-21527-CIV-HUCK, 2006 WL 3360418, at *2 (S.D. Fla. Nov. 20, 2006)).

Furthermore, "Florida courts have interpreted 'substantial and not isolated activity' to mean 'continuous and systematic general business contact.'" *Crowe v. Paragon Relocation Res., Inc.*, 506 F. Supp. 2d 1113, 1122 (N.D. Fla. 2007) (citations omitted).  So, for general jurisdiction to be satisfied, the "contacts must show a 'general course of business activity in the State for pecuniary benefit.'" *Id.* (quoting *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1361 (11th Cir. 2006)).  And "the level of business contacts required to establish general jurisdiction is greater than the level of contacts required to establish specific

CASE NO.  13-20610-CIV-ALTONAGA

jurisdiction." *Id.*  "[C]ontacts are commonly assessed over a period of years prior to the filing of a complaint."  *Mold-Ex, Inc. v. Mich. Technical Representatives, Inc.*, No. 304CV307MCRMD, 2005 WL 2416824, at *5 (N.D. Fla. Sept. 30, 2005).

Fitton's several visits to Florida to participate in speaking engagements and activities associated with his position as president of Judicial Watch and supervisor of the Miami office of Judicial Watch, do not rise to the level of continuous and systematic contacts.  *See Kertesz v. Net Transactions, Ltd.*, 635 F. Supp. 2d 1339, 1346 (S.D. Fla. 2009).   Certainly, the activities associated with Judicial Watch enjoy protection under the corporate shield doctrine.  *See Int'l Textile Grp., Inc. v. Interamericana Apparel Co., Inc.*, No. 08-22859-CIV, 2009 WL 4899404, at *3 (S.D. Fla. Dec. 14, 2009) (finding court lacked general jurisdiction over defendant where, under corporate shield doctrine, defendant's visits to Florida on behalf of his employer "must not be considered.  The fact that [defendant] visited with his daughter while he was in Florida during these business trips does not change the outcome.  The purpose of these trips remained to conduct business for the corporations."); *Home Design Servs., Inc. v. Banyan Const. and Dev., Inc.*, No. 5:07-cv-5-Oc-10GRJ, 2007 WL 1752435, at *4 (M.D. Fla. June 15, 2007) (no minimum contacts found where foreign defendants' contacts with Florida were defendants' travels to Florida on behalf of foreign corporation and titles as officers and directors of a Florida wholly-owned subsidiary of the foreign corporation); *Skorupski v. Dale C. Rossman, Inc.*, No. 5:07-cv-447-Oc-10GRJ, 2008 WL 4724680, at *6 (M.D. Fla. Oct. 20, 2008) (no general jurisdiction found where claim against defendant arose solely out of defendant's status as president and chief executive officer and not his activities outside of his corporate capacity); *cf. Carmel & Co. v. Silverfish, LLC*, No. 1:12-cv-21328-KMM, 2013 WL 1177857, at *5 n.3 (S.D. Fla. Mar. 21, 2013) ("The corporate shield doctrine is centered on the specific jurisdiction

element of the Florida long-arm statute. There may also be a separate basis for general jurisdiction over [the defendant] under the statute.") (internal citation omitted).  Because of the corporate shield doctrine, Klayman fails to show how a president overseeing the activities of a not-for-profit corporation headquartered in Washington, D.C., with an office in Miami, Florida, should expect to answer in this State's courts in litigation arising out of any transaction taking place anywhere in the world.

Klayman also fails to show how Fitton's activities here have been for his pecuniary benefit.  Lastly, Fitton's one Florida vacation is hardly the type of continuous and systematic contact engaged in for pecuniary benefit that would support the exercise of general jurisdiction.

The remaining Individual Defendants have far fewer contacts with this State than does Fitton.  The vast majority of any contacts the Individual Defendants have had with this State are as a result of their work for Judicial Watch; again, the corporate shield doctrine protects them. And these Defendants' sporadic visits to Florida for vacations or family matters do not qualify as business activities undertaken for pecuniary benefit.

Furthermore, in examining whether the exercise of jurisdiction over the Individual Defendants would comport with "fair play and substantial justice," *Licciardello v. Lovelady*, 544 F.3d 1280, 1284 (11th Cir. 2008) (quoting *Int'l Shoe Co.*, 326 U.S. at 320), the Court must consider the burden on the Defendants in litigating in this forum, the interest of the forum in adjudicating the dispute, the Plaintiff's interest in obtaining convenient and effective relief, and the interest of the judicial system in resolving the dispute.  *See id.* (citation omitted).  Here, the burden on four Individual Defendants is significant and not insubstantial given where these Defendants reside and given that the majority of their travels here have been on business for Judicial Watch, presumably paid for by Judicial Watch.  As to the interest of this forum in

adjudicating the present dispute, the complained-of statement was uttered in California, and there has been no showing Ruffley uttered an untrue statement with the intention that it be disseminated here or anywhere, nor has Klayman shown the other Individual Defendants directed or authorized it to be made.  It is hard to see how a Florida court or a Florida jury has a strong interest in adjudicating the claims against the Individual Defendants on the strong showing made by them in the present briefing.  Klayman's interest in obtaining convenient and effective relief by litigating his claims against all Defendants in one forum is insufficient, alone, to satisfy traditional notions of fair play and substantial justice.

A review of the foregoing factors militates against personal jurisdiction over the Individual Defendants; the Florida long-arm statute does not support it and the Constitution would be offended by its exercise.  *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).   The Court concludes it lacks personal jurisdiction over the Individual Defendants.

**B.    Venue**

Given the foregoing conclusion, the Court limits the remaining discussion to Judicial Watch's assertions that this forum is improper and inconvenient.

As a result of the dismissal of the Individual Defendants, Judicial Watch's reliance on 28 U.S.C. section 1391 to seek a dismissal for improper venue is misplaced.  Under section 1391, a civil action may be brought in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located.  *See* 28 U.S.C. § 1391(b)(1).  With the Individual Defendants no longer present, the relevant inquiry is whether Judicial Watch, the only remaining defendant, is a resident of Florida.  A defendant-corporation is

> deemed to reside . . . in any judicial district in which such defendant is subject to
> the court's personal jurisdiction with respect to the civil action in question . . . .

> [I]n a State which has more than one judicial district and in which a defendant
> that is a corporation is subject to personal jurisdiction . . . , such corporation shall
> be deemed to reside in any district in that State within which its contacts would be
> sufficient to subject it to personal jurisdiction if that district were a separate State .
> . . .

28 U.S.C. §§ 1391(c)–(d).

Judicial Watch maintains an office and employees in the Southern District of Florida.  It engages in substantial activities here; indeed, Judicial Watch has not asserted the Court lacks personal jurisdiction over it.  Florida's long-arm statute and the due process requirements of the Fourteenth Amendment are satisfied, and venue is therefore proper under subsection 1391(b)(1). *See Enhanced Recovery Corp. v. Cenveo, Inc.*, No. 3:05-CV-1138-J-32, 2006 WL 196941, at *1 (M.D. Fla. Jan. 24, 2006) (Defendant, "a corporation, has not argued that it is not subject to the personal jurisdiction of this District and, based on the parties' history of business dealings as described in both parties' papers, as well as the unrebutted evidence that [defendant] maintains a business address and telephone number in Jacksonville, Florida, the Court finds that Florida's long-arm statute and the due process requirements of the Fourteenth Amendment are satisfied and that venue is therefore proper in this District . . . .").

Having determined venue in this district is appropriate; the Court now turns to Judicial Watch's arguments addressing *forum non conveniens*.  Those arguments, too, are unavailing. "The common-law doctrine of *forum non conveniens* 'has continuing application [in federal courts] only in cases where the alternative forum is abroad,' and perhaps in rare instances where a state or territorial court serves litigational convenience best."  *Sinochem Int'l Co. Ltd.*, 549 U.S. at 430 (quoting *Am. Dredging Co.*, 510 U.S. at 449 n.2); *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 717 (7th Cir. 2002) ("[W]ith respect to cases wholly within the system of U.S. federal courts, the doctrine [of *forum non conveniens*] has been largely replaced by the transfer of venue statute, 28

U.S.C. § 1404(a) . . . .").  Because the alternative forums suggested by Judicial Watch are in Washington, D.C. or California, sister federal courts, dismissal for *forum non conveniens* is not an appropriate remedy.  *See Waterproof Gear, Inc. v. Leisure Pro, Ltd.*, No. 8:08-cv-2191-T-33MAP, 2009 WL 1066249, at *5 (M.D. Fla. Apr. 20, 2009).

Even when properly analyzed under 28 U.S.C. section 1404(a),[3] Judicial Watch fails in its high burden to show transfer to Washington, D.C. or to California is warranted.  *See In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) ("[I]n the usual motion for transfer under section 1404(a), the burden is on the movant to establish that the suggested forum is more convenient.").  First, as to California, neither of the remaining parties is a resident of California. As to Washington, D.C., while that is a convenient forum for Judicial Watch, so, too, presumably is this district, where Judicial Watch maintains an office and does business.  Klayman asserts litigating in Washington, D.C. is not convenient for him, as evidenced by his choice of forum, a choice to be accorded significant weight under the totality of circumstances.

There does not appear to be an issue regarding the location of relevant documents, and the Court assumes Judicial Watch's employees who travel to Florida on Judicial Watch business can continue to travel here should their testimony be required or requested by their employer. There is no showing regarding the relative means of the parties; this consideration does not factor into the Court's analysis.  There is also no showing that the courts in Washington, D.C. are more familiar with the law governing Klayman's claims than is this Court.  Lastly, trial efficiency and the interest of justice are served equally by keeping the case here as by transferring the case.  The only additional efficiency the Court can see would arise if Klayman decides to sue the Individual Defendants in Washington, D.C.; consolidating all claims and

---

[3] The Motion requests a dismissal for improper venue.  Nevertheless, under 28 U.S.C. section 1406(a), the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

Defendants there would serve efficiency.  However, until those Defendants are in fact served there, the Court cannot assume this consideration is satisfied.

Based on this assessment of the relevant circumstances, the Court does not find a transfer to another judicial district is warranted.

## IV.   CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that the Motion to Dismiss Plaintiff's Amended Complaint **[ECF No. 16]** is **GRANTED in part** and **DENIED in part**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 5th day of September, 2013.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record