UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 13-20610-CIV-ALTONAGA/Simonton

LARRY E. KLAYMAN,

    Plaintiff,

v.

JUDICIAL WATCH, INC.,

    Defendant.
_____/

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**WITH SUPPORTING MEMORANDUM OF LAW**

Defendant Judicial Watch, Inc. ("Judicial Watch"), through undersigned counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure, moves this Court for summary judgment on all of Plaintiff's claims. Judicial Watch submits that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Grounds for this motion are set forth more fully in the following Memorandum of Law.

## MEMORANDUM OF LAW

### I. INTRODUCTION

Judicial Watch is entitled to judgment as a matter of law for the following reasons:

The allegedly defamatory statement was substantially true and Plaintiff, a public figure, cannot prove actual malice. Plaintiff claims that a representative of Judicial Watch falsely stated that he had been "convicted" of the crime of failure to pay child support. Judicial Watch denies that such a statement was made. Nonetheless, Plaintiff had, in fact, been indicted for failure to pay child support and he had been found in contempt of court on three occasions for failure to

pay child support. The gist or sting of the allegedly defamatory statement is not worse than the gist or sting of the literal truth. Accordingly, Plaintiff's claim for Defamation, Count I, is barred.

All other claims are barred based on the single publication/single action rule and the First Amendment. The allegedly defamatory statement gives rise to a single cause of action for defamation, which fails as a matter of law.

Furthermore, Count II, which is for Defamation by Implication fails for same reasons the claim for Defamation fails. The theory of Defamation by Implication is subsumed within the tort of defamation. The same defenses apply and Judicial Watch is entitled to summary judgment. Plaintiff cannot establish Count III for Tortious Interference with a Contract because the evidence establishes that the contract was, in fact, performed. Lastly, Plaintiff cannot establish Count IV for Intentional Infliction of Emotional Distress, because Plaintiff cannot establish extreme or outrageous conduct.

## II. FACTS

Judicial Watch has filed a Statement of Material Facts ("SOMF"), pursuant to Local Rule 56.1. The Statement of Material Facts is incorporated herein. The material facts are summarized as follows.

The Plaintiff Larry Klayman ("Plaintiff" or "Klayman") is a public figure. *SOMF ¶¶ 1-5*. In his own pleadings, Klayman touts his notoriety. He claims that he gained "national exposure" through his political and legal endeavors, including lawsuits against the Clinton, Bush and Obama administrations. *SOMF ¶3*. Plaintiff claims that he "became so famous" that the producers of the hit TV show *West Wing* created a character in his likeness. *SOMF ¶5*.

The Plaintiff claims that he intended to file litigation in Florida challenging the candidacy of Barack Obama. *SOMF ¶6.* Klayman is part of the "birther" movement which questions the citizenship of Barack Obama.

A non-party named Orly Taitz is a California resident and attorney who is also part of the birther movement. *SOMF ¶9.* In February of 2012, Orly Taitz was running on the primary ballot for one of the California seats on the United States Senate. *SOMF ¶9.* Ms. Taitz was a speaker at a California meeting attended by Constance Ruffley, the Office Administrator for Judicial Watch's Western Regional Headquarters in San Marino, California. *SOMF ¶10.*

Ms. Ruffley and Ms. Taitz spoke about a number of issues after the meeting. *SOMF ¶11.* They eventually discussed Larry Klayman. *SOMF ¶11.* Ms. Ruffley affirms that the only information that she conveyed to Ms. Taitz about Larry Klayman was information that she had learned from public records, including information related to court proceedings for failure to pay child support. *SOMF ¶11.* She does not recall stating that Mr. Klayman had been convicted for the crime of failure to pay child support. *SOMF ¶11.* This was the only discussion that Ms. Ruffley had with Ms. Taitz regarding Larry Klayman. *SOMF ¶11.*

Klayman alleges that Constance Ruffley uttered a defamatory statement about him during this conversation. Specifically, Klayman alleges that Ms. Ruffley stated that Mr. Klayman had been convicted of the crime of failure to pay child support. Klayman alleges that this statement was published on Orly Taitz's website.

Ms. Taitz stated in her February 23, 2012 website posting:

Yesterday I gave a 2 hour presentation of my platform as a candidate for the US Senate. The presentationwas (sic) given to some 100 CA voters in the Women's club of Garden Grove. I was told, that a representative of the Judicial Watch drove for over an hour from San Marino to hear me speak and talk to me. I got a very warm reception, after my presentation people stood up and applauded. This

member of the judicial watch approached me and gave me her card. Her name is Constance Ruffley and she is an office administrator for the Judicial Watch in their Western Regional Headquarters at 2540 Huntington Dr., San Marino. She told me, that she used to work for the FBI and that she worked for the Judicial Watch for many years. She actually initiated the discussion about Larry Klayman and told me that she heard that he is involved in birther cases. I told her that this group, article2superpac was soliciting money, that they sent an e-mail and posted on their site an advertisement on February 10, asking for $25,000, claiming that they need to raise $25,000 in 96 hours, as the cases in Florida and California need to be filed within a week. I told her, that it was a hard sell, they wrote it is now or never, saying finally Obama's team met their match, dissing 4 years of my tireless work in the process, and in the end nothing was filed by Larry Klayman. It is not clear what happened to all of the money that was raised, who got it.

Ms. Ruffley actually advised me that Larry Klayman is not licensed in California, she told me that he no longer works with the Judicial Watch and **that donors should know about litigation in Ohio, where he was convicted just recentlty (sic) of not paying large amount in child support [emphasis added].** She provided a lot of other information. I will publish only, what is a public record. I am not publishing anything, that is not in public record.

**A number of individuals sent me this information:**

**Larry Klayman, 60, of Los Angeles, California, was indicted on two (2) counts of criminal nonsupport. He owes $78,861.76 for his two children ages 11 and 14. Two hearings were held in Domestic Relations Court between 2009 and 2010. The last voluntary payment was made on August 30, 2011, in the amount of $1,014.26. Arraignment is scheduled for February 7, 2012 [emphasis added].**

http://www.politicalforum.com/current-events/232994-breaking-democrat-files-ballot-challengeobjection-against-obama-florida-2.html

The entire text of Orly Taitz's website posting is contained in the Statement of Material Facts. *SOMF ¶13*. The alleged comments from Constance Ruffley were clearly a very small part of a lengthy commentary about Klayman. The allegedly defamatory statement was "that donors should know about litigation in Ohio, where he was convicted just recently of not paying large amount in child support," and the focus is on the word "convicted."

It is beyond dispute that Klayman had been **indicted** for failure to pay child support. *SOMF ¶13.* Orly Taitz's website correctly reported that Klayman had been indicted and that the arraignment was held on February 7, 2012, only 16 days prior to the website posting. *SOMF ¶13.*

A certified copy of the indictment is attached to the Statement of Material Facts. On or about January 24, 2012, Larry Klayman was indicted by the Cuyahoga County Court of Common Pleas, Criminal Court Division for Criminal Nonsupport, in violation of Ohio Revised Code §2919.21 (B). *SOMF ¶14.* The date of the offense was on or about September 25, 2009 through September 24, 2011.

Klayman had been found in contempt of court for failure to pay child support on **three** occasions:

1. On September 24, 2009, Klayman was found in contempt of court by the Court of Common Pleas, Division of Domestic Relations, Cuyahoga County, Ohio for failure to pay child support. Plaintiff was found to be in arrears in child support payments in the amount of $31,393. He was "sentenced for said contempt to THIRTY (30) days in jail, or in the alternative, to perform not less than 200 hours of community service in lieu of actual incarceration . . ." Plaintiff was given the opportunity to purge the contempt. Specifically, the judgment entry states, "However, the Obligor LARRY ELLIOT KLAYMAN's sentence will be purged provided that the Obligor, LARRY ELLIOT KLAYMAN, pays $3,200.00 through the CSEA within 30 days of the journalization of this order." *SOMF ¶15.*

2. On June 24, 2011, Klayman was again found in contempt of court by the Court of Common Pleas, Division of Domestic Relations, Cuyahoga County, Ohio. At the time of

    this contempt order, plaintiff was in arrears in child support in the amount of $47,600.90. He also owed $5,950 for tuition expenses for his children. Plaintiff was sentenced to 60 days in jail, but he was given the opportunity to purge the contempt. *SOMF ¶16*.

3. A Virginia court had previously found Klayman in contempt of court for failure to pay child support. An Ohio appellate court stated, "In October 2007, a Virginia court found Klayman in contempt of court for failing to pay $74,015 in support. To purge his contempt, Klayman paid the full amount to Luck [his ex-wife], plus interest and attorney's fees." *Klayman v. Luck*, 2012 WL 3040043 (Ohio App. 8th Dist). *SOMF ¶19*.

Plaintiff claims that the "convicted" comment somehow damaged him. He claims that the comment prevented him from filing a challenge to Barack Obama's candidacy on behalf of a client named Michael Voeltz. *SOMF ¶21*.

It is clear, however, that Klayman did, in fact, file at least two actions in Florida on behalf of Mr. Voeltz challenging the candidacy of Barack Obama. *SOMF ¶24*.

### III. LAW AND ARGUMENT

#### A. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for the motion" and identifying those portions of the record that "demonstrate the absence of a genuine issue of material fact." *Id.* at 323. Once the moving party has established the

absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and by his own "affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. The non-moving party must rely on more than conclusory statements of allegations unsupported by facts. *Evers v. General Motors Corp.,* 770 F.2d 984, 986 (11th Cir. 1985).

Judicial Watch submits that Klayman cannot submit competent and admissible evidence demonstrating genuine issues for trial.

### B. Applicable Law

"Florida courts apply the 'significant relationship' test to decide which state's laws apply to various elements of trial." *Connell v. Riggins*, 944 So.2d 1174, 1176 (Fla. 1st DCA 2006). "The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties . . ." *Bishop v. Fla. Specialty Pain Co.,* 389 So.2d 999, 1001 (Fla. 1980).

The allegedly defamatory statement was made in the State of California by a California resident to a California resident. Plaintiff claims that the statement was directed to Florida and that he sustained an injury in Florida.

Judicial Watch believes that the State of California has a more significant relationship to the occurrence and the parties. The Court may, however, find it unnecessary to engage in a choice of law analysis. The laws of the State of Florida and the State of California are substantially the same and Judicial Watch believes that the Court should reach the same result regardless of whether it applies Florida law or California law. Therefore, a conflict of law

analysis may be unnecessary. *See Cheney v. IPD Analytics*, 2009 WL 4800247, *5 (S.D. Fla.). Judicial Watch will cite the applicable law for each state.

### C. Defamation

"A common law claim for defamation requires the unprivileged publication (to a third party) of a false and defamatory statement concerning another, with fault amounting to at least negligence on behalf of the publisher, with damage ensuing." *Don King Productions v. Walt Disney Co.,* 40 So.3d 40, 43 (Fla. 4th DCA 2010) (citing *Mile Marker, Inc. v. Petersen Publishing, L.L.C.,* 811 So.2d 841, 845 (Fla. 4th DCA 2002). Pursuant to California law, "[t]he elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injury or causes special damage." *Sanders v. Walsh*, 219 Cal.App.4th 855, 862, 162 Cal.Rptr.3d 188 (Cal. App. 2013).

"A public figure bringing a defamation action must prove more than mere negligence on the part of the publisher; he must also prove that the publisher acted with actual malice." *Don King Productions v. Walt Disney Co.,* 40 So.3d 40, 43 (Fla. 4th DCA 2010). Pursuant to California law, a public figure must prove actual malice by clear and convincing evidence. *Annette F. v. Sharon S.,* 119 Cal.App.4th 1146, 1167, 15 Cal.Rptr.3d 100 (Cal.App. 4 Dist. 2004).

Whether a person is a "public figure" is a question of law. *Mile Marker, Inc. v. Petersen Publishing, L.L.C.,* 811 So.2d 841, (Fla. 4th DCA 2002). "Under U.S. constitutional defamation law there are two classes of 'public figures': 'general public figures' of requisite fame or notoriety in a community who are always considered public figures, and 'limited public figures' who have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Id.* In his Amended Complaint Larry Klayman

touts his own notoriety and establishes himself as a general public figure. Accordingly, Klayman must prove actual malice.

"The actual malice test requires plaintiffs to show that defendants published the defamatory material with a 'high degree of awareness of . . . [its] probable falsity.'" *Silvester v. American Broadcasting Companies, Inc.*, 839 F.2d 1491, 1493 (11th Cir. 1988); *Seropian v. Forman*, 652 So.2d 490, 494 (Fla. 4th DCA 1995). The plaintiff must show that the defendant made the statement "with knowledge that it was false, or with reckless disregard as to whether it was true of false." *Seropian,* 652 So.2d at 493. Stated differently, the plaintiff must show that the defendant lied or entertained serious doubts about the truth of the statement. *Id.*

Pursuant to California law, "[t]he actual malice standard . . . requires a showing that the allegedly false statement was made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Annette F. v. Sharon S.,* 119 Cal.App.4th 1146, 1167, 15 Cal.Rptr.3d 100 (Cal.App. 4 Dist. 2004). "The reckless disregard standard requires 'a high degree of awareness of . . . probable falsity . . .'" *Id.* The existence of actual malice turns on the defendant's subjective belief as to the truthfulness of the allegedly false statement." *Id.*

### 1. The Substantial Truth Defense

"Under the substantial truth doctrine, a statement does not have to be perfectly accurate if the 'gist' or the 'sting' of the statement is true." *Smith v. Cuban American Nat. Foundation*, 731 So.2d 702, 706 (Fla. 3rd DCA 1999). "According to U.S. Supreme Court and Florida case law, falsity exists only if the publication is substantially and materially false, and not just if it is technically false." *Id.* at 707. Put another way, "[a] 'statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Id.* (quoting *Masson v. New Yorker Magazine*, 501 U.S. 496, 517 (1991)).

Instead of requiring perfect accuracy, what Florida "law requires is that the publication shall be substantially true, and that mere inaccuracies, not affecting materially the purport of the article are immaterial.'" *McCormick v. Miami Herald Publishing Co.,* 139 So.2d 197, 200 (Fla. 2nd DCA 1962 (citation omitted).

In California, "[t]ruth, of course, is an absolute defense to any libel action. In order to establish the defense, the defendant need not prove the literal truth of the allegedly libelous accusation, so long as the imputation is substantially true so as to justify the 'gist or sting' of the remark." *Edward/Ellis v. New United Motors Manuf., Inc.,* 2008 WL 5384323, *6 (N.D. Cal); *Campanelli v. Regents of University of California,* 44 Cal.App.4th 572, 581-82, 51 Cal.Rptr.2d 891 (1st Dist.1996).

A publication must be considered in its entirety, and not merely a particular phrase or sentence. *Byrd v. Hustler Magazine, Inc.*, 433 So.2d 593, 595 (Fla. 4th DCA 1983). According to both Florida courts and California courts, when determining whether a statement is defamatory, a court should consider the context in which the statement is made. *Fidelity Warranty Services, Inc. v. Firstate Ins. Holdings, Inc.*, 74 So.3d 506, 515 (Fla. 4th DCA 2011); *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal.App.4th 688, 701, 61 Cap.Rptr.3d 29, 40 (Cal. App. 2007). "This means that the court should 'consider all of the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is published.'" *Fidelity Warranty Services, Inc.*, 74 So.3d at 515 (citing *Morse v. Ripken*, 707 So.2d 921, 922 (Fla. 4th DCA 2011). "The contextual analysis requires that courts examine the nature and full content of the particular communication, as well as the knowledge and understanding of the audience targeted by the publication." *Overstock.com, Inc.* 151 Cal.App.4th at 701.

## 2. Argument

The alleged statement was substantially true and Klayman cannot establish actual malice.

Klayman complains about the use of the word "convicted" instead of the word "indicted." The entire alleged phrase, per Orly Taitz's website, was "donors should know about litigation in Ohio, where [Klayman] was convicted just recently of not paying large amount in child support."

Judicial Watch believes that the Court should consider the entire context. The verbal statement was allegedly made to a very sophisticated person, a lawyer who was seeking a seat on the U.S. Senate. This person, Orly Taitz, represented that she would publish only matters of public record. On her website, Ms. Taitz accurately cited a news report reflecting that Klayman had been indicted for failure to pay child support and arraigned only 16 days prior to the website commentary. Ms. Taitz indicated that others had provided information about Klayman's child support issue. Ms. Taitz was in a position to discern the truth of any alleged statement regarding Klayman.

The gist of the alleged comment was that people intending to donate to Klayman's planned challenge to Barack Obama's candidacy should know about Klayman's many issues, one of which was failure to pay child support.[1] The comment was substantially true and not made with actual malice. **Klayman had been found in contempt of court three times for failure to pay child support and he had been criminally indicted for failure to pay child support**.

---

[1] The website refers to "litigation" in Ohio. The term "litigation" is generally used in the context of civil cases, and not criminal cases. The use of the word litigation may lessen the sting of the alleged comment.

The "gist" or "sting" of the allegedly false statement was not more severe than the literal truth. Judicial Watch asks the Court to compare the following statements.

| **Comment in Orly Taitz Website** | **Comments Based on Literal Truth** |
|---|---|
| Donors should know about litigation in Ohio, where Klayman was convicted just recently of not paying large amount in child support. | • Donors should know about Klayman's recent indictment in Ohio for not paying a large amount of child support and the fact that he was found in contempt of court three times for failure to pay child support; or<br>• Donors should know about Klayman's recent indictment in Ohio for not paying a large amount of child support; or<br>• Donors should know about the fact that Klayman was found in contempt of court three times for failure to pay child support. |

The gist or sting of the alleged statement to Orly Taitz may be less severe than the gist or sting of the literal truth. An average person could view one indictment and three findings of contempt of court more negatively than one conviction. The gist or sting of the indictment alone may be no different than the gist or sting from a conviction. The gist or sting of the three contempt citations may be worse than the gist or sting from a conviction. As noted below, many people do not understand legal terms and may not understand the difference between an indictment and a conviction.

The alleged statement on the website was "substantially true" under Florida and California law. Klayman cannot prove that the alleged statement was made with "actual malice." If the allegedly defamatory statement is not true, it is so close to the truth that a person making the statement would not be deemed to have a reckless disregard for the truth. Constance Ruffley attests that she does not recall stating that Klayman had been "convicted" and Ms. Ruffley confirmed that she intended to convey only publicly available information.

Two California cases are analogous to this case.

In *Annette F. v. Sharon S.,* 119 Cal.App.4th 1146, 1167, 15 Cal.Rptr.3d 100 (Cal.App. 4 Dist. 2004) the court considered the substantial truth defense and the issue of actual malice in the context of a statement that the plaintiff was a "convicted perpetrator of domestic violence." The plaintiff had not actually been convicted of domestic violence. She had, however, engaged in domestic violence. After an evidentiary hearing, a court made a finding that the plaintiff had perpetrated domestic violence and issued a written order granting a request for a three-year restraining order against the plaintiff. *Id.* at 1156. The court found that the plaintiff was unable to establish "actual malice" for the purpose of her defamation claim. The court noted that "the dictionary meaning of the word 'convict' does not necessarily mean a finding of guilt of a crime; it can also mean 'to show or prove to be guilty of something blamable (as wrong or error).'" *Id* at 1167-68. The court also stated that the

> "use of the word 'convicted' to refer to a noncriminal adjudication is fairly common use of the term. As Sharon [the defendant] points out in her opening brief, laypersons not trained in the law commonly use the word "convicted" to refer to civil findings. By way of ex-ample, Sharon cites newspaper articles reporting that O.J. Simpson was "convicted" of wrongful death in the civil trial against him. Even appellate courts are not immune to this loose usage of the term. (See, e.g., *West v. Matteson–Southwest Co., Ltd.* (Tex.Civ.App.1963) 369 S.W.2d 496, 502 ["convicted of a breach of the contract"]; *Williams v. Colquett* (1961) 272 Ala. 577, 133 So.2d 364, 370 ["convicted tort-feasor"]; *Bonner v. Otto* (1926) 31 N.M. 395, 246 P. 902, 903 ["convicted of a breach of the contract"]; *Ward v. Barnes* (1894) 95 Ga. 103, 22 S.E. 133, 134 ["convicted either of the tort or breach of contract ...."].) Thus, Sharon's explanation that she innocently used the term "convicted" to refer to a noncriminal adjudication of domestic violence by the family court is not so implausible as to support an inference of actual malice.

*Id* at 1168-69. Accordingly, the appellate court affirmed the dismissal of the defamation claim.

In *Edward/Ellis v. New United Motors Manufacturing, Inc.,* 2008 WL 5384323, (N.D. Cal.), the plaintiff alleged, among other things, that the defendants were liable for slander as a

result of stating that he "had been convicted of credit card fraud, assault with a deadly weapon, rape, and sexual assault, and that he was a suspect in a home invasion." *Id.* at \*5. The plaintiff admitted that he was a suspect in a home invasion, so the defendants were clearly entitled to summary judgment on that issues. Despite evidence of the falsity of the statements related to credit card fraud and sexual assault, the court granted summary judgment because the plaintiff was not able to prove actual malice. Even though the plaintiff had been convicted of statutory rape and not rape, the court found that the statement "no doubt was substantially true 'so as to justify the gist or sting of the remark.'" *Id.* at \*6.[2]

The law is clear in both Florida and California. A person like Larry Klayman, who touts and promotes himself as a public figure, has no claim for defamation when statements are substantially true or statements are not made with actual malice. Given Klayman's indictment for failure to pay child support and three contempt of court citations for failure to pay child support, the comment that "donors should know about litigation in Ohio, where Klayman was convicted just recently of not paying large amount in child support" was substantially true and

---

[2] Courts from other jurisdictions have reached similar conclusions. In *Barnett v. Denver Publishing Company, Inc.*, 36 P.3d 145 (Colo. App. 2001), the court found that a statement that a political candidate had been "convicted in a stalking incident" was substantially true, when the candidate had been convicted of harassment and the judge stated during sentencing that the crime was "almost stalking." In *Read v. Phoenix Newspapers, Inc.*, 819 P.2d 939 (Ariz. 1991), the court found that a statement that a political candidate was convicted of a misdemeanor for firing a gun was substantially true, when the candidate had been convicted of displaying a weapon. In *G.D. v. Kenny*, 984 A.2d 921 (N.J. Super. 2009), the court found that a statement that an aide to a political candidate was a "convicted drug dealer" was "fairly accurate" and true, even though the aide had only been convicted of possession with intent to distribute. The Michigan Supreme Court found that a newspaper report that a private plaintiff had been charged with a sexual crime was substantially true when the private plaintiff had been arrested but not yet arraigned. *Rouch v. Enquirer & News of Battle Creek Michigan*, 487 N.W.2d 205 (Mich. 1992).

not made with actual malice. Accordingly, Judicial Watch requests summary judgment on Klayman's claim for defamation.

### D. Single Publication/Single Action Rule

Klayman attempts to assert claims for Defamation by Implication, Tortious Interference with a Contract and Intentional Infliction of Emotional Distress. All of those claims are barred by the single publication/single action rule.

The single publication/single action rule means that a single publication of an allegedly defamatory statement gives rise to only a single cause of action. *Kamau v. Slate*, 2012 WL 5390001, *7 (N.D. Fla.); *Callaway Land & Cattle Co., Inc. v. Banyan Lakes C. Corp.*, 831 So.2d 204, 209 (Fla. 4th DCA 2002). "The single publication/single action rule prohibits a plaintiff from filing multiple actions or causes of action arising from the same publications as a failed defamation claim." *Thomas v. Patton*, 2005 WL 3048033 (Fla. Cir. Ct.). "The rule is designed to prevent plaintiffs from circumventing a valid defense to defamation by recasting essentially the same facts into several causes of action, all meant to compensate for the same harm." *Id.*

A plaintiff cannot maintain a cause of action for intentional infliction of emotional distress based on the same publication as cited in a claim for defamation. *Ortega Trujillo v. Banco Cent. del Ecuador,* 17 F.Supp.2d 1340, 1343 (S.D.Fla. 1998).

> In Florida, a single publication gives rise to a single cause of action. See *Fridovich v. Fridovich*, 598 So.2d 65, 70 (Fla.1992) (successful invocation of defamation privilege precludes cause of action for intentional infliction of emotional distress if sole basis for latter is same publication) . . . An attempt to state a claim for intentional infliction of emotional distress based on the same publication as the defamation count must fail. *See Clark v. Clark*, 1993 WL 528464, at *4 (Fla.Dist.Ct.App.1993). The claim for intentional infliction of emotional distress must stem from outrageous conduct separate from the defamation and not merely "[re]describe the tort of libel while characterizing it as 'outrageous conduct.' " *Boyles v. Mid–Florida Television Corp*., 431 So.2d 627, 635 (Fla.Dist.Ct.App.1983).

*Ortega Trujillo v. Banco Cent. del Ecuador,* 17 F.Supp.2d 1340, 1343 (S.D.Fla. 1998). Likewise, a plaintiff cannot maintain a cause of action for malicious interference with business or intentional interference with an advantageous business relationship, based on a single publication of an allegedly defamatory statement. *Orlando Sports Stadium, Inc. v. Sentinel Star Co.,* 316 So.2d 607, 609 (Fla. 4th DCA 1975); *Ovadia v. Bloom*, 756 So.2d 137, 140 (Fla. 3rd DCA 2000).

California law is the same or substantially the same. California Civil Code §3425.3 states:

> No personal shall have more than one cause of action for damages for libel or slander or invasion of privacy or any other tort founded upon any single publication or exhibition or utterance . . .

California courts have also held that claims for intentional infliction of emotional distress cannot be founded on alleged defamation, when the same facts do not support claims for defamation. *Flynn v. Higham*, 149 Cal.App.3d 677, 682, 197 Ca.Rptr. 145 (Cal. App. 1983), *Thompson v. Grillo*, 2011 WL 5996177, *2 (Cal. App. 2011).

All of Klayman's claims stem from a single alleged publication – the alleged statement to Taitz. Klayman cannot circumvent the failure of his defamation claim by recasting his claim under different titles. Klayman's only claim is for defamation and it fails as a matter of law.

### E. First Amendment Protection

The Single Publication/Single Action rule is closely related to, or perhaps a restatement of, the protection afforded by the First Amendment to the United States Constitution. "[A] plaintiff may not use related causes of action to avoid the constitutional requisites of defamation claim." *Farah v. Esquire Magazine*, -- F.3d --, 2013 WL 6169660, *11 (C.A.D.C. 2013)." First

Amendment considerations that apply to defamation claims also apply to claims for tortious interference with a contract and intentional infliction of emotional distress. *Id.; Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56-57, 108 S.Ct. 876, 882-83 (U.S. 1988).

The protections afforded by the First Amendment bar Klayman's claims for Defamation by Implication, Tortious Interference with a Contract, and Intentional Infliction of Emotional Distress. Furthermore, Klayman cannot establish facts to support those claims.

### F. Defamation by Implication

The Florida Supreme Court has stated, "defamation by implication is a well-recognized species of defamation that is subsumed within the tort of defamation." *Jews For Jesus v. Rapp*, 997 So.2d 1098, 1108 (Fla. 2008). The Florida Supreme Court further stated, "[a]ll of the protections of defamation law that are afforded to the media and private defendants are therefore extended to the tort of defamation by implication." *Id.*

Pursuant to California law, a plaintiff must also prove that the publisher "intended to convey the defamatory implication." *Thomas v. Los Angeles Times Communications, LLC*, 45 Fed.Appx. 801, 802 (9th Cir. 2002) (citing *Dodds v. Am. Broad. Co.,* 145 F.3d 1053, 1064 (9th Cir. 1998).

The lack of actual malice and the substantial truth defense bar the claim for defamation by implication. Accordingly, Judicial Watch submits that this Court should enter summary judgment in its favor on the defamation by implication claim.

### G. Tortious Interference with a Contract

In Florida, "[t]he elements of tortious interference with a contract or business relationship are: (1) the existence of a business relationship, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights; (2) the defendant's knowledge of the

relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the interference." *Salit v. Ruden, McClosky, Smith Schuster & Russell, P.A.,* 742 So.2d 381, 385 (Fla. 4th DCA 1999).

In California, "[t]o recover in tort for intentional interference with the performance of a contract, a plaintiff must prove: (1) a valid contract between plaintiff and another party; (2) defendant's knowledge of the contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal.4th 503, fn. 5, 869 P.2d 454 (Cal. 1994).

Klayman alleges that Judicial Watch somehow interfered with Klayman's contract to sue President Obama, through Florida resident Michael Voeltz. There is no evidence suggesting that the alleged contract with Mr. Voeltz was somehow breached or disrupted. Klayman filed at least two lawsuits on behalf of Mr. Voeltz against Barack Obama.

Judicial Watch submits that it is entitled to summary judgment on the claim for Tortious Interference with a Contract.

### H.  Intentional Infliction of Emotional Distress

The elements of a claim for intentional infliction of emotional distress are: "(1) The wrongdoer's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result; (2) The conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community; (3) The conduct caused emotional distress; and (4) The emotional distress was severe." *Stewart v. Walker,* 5 So.3d 746, 749 (Fla. 4th DCA 2009). In California, the elements for an intentional infliction of emotional distress claim are: "(1)

extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering of severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Davidson v. City of Westminster*, 32 Cal.3d 197, 209, 649 P.2d 894, 901 (Cal. 1982).

Klayman cannot prove that the substantially true statement attributed to Judicial Watch was extreme or outrageous and, therefore, Klayman cannot establish one of the necessary elements of his claim for intentional infliction of emotional distress.

Judicial Watch requests summary judgment in its favor on the claim for intentional infliction of emotional distress.

### IV. CONCLUSION

Judicial Watch respectfully submits that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. The allegedly defamatory statement was substantially true and Klayman cannot prove that Judicial Watch acted with actual malice. Accordingly, the claim for Defamation fails as a matter of law. All other claims fail based on the single publication/single action rule, the First Amendment, and for the reasons stated above.

Accordingly, Judicial Watch requests summary judgment in its favor on all of Plaintiff's claims.

*Klayman v. Judicial Watch, Inc., et al*
*Case No. 13-20610-CIV*
*Page 20*

Dated: **December 5, 2013**         Respectfully submitted,

                                      SCHWED KAHLE & KRESS, P.A.
                                      11410 North Jog Road, Suite 100
                                      Palm Beach Gardens, FL 33418
                                      Telephone: (561) 694-0070
                                      Facsimile: (561) 694-0057

                                      /s/ Douglas J. Kress_____
                                      Douglas J. Kress, Esq.
                                      Florida Bar No.: 0061146
                                      Email: dkress@schwedpa.com

                                     *Attorneys for Defendant Judicial Watch, Inc.*

## Certificate of Service

I hereby certify that on **December 5, 2013**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                      /s/ Douglas J. Kress_____
                                      Douglas J. Kress, Esq.
                                      Florida Bar No.: 0061146

## SERVICE LIST

LARRY KLAYMAN, ESQ.
2520 Coral Way, Suite 2027
Miami, FL 33145
Telephone: (310) 595-0800
Email: leklayman@gmail.com

VIA CM/ECF