**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

LARRY KLAYMAN,

                Plaintiff,

v.

JUDICIAL WATCH,

                Defendant.

Case No: 1:13-cv-20610-CMA

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

Plaintiff Larry Klayman ("Plaintiff") hereby files this opposition to Defendant's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure ("FRCP") Rule 56 and further request that Defendant pay for the attorney's fees and costs incurred by its unreasonable and vexatious litigation.

**INTRODUCTION**

Plaintiff brought this lawsuit against Defendant Judicial Watch ("Defendant") for defamation, defamation by implication, tortious interference with a contract, and for intentional infliction of emotional distress. The action arises out of the knowingly false statements made by Constance Ruffley ("Ruffley"), an Office Administrator and Management Representative of Judicial Watch, who, while acting under the authority and direction of Judicial Watch's directors, maliciously and willfully conveyed false and defamatory statements about Plaintiff, alleging that Plaintiff had been "convicted" of a crime for not paying child support. Instead of adjudicating this case based on the merits of Plaintiff's claims, Defendant is now seeking to take a "second bite of the apple" by attempting to summarily dismiss Plaintiff's claims through Defendant's Motion for Summary Judgment, after Defendant's Motion to Dismiss was recently denied. As shown below, the claims made in Defendant's Motion for Summary Judgment are false on their

1

face -- based upon publicly available information. In any event, consideration of a motion for summary judgment is premature at this stage of the case and the discovery process will provide additional proof of Plaintiff's meritorious claims.

## STATEMENT OF FACTS

Plaintiff is a lawyer licensed to practice in Florida (and in other jurisdiction) and has at all times been a member in good standing through his approximate 36-year career as an attorney. Aff. of Larry Klayman at 4 ("Klayman Aff."). Plaintiff practices law continuously and extensively throughout the country, including Florida, and resides in and does business within this district and this state, with active cases still pending in this district and elsewhere in Florida. Compl. ¶ 2; Klayman Aff. at 4. In fact, Plaintiff began his legal career in this district, being admitted into The Florida Bar on December 7, 1997 and becoming a member of the bar of this court in or around the same time. Compl. ¶ 2.

Plaintiff was also the founder, former chairman, and general counsel of Judicial Watch, a public interest group that purports to serve as a government watchdog to this date. Compl. ¶ 2. This action arises from a series of events that took place after Plaintiff left Judicial Watch to run for the U.S. Senate in Florida's Republican Primary in 2004. Compl. ¶ 2. Plaintiff subsequently gained notoriety and national recognition for his high profile lawsuits against the Clinton, Bush, and Obama administrations, as well as other high-profile public interest endeavors through his public interest foundations, Judicial Watch and Freedom Watch, which are dedicated to preserving and protecting individual rights and civil liberties. Compl. ¶¶ 2, 3, 4. In fact, he is the only person ever to have a court rule that a U.S. president, namely President Bill Clinton, committed a crime. Compl. ¶ 4. During President George W. Bush's administration, Plaintiff also filed suit against the administration for alleged illegal wiretaps of American citizens and other alleged improper acts. *Id.* Recently, Plaintiff won a preliminary injunction against the

National Security Agency ("NSA") for violations of the 4th Amendment to the U.S. Constitution for its overly broad surveillance on over 300 million U.S. citizens, without regard to whether or not there is probable cause that they are communicating with terrorists or terrorist groups.

*Klayman v. Obama*, No. 13-851 (D.D.C. Dec. 16, 2013). As a result of Plaintiff's success against the NSA and the Obama Administration, ABC News did a profile on him, entitled "Meet Larry Klayman: Man Behind the NSA Lawsuit." Klayman Aff. at 8. Additionally, The Washington Times recently released an article profiling Plaintiff and his steadfast principles, entitled "Legal gadfly in NSA surveillance case can sting even his own mother in pursuit of principles."  The article, profiling Plaintiff's recent success fighting for Constitutional rights against the Obama Administration, stated that Plaintiff remains "ready to rumble on behalf of ethics and morality within the American legal and governmental systems." Klayman Aff. at 27. Consequently, Plaintiff has become widely known and recognized for his strong legal advocacy.

Over the past thirty-six years of legal practice, Plaintiff has not only helped expose the Chinagate scandal, but also other significant scandals involving government corruption. Klayman Aff. at 6. As Dr. Richard Swier of RedCounty.com, stated, "Larry believes it is more important to be virtuous than to be liked," referring to Plaintiff as the "One Man Tea Party." Klayman Aff. at 26. Further evidencing Plaintiff's upstanding reputation is an article written by Joseph Farah, proclaiming Plaintiff to be not just Farah's hero, but an American hero. Klayman Aff. at 29. Similarly, in another article regarding Plaintiff's involvement in uncovering the Whitewater scandal, entitled "Thank God for Larry Klayman," Plaintiff is further praised for his instrumental involvement in uncovering many government scandals and fighting government corruption. Klayman Aff. at 28. Additionally, Farah publicly endorsed Plaintiff during Plaintiff's U.S. Senate campaign in 2004 and, in announcing his endorsement, Farah referred to Plaintiff as a "man of character and principle." Klayman Aff. at 30. As an attorney, with the goal of fighting

government corruption through legal advocacy, Plaintiff heavily relies on his virtues and

honesty, as it is his reputation that determines clients' reliance and trust in him to solve their

legal problems and further the public interest. Klayman Aff. at 9.

Judicial Watch, which routinely represents individuals and interests with the same legal

needs as those Plaintiff also represents, clearly views Plaintiff's success, both in his successful

law practice and in public interest organization he founded, as a threat and undoubtedly as

competition, particularly in regard to their donor base, as many of the groups donors necessarily

overlap. Thus, Defendant willfully and maliciously sought to, and in fact did, harm Plaintiff and

his reputation by willfully disseminating false and defamatory statements that Plaintiff was

"convicted" of a crime for not paying child support, as evidenced by Taitz' web posting, which

stated, in pertinent part, the following:

> "Ms. Ruffley advised me that Larry Klayman is not licensed in California, she told me
> that he no longer works with the Judicial Watch and that donors should know about
> litigation in Ohio, where he was convicted just recently of not paying large amount in
> child support. She provided a lot of other information. I will publish only what is a public
> record. I am not publishing anything that is not in public record. A number of individuals
> sent me this information: Larry Klayman, 60, of Los Angeles, California, was indicted on
> two (2) counts of criminal non-support…" Exhibit 1.

Given Plaintiff's position as the founder and general counsel of Freedom Watch, an

organization that deals with government corruption and legal ethics, Defendant undoubtedly

knew that the organization Plaintiff founded would be significantly harmed by the false

accusation that he had committed and was convicted of a crime, as such an allegation would

clearly discredit Plaintiff and harm him both professionally and personally. Klayman Aff. at 10.

As such, in or around February 22, 2012, Ruffley, an Office Administrator and, thus, a

Management Representative of Judicial Watch, engaged in a conversation with "Dr. Orly Taitz,

Esquire" (Taitz) while attending an event. Compl. ¶ 12-13 Taitz is widely known as the founder

of the "Defend Our Freedom Foundation" and maintains the popular self-proclaimed website,

"The World's Leading Obama Eligibility Website." Compl. ¶ 13. During Ruffley's conversation

with Taitz, Ruffley intentionally conveyed a false and defamatory statement about Plaintiff,

alleging that Plaintiff had been "convicted" of a crime for not paying child support. Compl. ¶ 15.

**Judicial Watch's Constance Ruffley, in particular since she works in a management**

**position for a legal organization, clearly knows the meaning of the word "convicted" and**

**intended to convey that to donors and the general public.  Klayman Aff. at 14.**

Accordingly, Taitz' website, which reiterated the false and defamatory allegations made

by Ruffley, stated in relevant part:

> "Yesterday I have a 2 hour presentation of my platform as a candidate for the U.S. Senate. The presentation given to some 100 CA voters in the Women's club of Garden Grove. I was told, that a representative of the Judicial Watch drove for over an hour from San Marino to hear me speak and talk to me. I got a very warm reception, after my presentation people stood up and applauded. This member of the Judicial Watch approached me and gave me her card. Her name is Constance Ruffley and she is an office administrator for the Judicial Watch in their Western Regional Headquarters at 2540 Huntington Dr., San Marino. She told me that she used to work for the FBI and that she worked for the Judicial Watch for many years. She actually initiated the discussion about Larry Klayman and told me that she heard that he is involved in birther cases. I told her that this group, article 2 super pac, was soliciting money, that they sent an e-mail and posted on their site an advertisement on February 10, asking for $25,000 claiming that they need to raise $25,000 in 96 hours, as the cases in Florida and California need to be filed within a week. I told her, that it was a hard sell, they wrote it is now or never, saying finally Obama's team met their match, dissing 4 years of my tireless work in the process, and in the end nothing was filed by Larry Klayman. It is not clear what happened to all of the money that was raise, who got it.
>
> Ms. Ruffley actually advised me that Larry Klayman is not licensed in California, she told me that he no longer works with the Judicial Watch and ***that donors should know about litigation in Ohio, where he was convicted just recently of not paying large amount in child support.*** She provided a lot of other information. I will publish only what is public record. I am not publishing anything that is not public record." *[emphasis added]*

Prior to this defamatory publication, Plaintiff and others had made it known publicly that

Plaintiff planned to soon file a high profile case in Florida involving the eligibility of President

Barack Obama to run as a candidate in Florida concerning the state's primary and general

elections for 2012. Compl. ¶ 14.

This false statement was conveyed to Taitz with the intent and expectation that Taitz would further spread the malicious defamatory remarks by publishing it on her popular and widely viewed website so that the false statements would inevitably reach donors and consequently would detrimentally impact donations to the organization Plaintiff founded. Compl. ¶ 13. Defendant not only anticipated that Taitz would publish the false statement on her popular website, but that said publication would be widely circulated in this district, nationally, and worldwide, clearly with the intent to destroy Plaintiff personally and professionally, as such a defamatory statement would inevitably reach donors and significantly and detrimentally impact donations to the organization founded by Plaintiff. Compl. ¶ 13. Defendant's ploy was successful as the false and malicious statement was, in fact, published on Taitz' website and was, as predicted, disseminated, nationally and worldwide, directly effecting Plaintiff in this district, where Plaintiff resides and conducts business as a lawyer licensed to practice in Florida. Compl. ¶ 13.

Contrary to public record and readily accessible evidence, Ruffley falsely stated to Taitz that Plaintiff had been "convicted" of a crime for not paying a large amount of child support, despite the fact that Plaintiff has never been convicted of any crime in any circumstance (let alone, convicted of the crime for failure to pay child support). Klayman Aff. at 12. Evidence regarding the truth of whether Plaintiff was, in fact, convicted of a crime is readily available and accessible to the public and to Ruffley, who is not only in a senior managerial position at Judicial Watch and is authorized to speak on behalf of the organization but is also able to (and, in fact, experienced in) researching, investigating, and accessing public records. However, Ruffley obviously lied about available documents on public record that clearly establish that Plaintiff has never been convicted of any crime, and instead, willfully falsified facts, and omitted significant details in order to intentionally discredit Plaintiff, severely harm his reputation, and to detrimentally impact his donor base for the benefit of Defendant.

Specifically, available and accessible as part of the public record is the Agreed Judgment Entry Regarding Child Support Arrearage and Withdrawal of Capias, which shows that any order of contempt against Plaintiff had been vacated and dismissed, as Plaintiff had paid the amount due while also reserving his rights to appeal and fight the payment of the child support. Klayman Aff. at 14. Also publicly available is the court order by Judge Michael Donnelly of the Cuyahoga Court of Common Pleas, dismissing all charges against Plaintiff with regard to Plaintiff's alleged failure to pay child support, which clearly and irrefutably establishes that Plaintiff was **_never convicted_** of a crime and that the indictment had, in fact, been dismissed. Klayman Aff. at 18. Moreover, the dismissal and the vacating of the contempt order regarding child support was noted on the public docket for the Cuyahoga County Domestic Relations Court, which also is publicly available and accessible. Klayman Aff. at 20. In short, Judicial Watch's Ruffley lied and defamed Plaintiff as she obviously knew or had reason to know that her defamatory statements were in fact defamatory.

Moreover, Plaintiff also had a valid defense for not paying child support since Plaintiff had been completely and unlawfully been denied access to his children. Klayman Aff. at 16. Thus, Plaintiff's obligation to pay child support was nullified under Virginia law, pursuant to *Hartman v. Hartman*, 33 Vir. Cir. 373, 2994 WL 1031136 (Apr. 13, 1994). Plaintiff had also been advised by his attorney in the matter that he would need to have a contempt order issued in order to take the disputed matter of child support payments to the Court of Appeals of Ohio, Eighth Appellate District. Consequently, Plaintiff, following the legal advice of his attorney, sought to preserve his rights, particularly in regard to appealing the matter. Notwithstanding this, all contempt orders were, in fact, dismissed as a matter of public record. Klayman Aff. at 18.

As a direct result of Defendant's intentional, malicious, and calculated conduct, and the wide dissemination of the false statements, particularly in this district, Plaintiff was harmed, both personally and professionally, as well as in his standing in his community. Compl. ¶20. By

accusing Plaintiff of committing a crime, and the resulting reputational harm, Defendant not only

subjected Plaintiff to ridicule, humiliation, and embarrassment, but also caused Plaintiff severe

emotional distress, which effected Plaintiff both professionally and personally, in addition to

directly impacting Plaintiff's business in the legal profession. Compl. ¶ 20. Specifically,

Defendant intentionally and unjustifiably interfered with a contractual relationship between

Plaintiff and a potential client by spreading per se defamatory statements about Plaintiff,

damaging his reputation, and consequently, preventing Plaintiff from engaging in legal

representation. Compl. ¶ 29.

Despite Defendant's unlawful conduct, Defendant now seeks to evade the merits of

Plaintiff's claims by misleading this Court through significant misrepresentations, omissions, and

blatant false statements found in Defendant's Motion for Summary Judgment and the Statement

of Material Facts in Support of Defendant's Motion for Summary Judgment. Defendant's Motion

and Statement of Material Facts prematurely raises substantive issues by alleging false facts and

misconstruing the truth in an attempt to avoid the repercussions of their maliciously published

defamatory statements, which constitutes defamation per se in any event.

### THE LAW

Under Rule 56 of Federal Rules of Civil Procedure:

> A party may move for summary judgment, identifying each claim or defense —
> or the part of each claim or defense — on which summary judgment is sought.
> The court shall grant summary judgment if the movant shows that there is no
> genuine dispute as to any material fact and the movant is entitled to judgment as a
> matter of law. The court should state on the record the reasons for granting or
> denying the motion.

Fed. R. Civ. P. 56.

To prevail on a motion for summary judgment, the moving party has the heavy burden of

establishing that there are no genuine issues of material fact and must identify those portions of

the record that "demonstrate the absence of a genuine issue of material facts." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). In addition, the moving party has the initial responsibility of establishing that the nonmoving party has failed to offer sufficient evidence to support a valid legal claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

Additionally, on summary judgment, a court must construe all inferences in favor of the nonmovant. "Where a reasonable fact finder may 'draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment.'" *Lawrence v. Courtyards at Deerwood Ass'n,* 319 F. Supp. 2d 1133, 1139 (S.D. Fla. 2004) (quoting *Baifield v. Brierton*, 883 F.2d 923, 933-34 (11th Cir. 1989)). In a defamation action, summary judgment is almost always inappropriate, except in those rare cases where the circumstances surrounding the allegedly defamatory communication are completely undisputed. *See, e.g., Shaw v. R.J. Reynolds Tobacco Co.*, 818 F. Supp. 1539, 1541 (M.D. Fla. 1993), *aff'd,* 15 F.3d 1097 (11th Cir. 1994); *Abraham v. Baldwin*, 42 So. 591, 592 (Fla. 1906); *Glynn v. City of Kissimee,* 393 So. 2d 774. 776 (Fla. 5th DCA 1980).

This case is clearly not in a summary judgment stage. Indeed, given that Judicial Watch's Ruffley attests that she cannot recall what she said, and the false statements as recorded by Taitz clearly show what was, in fact, said, if summary judgment were appropriate at this stage of the case it would be in favor of Plaintiff. In any event, discovery has yet to proceed and summary judgment is inappropriate at this point of the proceeding, as explained below. For instance, discovery will confirm Ruffley's defamatory statements made to Taitz during their February 22, 2013 encounter. Ignoring the fact that a genuine dispute as to material facts exists, Defendant is simply attempting to take a "second bite of the apple" by filing this frivolous Motion for Summary Judgment after Defendant's previously filed Motion to Dismiss was denied.

## DEFENDANT'S STATEMENTS ARE PER SE DEFAMATORY

A statement is *per se* defamatory if "it imputes to another (a) a criminal offense amounting to a felony, or (b) a presently existing venereal or other loathsome and communicable

disease, or (c) conduct, characteristics, or a condition incompatible with the proper exercise of his lawful business, trade, profession, or office, or (d) the other being a woman, acts of unchastity. *Campbell v. Jacksonville Kennel Club, Inc.*, 66 So. 2d 495, 497 (Fla. 1953) citing Restatement, Torts, Section 570. "The significance of the classification of a communication as actionable per se lies in the fact that its victim need not plead or prove malice (except where a privilege is involved) or special damage because malice and the occurrence of damage are both presumed from the nature of the defamation." *Wolfson v. Kirk*, 273 So. 2d 774, 777 (Fla. Dist. Ct. App. 4th Dist. 1973) citing *Sharp v. Bussey*, 137 Fla. 96 (Fla. 1939); *Johnson v. Finance Acceptance Co. of Georgia*, 1935, 118 Fla. 397, 159 So. 364. "Such a presumption is not an ordinary presumption of fact, but is a presumption of law and is not, therefore, dispelled by the production of evidence." *Id.*

Here, the requirements for defamation and defamation per se are clearly satisfied as Defendant has falsely stated that Plaintiff was convicted of the crime of not paying for child support. In addition, Defendant imputed false statements about Plaintiff in his trade and profession. The statements were undoubtedly false and indisputably published, in this district, nationally and internationally.

### ***Defendant Falsely Imputed to Plaintiff a Criminal Offense Amounting to a Felony***

Defendant represented a published statement that Plaintiff was convicted of the crime of failing to pay a large amount of child support, thus falsely stating that Plaintiff committed crimes constituting felonies. Compl. ¶10. Specifically, Taitz stated that " Ms. Ruffley actually advised me that Larry Klayman is not licensed in California, she told me that he no longer works with the Judicial Watch and that donors should know about litigation in Ohio, where he was convicted just recently [sic] of not paying large amount in child support." *See also* Statement of Material

Facts ("*SOMF*") ¶13.  By stating that Plaintiff was convicted of the crime of not paying his child support, the statements clearly constitute defamation *per se*. *Campbell v. Jacksonville Kennel Club, Inc*., 66 So. 2d 495.  The statements were also intended to harm his trade and profession, as a lawyer who is convicted of a felony is likely to be disbarred. Plaintiff has undoubtedly established the falsity of these statements, which were widely published and disseminated through the intentional publication of the false accusation by Defendant, nationally, internationally, and most significantly within this district. Thus, the requirements for a claim under defamation per se have been clearly satisfied as the statement indisputably imputes to Plaintiff "a criminal offense amounting to a felony."

### *Defendant's Statements Imputed Conduct Incompatible With The Proper Exercise Of Plaintiff's Lawful Business, Trade, and Profession*

In addition, a statement is also per se defamatory when the statement imputes to another "conduct, characteristics, or a condition incompatible with the proper exercise of his lawful business, trade, profession, or office…" *Id.*  The statement that Plaintiff was "convicted" of a crime is one that affects Plaintiff in his trade and profession, particularly as a convicted attorney is subject to disbarment for a felony.  Plaintiff is also known for and relies on his principals and virtues in order to receive clients for his legal practice and support for the organization he founded, Freedom Watch, that fights for morals and ethics in government. Since this statement affects Plaintiff in his trade and profession, this statement amounts to a per se defamatory statement as well. Because the statements were per se defamatory, malice and the occurrence of damage are both presumed from the nature of the defamation, as stated in *Wolfson*, supra.

### DEFAMATION

The elements of a claim for defamation are as follows: "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a

public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1214 (Fla. 2010) citing *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008).

### ***Defendant's Statement Was False***

Plaintiff has never been convicted of any crime, including the crime of failing to pay child support. Klayman Aff. at 16. Not having any factual basis, Defendant simply ignored the truth and instead directed that the false allegation be published and widely circulated simply to harm the Plaintiff. With the complete public record available to them and which Judicial Watch's Ruffley said was the basis for her defamatory statements, Defendant instead chose to falsely accuse Plaintiff of being convicted of a crime, despite public records evidencing the contrary including the Agreed Judgment Entry Regarding Child Support Arrearage and Withdrawal of Capias, the court order by Judge Michael Donnelly of the Cuyahoga Court of Common Pleas, dismissing all charges against Plaintiff in regard to plaintiff's alleged failure to pay child support, and the public docket for the Cuyahoga County Domestic Relations Court noting the dismissal and the vacating of the contempt order regarding child support, which is even available online. Klayman Aff. Attachments B, C and D.

### ***Defendant's Defamatory and False Statements Were Published***

In the law of defamation, publication only requires that the false statement be transmitted to a single other person other than the person defamed. See *Doe v. Am. Online, Inc.*, 783 So. 2d 1010, 1016 (Fla. 2001) citing Restatement (Second) of Tort § 577. Regrettably, the despicable and outrageous false allegation that Plaintiff was convicted of a crime was widely circulated, both nationally and internationally, and publicized in print and on the internet, as intended by Defendant. (In fact, these false statements continue to be disseminated to this day. Judicial

Watch's Ruffley, who is in a management position at Judicial Watch and authorized to speak on behalf of the organization, acted in publishing the false accusation that Plaintiff was convicted of a crime to Taitz with the intent and design that the false statements not only be widely disseminated but also to reach donors. Thus, it is indisputable that the "publication" requirement has been satisfied, as further evidenced by Taitz' web posting with Ruffley's false statements.

### *Plaintiff Incurred Actual Damages as a Result of the Defamatory Statement*

There is no doubt that Plaintiff has been severely harmed as a result of the defamatory statements published by Judicial Watch's Ruffley with or without the direction of other Judicial Watch officers. The false accusations have undoubtedly considerably lowered Plaintiff in the estimation of the community, injured him in his occupation as a leading lawyer, and subjected him to hatred, ridicule, and contempt. More specifically, Defendant's defamatory accusation did, in fact, extensively harm Plaintiff's reputation, cripple his integrity as a lawyer, and impair his credibility in a manner that impeded on Plaintiff's ability to  practice law. Furthermore, Defendant's spreading of libelous and defamatory material about Plaintiff has caused serious injury to his profession and community standing and has adversely affected his legal advocacy, leading the public to question his fitness to practice law.

## DEFENDANT'S STATEMENTS AMOUNTED TO DEFAMATION BY IMPLICATION

Florida common recognizes a claim of defamation by implication. *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008) "[I]f the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts, he may be held responsible for the defamatory implication, unless it qualifies as an opinion, even though the particular facts are correct." *Id*. citing W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 116, at 117 (5th ed. Supp. 1988).

In addition to the clear and distinct defamation per se, Defendant is also liable for defamation by implication. Here, Defendant simply chose to pick and choose bogus facts while omitting the facts that would demonstrate that Plaintiff had never been convicted of any crime, let alone the crime of failing to pay child support. Evidence regarding the truth of whether Plaintiff committed and/or was convicted of the accused crime, is readily available and accessible to the public, and particularly for Defendant. However, Defendant ignored readily available public documents evidencing the falsity of Defendant's accusations and instead, willfully falsified facts, and omitted significant details in its publication in order to intentionally discredit Plaintiff and harm his reputation. In fact, Defendant omitted any reference to the truth that the contempt orders had been dismissed and vacated.

## <u>DEFENDANT'S DEFAMATORY STATEMENTS ARE NOT PROTECTED BY THE SUBSTANTIAL TRUTH DOCTRINE</u>

Under the substantial truth doctrine, a statement does not have to be perfectly accurate if the "gist" or the "sting" of the statement is true. *Smith v. Cuban Am. Nat'l Found.*, 731 So. 2d 702, 706 (Fla. Dist. Ct. App. 3d Dist. 1999) citing *Masson v. New Yorker Magazine*, 501 U.S. 496, 517, 115 L. Ed. 2d 447, 111 S. Ct. 2419 (1991); see also *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993); *Nelson v. Associated Press, Inc.,* 667 F. Supp. 1468, 1477 (S.D. Fla. 1987); *Woodard v. Sunbeam Television Corp.*, 616 So. 2d 501, 503 (Fla. 3d DCA 1993); *McCormick v. Miami Herald Publ'g Co.*, 139 So. 2d 197, 200 (Fla. 2d DCA 1962).

However, the U.S. Supreme Court further recognized that a statement is not false unless it "'would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'" *Smith*, 731 So. 2d at 706 citing *Masson*, 501 U.S. at 517. see also *Woodard*, 616 So. 2d at 503; *Early*, 354 So. 2d at 352; *Bishop v. Wometco Enters., Inc.*, 235 So. 2d 759 (Fla. 3d DCA 1970); *Hill v. Lakeland Ledger Publ'g Corp.,* 231 So. 2d 254, 256 (Fla. 2d

DCA 1970); *Hammond v. Times Publ'g Co*., 162 So. 2d 681, 682 (Fla. 2d DCA 1964);

*McCormick*, 139 So. 2d at 200.

It is evident that Judicial Watch's Ruffley's statements, made on behalf of Defendant, conveyed a different effect on the mind of the reader from which the pleaded truth would have produced. Specifically, Defendant engaged in direct, malicious acts, in an effort to defame Plaintiff through omissions of significant and material facts, which were readily available and accessible to Defendant, particularly as they are public record. In regard to the false accusation that Plaintiff committed and was convicted of the crime of failing to pay child support, Defendant intentionally and knowingly omitted material facts demonstrating the falsity of the allegation and evidencing the fact that Plaintiff has never been convicted of any crime, much less committed the crime in this regard. In fact, the public record contains substantial evidence of the falsity of Ruffley's statements that Plaintiff was convicted of a crime, including the Agreed Judgment Entry Regarding Child Support Arrearage and Withdrawal of Capias, the court order by Judge Michael Donnelly of the Cuyahoga Court of Common Pleas, dismissing all charges against Plaintiff in regard to plaintiff's alleged failure to pay child support, and the public docket for the Cuyahoga County Domestic Relations Court noting the dismissal and the vacating of the contempt order regarding child support. Klayman Aff. Attachment B and C. Thus, if Defendant included the substantial amount of evidence demonstrating the falsity of the allegation, Ruffley's statements would have had a profoundly different effect on the mind of the reader than the effect actually conveyed by the defamatory statement.

## **THE SINGLE ACTION/SINGLE PUBLICATION RULE DOES NOT APPLY**

The Single Action/Single Publication Rule does not apply because Plaintiff's defamation claim has not been, and should not be, dismissed. Defendant essentially sets forth the single

action/single publication rule as follows: "The single publication/single action rule…does not permit multiple actions when they arise from the same publication upon which a failed defamation claim is based." *Callaway Land & Cattle Comm Inc. v. Banyon Lakes Co. Corp.*, 831 So. 2d 204, 208-209 (Fla. 4th DCA 2002). In other words, the rule provides that when a defamation claim is dismissed, any related tort claims predicated on the same publication must also be dismissed. Id. (If "the defamation claim fails, the other counts based on the same publication must fail as well because the same privileges and defenses apply." (citing *Fridovich v. Fridovich*, 598 So. 2d 65,  70 (Fla. 1992)

Single Action/Single Publication Rule does not and cannot apply here because, as shown above, there is no basis to dismiss Plaintiff's defamation claims against Defendant. In fact, acting on behalf of Defendant, Ruffley, who holds a senior managerial position at Judicial Watch, falsely conveyed to Taitz that Plaintiff had been convicted of a crime. Defendant was fully aware that the statement would be posted on Taitz' website that is widely circulated nationwide, and would inevitably reach the present donors and the potential donors to Plaintiff and the organization he founded, Freedom Watch, which Judicial Watch obviously views as a competitor and a threat. Because Plaintiff's defamation counts will survive Defendant's Motion to Dismiss, the single action/single publication rule has no application here.

And even if Plaintiff's defamation claim were otherwise deficient, which it is not, application of the single action/single publication rule would not warrant dismissal of tort claims which Plaintiff has based on independent facts beyond those underlying his defamation claim. *See e.g. Primerica Fin. Servs., Inc. v. Mitchell*, 48 F. Supp. 2d 1363, 1368 (S.D. Fla. 1999) (Seitz, J.) (refusing to preclude tortious interference claim based on "allegedly untruthful statements" where "other circumstances and facts necessary in support of a claim for tortious

16

interference" were also pled). As is the case here, there are additional facts outside the defamation claim that establish the requisite elements for a tortious interference cause of action. This is particularly evidenced by Ruffley's own admission that Defendant wanted to reach Plaintiff's donor base to achieve their own motives by effectively interfering with and cutting off Plaintiff's donors (who were donating to Freedom Watch, Judicial Watch's competitor).

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IS PREMATURE AS PLAINTIFF REQUIRES THE OPPORTUNITY TO CONDUCT DISCOVERY

Under Rule 56 of the Federal Rules of Civil Procedure ("FRCP"), summary judgment is appropriate only "*after adequate time for discovery* and upon motion, against a party who failed to make a showing sufficient to establish the existence of an element essential to that party's case, and which that party will bear the burden of proof at trial." [emphasis added] *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The non-moving party must go beyond the pleadings and by his own "affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Id.* at 324.

Moreover, Rule 56(d) specifically authorizes the court to postpone consideration of a motion for summary judgment upon evidence that a party has not been given an opportunity to obtain factual support of its claims or defenses. Clearly, this provision recognizes the manifest unfairness that would result were a party required to respond to arguments raised in a summary judgment motion before the party had the ability to obtain its own evidence. Thus, in instances in which a party opposing summary judgment shoes it cannot present facts essential to justify its opposition, Rule 56(d) grants the court discretion to "deny the [summary judgment] motion" or "order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken." "Because the movant has the tactical advantage of choosing when to file a summary judgment motion, [Rule 56(d)] is designed entirely to protect the nonmoving from having to respond to a summary judgment motion before he or she is able to obtain

evidence to oppose the motion." Edward Brunet, *The Timing of Summary Judgment,* 198 F.R.D. 679, 687 (2001). "[Rule 56(d)] is designed to be a shelter against the precipitous entry of summary judgment." *Donovan v. Nellis*, 528 F. Supp. 538, 542 (N.D. Fla. 1981).

Plaintiff indisputably requires the opportunity to conduct discovery, particularly in the form of depositions of persons actually involved during the conversation in which Judicial Watch's Ruffley conveyed the defamatory statements to Taitz. Such depositions include, but are not limited to, the depositions of Constance Ruffley and Orly Taitz. In addition, to the extent that Judicial Watch claims the deposition of Thomas Fitton, Paul Orfandes, and Christopher Farrel are also necessary in order to shed further light on the actual and apparent authority of Ruffley to speak for Judicial Watch. More significantly, Plaintiff also requires discovery to obtain documents and information that are in the sole custody of Defendant, including but not limited to (1) confirmation of what Ruffley said when she spoke with Taitz; (2) internal Judicial Watch memorandum, correspondence, and other documentation that will establish that Judicial Watch acted with malicious intention when Ruffley made the defamatory statements about Plaintiff; and (3) lists of those present at the event on February 22, 2013 who could provide testimony about the conversation held between Taitz and Judicial Watch's Ruffley.

Assuming that the court seriously considers and does not summarily deny Defendant's summary judgment motion on its face, Plaintiff is not fully armed to oppose Defendant's Motion for Summary Judgment without the opportunity to conduct discovery. Discovery is clearly needed, especially in regard to the documents and other materials stated above, particularly given the defamation per se and the falsity of Judicial Watch's Ruffley having admitted that she based her false statements on the public record, which clearly was not the case. Thus, Defendant's Motion for Summary Judgment should not be considered at this time under Rule 56(d).

## ATTORNEY'S FEES AND COSTS[1]

Payment of Plaintiff's attorney's fees and costs is warranted in this case pursuant to 28 U.S.C. §1927, which states in pertinent part:

> "Any attorney or other person admitted to conduct cases in any court of the United States who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. §1927.

Requests for an award under 28 U.S.C. §1927 may be brought at any time, by separate action or by motion in an existing action. *Gordon v. Heimann*, 715 F.2d 531 (11th Cir. 1983). To warrant sanctions, an attorney must (1) "engage in unreasonable and vexatious conduct"; (2) "this conduct must multiply the proceedings"; and (3) "the amount of the sanction cannot exceed the costs occasioned by the objectionable conduct." *Peer v. Lewis,* 606 F.3d 1306, 1314 (11th Cir. 2010); *Amlong v. Amonglong, P.A. v. Denny's, Inc.,* 500 F. 3d 1230 (11th Cir. 2006).

Based on admissions by Judicial Watch's Ruffley, that she based her statements on the public record when she clearly could not have, since the public record shows unequivocally that Plaintiff was not convicted of a crime, nor are any contempt orders in effect, having been dismissed, it is clear that Defendant, a multi-million dollar organization is intentionally multiplying the pleadings vexatiously to run up the attorneys fees and costs to Plaintiff, an individual. Thus, this Court should respectfully award attorneys fees and cost to Plaintiff.

## CONCLUSION

Defendant's false statements alleging that Plaintiff had been convicted of a crime, was not only contrary to the truth but was also, on its face, made with the malicious intent of harming Plaintiff in his trade and profession, as evidenced by the fact that the statements are clearly

---

[1] Plaintiff sought consent to seek attorney's fees and costs. Defendant does not consent.

contrary to the public record, which is readily available and accessible to Defendant. Defendant's statements were undoubtedly published with the intent that it reach donors and detrimentally impact Plaintiff's donor base. Defendant's statements are per se defamatory, defamatory by implication, and otherwise defamatory, and constitute intentional infliction of emotional distress as well as intentional interference with a contractual relationship. Defendant must now pay the price for the damage caused to Plaintiff. Defendant can neither justify nor defend its actions since it has been caught with its hand in the cookie jar, attempting to damage the reputation of Plaintiff in order to profit from the harm done to the reputation of one of its competitors. Indeed, Defendant cannot even dispute the statements made by Ruffley, stating only instead that Ruffley conveniently "do[es] not recall" making the defamatory statements.

Plaintiff has demonstrated that regardless of the false claims made in Defendant's Motion for Summary Judgment that summary judgment is inappropriate and premature and should not be granted in favor of Defendant. Indeed, summary judgment, if considered at this time, must be ruled in favor of the Plaintiff.  Defendant, weeks after losing a motion to dismiss, sought to burden Plaintiff with the added work of defending against a motion for summary judgment. For these reasons, Plaintiff respectfully requests that, in addition to denying this Motion for Summary Judgment, that this Court also order Defendant's to pay attorney's fees and costs pursuant to 28 U.S.C. §1927.

Dated: January 9, 2014                        Respectfully Submitted,

                                              */s/ Larry Klayman*
                                              Larry Klayman, Esq.
                                              Florida Bar No. 246220
                                              2775 NW 49th Ave., Suite 205-346
                                              Ocala, FL 34483
                                              (310) 595-0800
                                              Email: leklayman@gmail.com
                                              Plaintiff Pro Se

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on January 9, 2014, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF filing system. I also certify that the foregoing document is being served this date on all counsel of record or pro se parties on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by the CM/ECF system or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Larry Klayman*
LARRY KLAYMAN

Plaintiff Pro Se

<u>**SERVICE LIST**</u>

**Douglas James Kress**
Schwed Kahle & Jenks, P.A.
11410 North Jog Road
Suite 100
Palm Beach Gardens, FL 33418
561-694-0070
Fax: 561-694-0057
Email: dkress@schwedpa.com

VIA CM/ECF