**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

LARRY KLAYMAN,

         Plaintiff,

v.                               **ORAL ARGUMENT REQUESTED**

JUDICIAL WATCH,

         Defendant.              Case No: 1:13-cv-20610-CMA

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Larry Klayman ("Plaintiff"), hereby files this Opposition to Defendant's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure ("FRCP") Rule 56.

**INTRODUCTION**

Plaintiff Klayman ("Plaintiff" or "Klayman") brought this lawsuit against Defendant Judicial Watch ("Defendant") for defamation, defamation by implication, tortious interference with a contract, and intentional infliction of emotional distress. The action arises out of the knowingly false statements made by Constance Ruffley ("Ruffley"), an Office Administrator and Management Representative of Judicial Watch, who, while acting under the authority and direction of Judicial Watch's directors, maliciously and willfully conveyed false and defamatory statements about Plaintiff, alleging that Plaintiff had been "convicted" of a crime for not paying child support and that this information should be given to Klayman's donors who were supporting litigation in Florida. As shown below, the factual and legal arguments made in Defendant's Motion for Summary Judgment are incorrect on their face -- based upon readily publicly available information among other reasons. A review of Plaintiff Klayman's affidavit, deposition testimony and exhibits bear this out.

## STATEMENT OF FACTS

As an attorney who throughout his career has fought for ethics in government through legal advocacy, Plaintiff Larry Klayman heavily relies on his virtues and honesty, as it is his reputation that determines clients' reliance and trust in him to solve their legal problems and further the public interest. Klayman Aff. at 5.[1]

Judicial Watch, which routinely represents individuals and interests with the same legal needs as those Plaintiff represents, clearly views Plaintiff's success (Klayman Aff. at 24), both in his successful law practice and in public interest organization he founded, as a threat and undoubtedly as competition, particularly in regard to their donor base, as many of the donors necessarily overlap. Thus, Defendant willfully and maliciously sought to, and in fact did, harm Plaintiff and his reputation by willfully disseminating false and defamatory statements that Plaintiff was "convicted" of a crime for not paying child support and that this false "information" should be given to donors, as evidenced by Taitz's web posting on her cite entitled "World's Leading Obama Eligibility Challenge Web Site", which stated, in pertinent part, the following:

> Ms. Ruffley advised me that Larry Klayman is not licensed in California, she told me that he no longer works with the Judicial Watch and that **donors** should know about litigation in Ohio, where he was **convicted** just recently of not paying large amount in child support. She provided a lot of other information. I will publish only what is a public record. I am not publishing anything that is not in public record. A number of individuals sent me this information: Larry Klayman, 60, of Los Angeles, California, was indicted on two (2) counts of criminal non-support.

> Exhibit 1. (emphasis added).

---

[1] Plaintiff is a lawyer licensed to practice in Florida and other jurisdictions, and has at all times been a member in good standing through his approximate 37-year career as an attorney. Affidavit of Larry Klayman at 3 ("Klayman Aff."). Plaintiff practices law continuously and extensively throughout the country, including Florida, and resides in and does business within this district and this state, with active cases still pending in this district and elsewhere in Florida. Compl. ¶ 2; Klayman Aff. at 3. In fact, Plaintiff began his legal career in this district, being admitted into The Florida Bar on December 7, 1977 and becoming a member of the bar of this Court in or around the same time. Compl. ¶ 2; Klayman Aff. at 3.

Given Plaintiff's position as the founder and general counsel of Freedom Watch, an organization that also promotes government ethics, Defendant undoubtedly knew that Plaintiff would be significantly harmed by the false accusation that he had committed and was convicted of a crime and that such information should be given to donors, as such an allegation would clearly discredit Plaintiff and harm him both professionally and personally, as it was Judicial Watch's intention, through Ruffley, to have this false information disseminated to donors. Klayman Aff. at 14, 16.

On February 22, 2012, Ruffley, an Office Administrator and, thus, a Management Representative of Judicial Watch, (Ruffley Deposition at 12-13) offered up defamatory and false statements in a conversation with "Dr. Orly Taitz, Esquire" (Taitz) while attending an event on behalf of Judicial Watch. Compl. ¶ 12-13; Ruffley Deposition at 26. Taitz is widely known as the founder of the "Defend Our Freedom Foundation" and maintains the popular self-proclaimed website, "The World's Leading Obama Eligibility Website." Compl. ¶ 13. During Ruffley's conversation with Taitz, Ruffley intentionally conveyed a false and defamatory statement about Plaintiff, saying that Plaintiff had been "convicted" of a crime for not paying child support and that this information should be conveyed to Plaintiff's donors. Compl. ¶ 15; Klayman Aff. at 13. Judicial Watch's Constance Ruffley, in addition to her years working at Judicial Watch, worked in the office with Former Deputy District Attorney Ernie Norris, a criminal prosecutor, who Judicial Watch had hired after he retired from government service. Ruffley Deposition at 76. Ruffley, in her own words, admitted that she knew the difference between a "conviction" and "indictment" when it came to the O.J. Simpson trial of 1995. Klayman Aff. at 16; Ruffley Deposition at 76-78.

Prior to this defamatory publication, Plaintiff and others had made it known publicly that Plaintiff planned to soon file a high profile case in Florida involving the eligibility of President

Barack Obama to run as a candidate in Florida concerning the state's primary and general elections for 2012. Compl. ¶ 14.

Contrary to public record and readily accessible evidence, Ruffley falsely stated to Taitz that Plaintiff had been "convicted" of a crime for not paying a large amount of child support, despite the fact that Plaintiff has never been convicted of any crime in any circumstance. Klayman Aff. at 18. Evidence proving Plaintiff was never convicted of a crime is readily available and accessible to the public and to Ruffley, who is not only in a senior managerial position at Judicial Watch and is authorized to speak on behalf of the organization but is also able to (and experienced in) researching, investigating, and accessing public records. Ruffley Aff. at 32 included with Defendant's Summary Judgment Motion. However, Ruffley lied about available documents on the public record that establish Plaintiff has never been convicted of any crime, and instead, willfully falsified facts, and omitted significant details in order to intentionally discredit Plaintiff, severely harm his reputation, and to detrimentally impact his donor base for the benefit of Defendant Judicial Watch.

Specifically, available and accessible as part of the public record irrefutably establishes that Plaintiff was **never** **convicted** of a crime and that the indictment had been dismissed. Klayman Aff. at 19. Importantly, the dismissal and the vacating of the contempt order regarding child support was noted and evident on the public docket for the Cuyahoga County Domestic Relations Court, which also is publicly available and accessible. Klayman Aff. at 20. In short, Judicial Watch's Ruffley lied and defamed Plaintiff as she obviously knew or had reason to know that her defamatory statements were in fact defamatory, especially since she admitted in sworn testimony that she received her information from the public record.[2]

---

[2] Moreover, Plaintiff also had a valid defense for not paying child support since Plaintiff had been completely and unlawfully been denied access to his children. Klayman Aff. at 21. Thus, Plaintiff's obligation to pay child support was nullified under Virginia law, pursuant to *Hartman v. Hartman*, 33 Vir. Cir. 373, 2994 WL 1031136 (Apr. 13, 1994). His attorney in the

<u>**THE LAW**</u>

In a defamation action, summary judgment is almost always inappropriate, except in those rare cases where the circumstances surrounding the allegedly defamatory communication are completely undisputed. *See, e.g., Shaw v. R.J. Reynolds Tobacco Co.*, 818 F. Supp. 1539, 1541 (M.D. Fla. 1993), *aff'd,* 15 F.3d 1097 (11th Cir. 1994); *Abraham v. Baldwin*, 42 So. 591, 592 (Fla. 1906); *Glynn v. City of Kissimmee,* 393 So. 2d 774. 776 (Fla. 5th DCA 1980).

Here, summary Judgment cannot be granted. Indeed, given that Judicial Watch's Ruffley attests that she cannot remember what she said, and the false statements as recorded by Taitz clearly show what was said, if summary judgment were appropriate at this stage of the case it would be in favor of Plaintiff.[3] Moreover, Taitz admitted to Plaintiff Klayman that she accurately republished what Judicial Watch's Ruffley had said to her, Klayman Aff. at 40, and Taitz's publication on her website is self-authenticating.

**I.    DEFENDANT'S STATEMENTS ARE PER SE DEFAMATORY**

A statement is *per se* defamatory if "it imputes to another (a) a criminal offense amounting to a felony, or (b) a presently existing venereal or other loathsome and communicable disease, or (c) conduct, characteristics, or a condition incompatible with the proper exercise of his lawful business, trade, profession, or office, or (d) the other being a woman, acts of unchastity." *Campbell v. Jacksonville Kennel Club, Inc*., 66 So. 2d 495, 497 (Fla. 1953) citing Restatement, Torts, Section 570. "The significance of the classification of a communication as

---

matter had also advised plaintiff that he would need to have a contempt order issued in order to take the disputed matter of child support payments to the Court of Appeals of Ohio. Consequently, Plaintiff, following the legal advice of his attorney, sought to preserve his rights, particularly in regard to appealing the matter. Notwithstanding this, all contempt orders were dismissed as a matter of public record. Klayman Aff. at 21.

[3] Taitz first evaded service of process and then has defied compliance with a subpoena for her testimony. A hearing is scheduled currently for April 7, 2014. See Klayman Aff. at Attachment N. Plaintiff is endeavoring to have the Court expedite the enforcement of the subpoena.

actionable per se lies in the fact that its victim need not plead or prove malice (except where a privilege is involved) or special damage because malice and the occurrence of damage are both presumed from the nature of the defamation." *Wolfson v. Kirk*, 273 So. 2d 774, 777 (Fla. Dist. Ct. App. 4th Dist. 1973) citing *Sharp v. Bussey*, 137 Fla. 96 (Fla. 1939); *Johnson v. Finance Acceptance Co. of Georgia*, 1935, 118 Fla. 397, 159 So. 364. "Such a presumption is not an ordinary presumption of fact, but is a presumption of law and is not, therefore, dispelled by the production of evidence." *Id.*

The requirements for defamation and defamation per se are clearly satisfied as Defendant has falsely stated that Plaintiff was convicted of the crime of not paying for child support and that this information should be given to donors.  In addition, Defendant imputed false statements about Plaintiff in his trade and profession, as evidenced by Ruffley's statement – at Judicial Watch's direction – to Taitz to provide this defamatory information to donors. The statements were undoubtedly false and indisputably published, in this district, nationally and internationally.

A.     **Defendant Falsely Imputed to Plaintiff a Criminal Offense Amounting to a Felony.**

Defendant represented a published statement that Plaintiff was convicted of the crime of failing to pay a large amount of child support, thus falsely stating that Plaintiff committed crimes constituting felonies. Compl. ¶10.  Specifically, Taitz stated that "Ms. Ruffley actually advised me that Larry Klayman is not licensed in California, she told me that he no longer works with the Judicial Watch and that donors should know about litigation in Ohio, where he was convicted just recently [sic] of not paying large amount in child support." *See also* Statement of Material Facts ("*SOMF*") ¶13.  By stating that Plaintiff was convicted of the crime of not paying his child support, the statements clearly constitute defamation per se. *Campbell v. Jacksonville Kennel Club, Inc.*, 66 So. 2d 495.  The statements were also intended to harm his trade and profession, as

a lawyer who is convicted of a felony is likely to be disbarred. Klayman Aff. at 12. No one would want to hire a soon-to-be disbarred lawyer. Plaintiff has undoubtedly established the falsity of these statements, which were widely published and disseminated through the intentional publication of the false accusation by Defendant, nationally, internationally, and most significantly within this district. Thus, the requirements for a claim under defamation per se have been clearly satisfied as the statement indisputably imputes to Plaintiff a criminal offense amounting to a felony.

**B.**     **Defendant's Statements Imputed Conduct Incompatible with the Proper Exercise of Plaintiff's Lawful Business, Trade, and Profession.**

In addition, a statement is also per se defamatory when the statement imputes to another "conduct, characteristics, or a condition incompatible with the proper exercise of his lawful business, trade, profession, or office . . ." *Id.* The statement that Plaintiff was "convicted" of a crime and this information should be given to donors is one that affects Plaintiff in his trade and profession, particularly as a convicted attorney is subject to disbarment for a felony. Plaintiff is also known for and relies on his principals and virtues in order to receive clients for his legal practice and support for the organization he founded, Freedom Watch, which fights for morals and ethics in government. Since this statement affects Plaintiff in his trade and profession, this statement amounts to a per se defamatory statement as well. Because the statements were per se defamatory, malice and the occurrence of damage are both presumed from the nature of the defamation, as stated in *Wolfson*, supra.

**II.**     **DEFAMATION**

The elements of a claim for defamation are as follows: "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual

damages; and (5) statement must be defamatory." *Internet Solutions Corp. v. Marshall*, 39 So.3d 1201, 1214 (Fla. 2010) citing *Jews for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1106 (Fla. 2008).

### A.      Defendant's Statement was False.

Plaintiff has never been convicted of any crime, including the crime of failing to pay child support. Klayman Aff. at 16. Not having any factual basis, Defendant simply perverted the truth, lied and instead directed that the false allegation be published and widely circulated simply to harm the Plaintiff. With the complete public record available to them and which Judicial Watch's Ruffley said was the basis for her defamatory statements, Defendant instead chose to falsely accuse Plaintiff of being convicted of a crime, despite public records evidencing the contrary. Klayman Aff. Attachment's B, C and D.

### B.      Defendant's Defamatory and False Statements were Published.

For defamation, publication only requires that the false statement be transmitted to a single other person other than the person defamed. See *Doe v. Am. Online, Inc.*, 783 So. 2d 1010, 1016 (Fla. 2001). Regrettably, the despicable and outrageous false allegation that Plaintiff was convicted of a crime was widely circulated, both nationally and internationally, and publicized in print and on the Internet, as intended by Defendant Judicial Watch. In fact, these false statements continue to be disseminated to this day. Judicial Watch's Ruffley, who is in a management position at Judicial Watch, a representative of Judicial Watch, and authorized to speak on behalf of the organization, acted in publishing the false accusation that Plaintiff was convicted of a crime to Taitz with the intent and design that the false statements not only be widely disseminated but also to reach donors. Thus, it is indisputable that the "publication" requirement has been satisfied, as further evidenced by Taitz's web posting with Ruffley's false statements.

### C.      Plaintiff Incurred Actual Damages as a Result of the Defamatory Statements.

There is no doubt that Plaintiff has been severely harmed as a result of the defamatory statements published by Defendant Judicial Watch's Ruffley with or without the direction of other Judicial Watch officers. The false accusations have undoubtedly considerably lowered Plaintiff in the estimation of the community, injured him in his occupation as a leading lawyer, and subjected him to hatred, ridicule, and contempt. More specifically, Defendant's defamatory accusation did, in fact, extensively harm Plaintiff's reputation, cripple his integrity as a lawyer, and impair his credibility in a manner that impeded on Plaintiff's ability to practice law. Furthermore, Defendant's spreading of libelous and defamatory material about Plaintiff has caused serious injury to his profession and community standing and has adversely affected his legal advocacy, leading the public to question his fitness to practice law. Indeed, once a statement such as this is published, it goes viral quickly, even if it is "corrected" three days later. The original statement lives on in infamy.

## III.   DEFENDANT ACTED WITH ACTUAL MALICE AND INTENDED THAT THE DEFAMATORY STATEMENTS BE PUBLISHED.

Defendant's statements were per se defamatory.  As such, no malice is required to be proven by Plaintiff.  Nevertheless, Defendant has demonstrated that the defamatory statement was made with actual malice.  Defendant Judicial Watch, only after Plaintiff filed a motion for an expert computer analyzer to search Defendant's computers, finally produced emails that demonstrate malice years after Plaintiff had left Judicial Watch. Specifically, Ruffley send an email to Fitton, Orfanedes, and Farrell and stated, **"Gee whiz, it's been just 9 1/2 years since [Plaintiff] left [Judicial Watch]. Should there be a 10-year anniversary on 9/23? <grin> [sic]."** Exhibit 2.  Defendant Judicial Watch, through its president, Tom Fitton, further demonstrated its animosity toward Plaintiff during deposition when he spewed forth other malicious statements. "For him to engage in discovery to help him with other litigation --other--

9

another round of meritless litigation is improper."); Trans. Fitton at pp. 18 (" . . . Mr. Klayman wants to either relitigate other issues or get into issues he wants to potentially litigate anew or litigate from the beginning.").  As evidenced by the animosity toward Plaintiff, Defendant thus acted with malice when directing Ruffley to harm Plaintiff's reputation. Moreover, by failing to correct the false and defamatory statements, Defendant Judicial Watch ratified the behavior of Ruffley.

Ironically, the deposition of Ruffley, the Judicial Watch office administrator who published the defamatory statements to Orly Taitz, admits that Taitz's republication on her eligibility website was an accurate recitation of what she told Taitz.

First, at deposition and in her affidavit, Ruffley claims, disingenuously and falsely claims that she cannot remember what she said – "convicted" or "indicted." Ruffley Deposition at 26. However, to the contrary, when asked if Ruffley ever has known Taitz to lie she testified:

> Question: You invited Ms. Taitz because you have a high regard for her. Correct?
> Question: You have never known her to lie have you?
> Answer: No.

Ruffley Deposition at 10.

This confirms that Ruffley, on behalf of Judicial Watch, said what she said to Taitz – namely "donors should know about litigation in Ohio, where Klayman was convicted just recently of not paying large amount in child support" and there is nothing from her or Judicial Watch's end that anything different was said than what Taitz republished.

Second, at the end of her deposition, Ruffley was forced to admit that she knows the difference between being indicted for an alleged crime, where there is a presumption of innocence until proven guilty, and being convicted. In the context of the O.J. Simpson trial, in

which a Judicial Watch employee, Ernie Norris, had participated while then Deputy District

Attorney for Los Angeles County, Ruffley testified:

> Question: You have spent a good deal of time working with Ernie Norris, who is former Deputy District Attorney of Los Angeles - -
> Answer: Yes.
> Question: Ernie is a -- Ernie was a criminal prosecutor for a number of years with the District Attorney's Office in Los Angeles. Correct?
> Answer: 32 years. Yes.
> Question: In fact, he played a role in the prosecution of O.J. Simpson underneath Deputy D.A. Gil Garcetti. Correct? . . .
> Question: You are aware that -- you have talked about the O.J. Simpson case with Mr. Norris. Correct?
> Answer: Oh, off and on.
> Question: And Mr. Norris was quite -- was quite despondent or upset that O.J. Simpson was not convicted of the crime of murder. Correct?
> Answer: I can't speak to his feelings on that or emotions.
> Question: You are aware that O.J. Simpson was indicted but never convicted for murder. Correct?
> Answer: Did you say "Ernie Simpson" or "O.J. Simpson"? . . .
> Question: O.J.
> Answer: Yes.
> Question: Okay.
> Answer: I'm aware that he was not convicted.
> Question: Therefore, you know the meaning of the word "convicted" as opposed to "indicted." Correct?
> Answer: More now. But at the time -- but at the time, I was not aware of a difference between indicted and convicted.
> Question: So during the time of the O.J. Simpson trial, you thought that O.J. Simpson was convicted because he was indicted?
> Answer: No.
> Question: You are a highly intelligent person; are you not, Ms. Ruffley?
> Answer: Thank you. Yes. Ruffley Deposition at 76-78.

Third, Ruffley admits that she attended the event where she made the defamatory

statement on behalf of Defendant Judicial Watch.

> Question:  . . . you were there as a representative of Judicial Watch.
> Answer: Okay. Yes. Ruffley Deposition at 23.

Fourth, while Ruffley's and Judicial Watch's defamatory statements were libel per se,

and malice need not be shown, Ruffley admits that she acted on behalf of Judicial Watch with

malice in any event. In this regard, an email belatedly produced to Plaintiff only after Klayman

had moved to compel and to have a computer expert to inspect her and Judicial Watch's

computers, again, states as follows:

> Gee whiz, it's been 9 ½ years since [Plaintiff] left [Judicial Watch]. Should there be a 10-year anniversary on 9/23? <grin> [sic].

When asked why she gave the defamatory "information" to Taitz, including that Klayman is not

licensed as a lawyer in California, Ruffley testified:

> Question: In fact you have a tremendous curiosity about me -- don't you Ms. Ruffley –
> at a minimum?
> Answer: Morbidly. Ruffley Deposition at 51.

And, indeed, the depositions of Judicial Watch's current directors, Tom Fitton, Paul

Orfanedes and Christopher Farrell also confirm this malice, based on their animus for Plaintiff

having had to sue them for other unethical and illegal acts. For instance, Fitton, the president of

Judicial Watch, testified: "I'm going to tell the bar you're harassing a witness in a proceeding

against you if you want to proceed here." Fitton Deposition at 136. Orfanedes, the legal director

of Judicial Watch testified: "I was trying to articulate that, given the number of lawsuits and

actions that you had brought and caused to be brought against the organization . . . when we got

the kind of correspondence – when we got this correspondence from you about the February

2012 matter, we interpreted it as yet another threat." Orfanedes Deposition at 116.  And, Farrell,

the director of investigations sarcastically testified: "Yeah, you have a problem with basic

interrogatories. Stick with those, it might help you out." Farrell Deposition at 46. When asked

why he did not attempt to correct the problem, Farrell says, "I have no interest in you

whatsoever." Farrell Deposition at 31.

In addition, when Plaintiff asked them to take actions to correct the defamatory

statements, they did nothing and instead left them on Taitz's website to harm Klayman. To the

contrary, Judicial Watch was concerned about an incorrect statement that Taitz had published about a UROC event, where she thought Judicial Watch had invited her. They did take action to correct this as reflected in the few documents initially produced by Judicial Watch. But Ruffley affirmatively took no action to correct what was falsely published about Plaintiff Klayman. Ruffley Deposition at 66.

Indeed, Plaintiff Klayman attempted several times to redress the problem by asking Richard Driscoll, Defendant Judicial Watch's attorney, to encourage his clients to rectify the false statements and have Defendant Judicial Watch mitigate the damage by correcting the statement of its Office Administrator, Ruffley. See Exhibit 3. Driscoll, by and through his clients, Defendant Judicial Watch, said, "it is not necessary for Judicial Watch to take any action to clarify or correct the statements of others." Exhibit 3.

In doing so, even if Ruffley misspoke, which she did not, Defendant Judicial Watch ratified the false and outrageous statements and showed its malice by refusing to correct the matter. Judicial Watch affirmatively responds to an incorrect statement regarding UROC, with its chief counsel, Paul Orfanedes saying, "Can you make clear to Ms. Taitz or whomever is responsible for the posting that she is invited by UROC and not 'the Judicial watch.' The posting also needs to be corrected to avoid any further confusion." See Exhibit 9. This failure to take any action to correct the false statements itself shows malice on the part of Judicial Watch.

While Plaintiff has timely moved to enforce Taitz's subpoena, the testimony of Judicial Watch's directors show that by failing to take any action to investigate and correct Ruffley's defamatory statements, they blessed and ratified them, showing malice against Klayman. See *Stevens, v. Vons Companies*, 2d Civil Nos. B196755, B201528, 2009 WL 117902, at *10 (Cal.Ct.App.2009) ("For purposes of determining an employer's liability for punitive damages,

ratification generally occurs where . . . the employer demonstrates an intent to adopt or approve oppressive, fraudulent, or malicious behavior by an employee . . ."); *Jefferson v. Kellogg Sales Co.*, 2008 U.S. Dist. LEXIS 93477 at *12 (N.D. Cal. Nov. 11, 2008) ("The circumstances under which an employer may be held liable for punitive damages based upon acts of an employee include . . . authorization or ramification of the wrongful conduct . . ."); *Luquire Ins. Co. v. Parker*, 241 Ala. 621, 622 (1941) ("The liability of the corporate defendant is predicated upon a ratification of the words allegedly spoken by the agent . . . imputing dishonesty, or an offense involving moral turpitude."); *Penn Central Trasp. Co. v. Reddick*, 398 A.2d 27, 29 (D.C. 1979) (holding that an employer should be held legally responsible for whatever an employee does by virtue of his employment and in furtherance of its ends). Taitz's testimony will support this further.

## IV.   DEFENDANT'S STATEMENTS AMOUNTED TO DEFAMATION BY IMPLICATION.

Florida common recognizes a claim of defamation by implication. *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008) "[I]f the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts, he may be held responsible for the defamatory implication, unless it qualifies as an opinion, even though the particular facts are correct." *Id*. citing W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 116, at 117 (5th ed. Supp. 1988).[4]

---

[4] In addition to the clear and distinct defamation per se, Defendant is also liable for defamation by implication. Here, Defendant simply chose to pick and choose bogus facts while omitting the facts that would demonstrate that Plaintiff had never been convicted of any crime, let alone the crime of failing to pay child support. Evidence regarding the truth of whether Plaintiff committed and/or was convicted of the accused crime, is readily available and accessible to the public, and particularly for Defendant. However, Defendant ignored readily available public documents evidencing the falsity of Defendant's accusations that Plaintiff had

## V.   DEFENDANT'S DEFAMATORY STATEMENTS ARE NOT PROTECTED BY THE SUBSTANTIAL TRUTH DOCTRINE.

Under the substantial truth doctrine, a statement does not have to be perfectly accurate if the "gist" or the "sting" of the statement is true. *Smith v. Cuban Am. Nat'l Found.*, 731 So. 2d 702, 706 (Fla. Dist. Ct. App. 3d Dist. 1999) citing *Masson v. New Yorker Magazine*, 501 U.S. 496, 517, 115 L. Ed. 2d 447, 111 S. Ct. 2419 (1991); see also *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993); *Nelson v. Associated Press, Inc.,* 667 F. Supp. 1468, 1477 (S.D. Fla. 1987); *Woodard v. Sunbeam Television Corp.*, 616 So. 2d 501, 503 (Fla. 3d DCA 1993); *McCormick v. Miami Herald Publ'g Co.*, 139 So. 2d 197, 200 (Fla. 2d DCA 1962).

However, the U.S. Supreme Court further recognized that a statement is not false unless it "'would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'" *Smith*, 731 So. 2d at 706 citing *Masson*, 501 U.S. at 517. See also *Woodard*, 616 So. 2d at 503; Early, 354 So. 2d at 352; *Bishop v. Wometco Enters., Inc.*, 235 So. 2d 759 (Fla. 3d DCA 1970); *Hill v. Lakeland Ledger Publ'g Corp.,* 231 So. 2d 254, 256 (Fla. 2d DCA 1970); *Hammond v. Times Publ'g Co.*, 162 So. 2d 681, 682 (Fla. 2d DCA 1964); *McCormick*, 139 So. 2d at 200.

According to Florida case law, if the publication is not only technically but also substantially and materially false, a falsity exists. *Smith v. Cuban American Nat. Foundation*, 731 So.2d 702, 707, (Fla. 3rd DCA 1999). Yet, Defendant Judicial Watch mistakenly leans on *Fidelity Warranty Services, Inc.* as its legal backbone, claiming that if the alleged statement is substantially true, there is no liability.  However, Defendant Judicial Watch fails to mention that the holding in *Fidelity* is precisely on point with Plaintiff Klayman's case. *Fidelity* holds that " . .

---

not been convicted of a crime and, instead, willfully falsified facts, and omitted significant details in its publication in order to intentionally discredit Plaintiff and harm his reputation.

. the court should 'consider all of the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is published." *Fidelity Warranty Services, Inc. v. Firstate Ins. Holdings, Inc*., 74 So.3d 506, 515 (Fla. 4th DCA 2011) (citing *Morse v. Ripken*, 707 So.2d 921, 922 (Fla. 4th DCA 2011). "The contextual analysis requires that courts examine the nature and full content of the particular communication, as well as the knowledge and understanding of the audience targeted by the publication." *Overstock.com v. Gradient Analytics, Inc.*, 151 Cal.App.4[th] 688, 701 (Cal. App. 2007).

First, Judicial Watch's publication through Orly Taitz's is wholly false, as it is not only technically incorrect but also substantially and materially dishonest. "Donors should know about litigation in Ohio, where Klayman was convicted just recently of not paying large amount in child support." Klayman was never convicted of any crime and the indictment was dismissed. Klayman Aff. at 19, 20.

Second, as Defendant Judicial Watch concedes, the court should consider what was said, who it was said to, and the audience to which it was disseminated. Here, Judicial Watch admits that the defamatory statement was "made to a very sophisticated person, a lawyer who was seeking a seat on the U.S. Senate." Def's Mot. Summ. Judg. at 12. It is not a farfetched argument to assume a lawyer and candidate for the U.S. Senate knows the difference between "indicted" and "convicted", especially one who is in direct competition with Plaintiff over the President's eligibility. In particular, Ruffley is a legal secretary, office administrator and has worked for a legal group for over fifteen years. Moreover, in her deposition of January 31, 2014, Constance Ruffley admitted that she knew the difference between "indicted" and "convicted" in O.J. Simpson's case. Yet now, Ruffley claims she cannot remember what was said. Ruffley Aff. at 77-78.

To demonstrate another example of Defendant Judicial Watch grasping at straws in its attempt to use the substantial truth defense is their use of case law, which is inapposite. In *Annette F.,* the court discussed the substantial truth doctrine regarding a statement that the plaintiff was a convicted perpetrator of domestic violence. *Annette F. v. Sharon S.,* 119 Cal.App.4th 1146, 1167 (Cal.App.4 Dist. 2004). There, the plaintiff had not been convicted of domestic violence but had engaged in it. That the court there found that the plaintiff did not establish actual malice has no bearing on this case. Indeed, the court there focuses its discussion of "conviction" with regard to malice, and that the defendant innocently used the term "convicted." Here, what is at issue is not malice; rather, whether "convicted" is so closely related to "indicted" that they are essentially one in the same and would lead a reader to the same conclusion. The answer, undoubtedly, is that they would not.

Defendant Judicial Watch erroneously relies on *Edward/Ellis v. New United Motors Manufacturing, Inc.*, 2008 WL 5384323, (N.D.Cal.), *Barnett v. Denver Publishing Company, Inc.*, 36 P.3d 145 (Colo. App. 2001), *Read v. Phoenix Newspapers, Inc.*, 819 P.2d 939 (Ariz. 1991) and *G.D. v. Kenny*, 984 A.2d 921 (N.J. Super. 2009). In *Edward/Ellis*, plaintiff alleged that the defendants were liable for slander for stating that he "had been convicted of credit card fraud, assault with a deadly weapon, rape, and sexual assault, and that he was a suspect in a home invasion." *Edward/Ellis*, 2008 WL 5384323 at *5. The court ruled, as consistent with *Overstock.com* and the rule of taking the full content of the communication into consideration, that the statement was "substantially true . . ." *Edward/Ellis*, 2008 WL 5384323 at *6.

*Edward/Ellis* is distinguishable here. First, the plaintiff there *admitted* that he was a suspect in a home invasion. Second, while statutory rape and rape may have slightly different

legal criteria to procure a conviction, they still convey the act of rape to the reader or listener and are therefore substantially similar.

Most telling is Defendant Judicial Watch's use of *Barnett, Read*, and *G.D.* In *Barnett*, a statement was made regarding a political candidate having been "convicted in a stalking incident." The court found that although the candidate had only been convicted of harassment, the "stalking incident" was substantially true because "the crime was 'almost stalking.'" *Barnett*, 36 P.3d 145 at 146.

By falsely using this case and others as analogous, Defendant Judicial Watch mischaracterizes this case and makes a fatal blunder. There, the political candidate **was actually convicted** of a crime. Here, "indicted" is nowhere near "almost convicted." In fact, there is a presumption of innocent until proven guilty. Indeed, one is either convicted of a crime or not. Klayman was not, and never has been, convicted of any crime.

Similarly, and yet another example of Defendant Judicial Watch's futile attempt to play an intellectually dishonest semantics game, Defendant cites *Read* and *G.D.* In *Read*, the court found that a statement that a political candidate was convicted of a misdemeanor for firing a weapon was substantially true, when the political candidate was convicted of displaying a weapon. Again, the political candidate **was actually convicted** of a crime and whether he fired the weapon or displayed it is a nuanced point when he was *convicted* of a crime relating to weapons. *Read*, 819 P.2d 939 at 942. In *G.D.*, the court found that a statement that an aide to a political candidate was a convicted drug dealer was substantially true, when the aide had been convicted of possession with intent to distribute the drugs. There is virtually no distinction between a convicted drug dealer and a convicted person in the possession of drugs with intent to distribute the drugs. First, and again, the aide **was actually convicted** of a crime. But, second,

and more importantly, a person convicted of possession of drugs with intent to distribute those drugs, is, in fact, a drug dealer. *G.D.*, 984 A.2d 921 at 926. This is true especially in *G.D.* The aide was not only convicted for second-degree possession of a controlled dangerous substance with intent to distribute, but also had been charged with possession of a controlled dangerous substance *and distribution* of a controlled dangerous substance, thereby validating the label "drug dealer."

## VI.    THE SINGLE ACTION/SINGLE PUBLICATION RULE DOES NOT APPLY.

The Single Action/Single Publication Rule does not apply because Plaintiff's defamation claim has not been, and should not be, dismissed. Defendant essentially sets forth the single action/single publication rule as follows: "The single publication/single action rule…does not permit multiple actions when they arise from the same publication upon which a failed defamation claim is based." *Callaway Land & Cattle Comm Inc. v. Banyon Lakes Co. Corp.*, 831 So. 2d 204, 208-209 (Fla. 4th DCA 2002). In other words, the rule provides that when a defamation claim is dismissed, any related tort claims predicated on the same publication must also be dismissed. Id. (If "the defamation claim fails, the other counts based on the same publication must fail as well because the same privileges and defenses apply." (citing *Fridovich v. Fridovich*, 598 So. 2d 65, 70 (Fla. 1992).[5]

---

[5]    The Single Action/Single Publication Rule does not and cannot apply here because, as shown above, there is no basis to dismiss Plaintiff's defamation claims against Defendant. In fact, acting on behalf of Defendant, Ruffley, who holds a senior managerial position at Judicial Watch, falsely conveyed to Taitz that Plaintiff had been convicted of a crime. Defendant was fully aware that the statement would be posted on Taitz' website that is widely circulated nationwide, and would inevitably reach the present donors and the potential donors to Plaintiff, which Judicial Watch obviously views as a competitor and a threat. Because Plaintiff's defamation counts will survive Defendant's Motion to Dismiss, the single action/single publication rule has no application here. And even if Plaintiff's defamation claim were otherwise deficient, which it is not, application of the single action/single publication rule would not warrant dismissal of tort claims which Plaintiff has based on independent facts beyond those

19

## VII.    RUFFLEY'S STATEMENTS TO TAITZ ARE ADMISSIBLE AS EVIDENCE.

It is black letter law that Ruffley's defamatory statements are admissible hearsay, even as Plaintiff moves to compel Taitz's testimony as she defied a subpoena served on her appropriately. Incredibly, to this day, Taitz has never objected to the subpoena and thus has waived any objection. Klayman Aff. at 45. Judicial Watch did not timely object either. *Id.*

In fact, two days before Taitz was supposed to be deposed by Larry Klayman after Taitz had been properly and timely served with the deposition subpoena, Mr. Klayman and Taitz had two separate telephone conversations, during which Taitz confirmed, in each conversation, that Constance Ruffley had told her that Klayman had been "convicted" of a crime and that the information should be given to donors. Klayman Aff. at 40. Furthermore, as stated in Klayman's affidavit, Ruffley had "falsely stated to Dr. Orly Taitz of the 'Defend Our Freedom Foundation' that donors 'should know about litigation in Ohio, where he was convicted just recentlty [sic] of not paying large amount in child support.'" Klayman Aff. at 15. Taitz subsequently agreed to sign an affidavit to this affect, declaring that Ms. Ruffley had stated to her that Klayman had been "convicted" (not "indicted") for a crime of not paying child support and donors should "know about [the] litigation in Ohio".

However, despite her initial agreement to sign the affidavit, Taitz, in fact, never signed the affidavit. In addition to adamantly continuing to refuse to sign the document, Taitz went even

---

underlying his defamation claim. *See e.g. Primerica Fin. Servs., Inc. v. Mitchell*, 48 F. Supp. 2d 1363, 1368 (S.D. Fla. 1999) (Seitz, J.) (refusing to preclude tortious interference claim based on "allegedly untruthful statements" where "other circumstances and facts necessary in support of a claim for tortious interference" were also pled). As is the case here, there are additional facts outside the defamation claim that establish the requisite elements for a tortious interference cause of action. This is particularly evidenced by Ruffley's own admission that Defendant wanted to reach Plaintiff's donor base to achieve their own motives by effectively interfering with and cutting off Plaintiff's donors.

further by refusing to comply with the subpoena she was served with, thus, motivating Klayman to seek enforcement of the subpoena against Taitz.

Defendants' Motion for Summary Judgment relies heavily on the proposition that summary judgment should be granted because the website article posted by Ms. Taitz "is nothing more than a hearsay statement." Defendants, however, ignore the fact that this case is not yet at the trial stage but only at the summary judgment stage, where there is no requirement that the evidence presented be established as admissible at trial. Thus, Defendants contention that summary judgment should be granted merely because the web posting by Taitz is hearsay, for the moment, is significantly misplaced, particularly at this stage of the case.

Lastly, in evaluating the circumstances and the facts of this case, it is clear that the web article posted by Taitz is trustworthy and credible, and thus, admissible pursuant to Federal Rule of Evidence 807 (the "Residual Hearsay Exception"). Pursuant to Federal Rule of Evidence 807, "under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804: (1) the statement has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as evidence of material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will best serve the purposes of these rules and the interests of justice."

With regard to the first element, it is clear that Taitz's statements satisfy the requirement of having equivalent circumstantial guarantees of trustworthiness. As stated above, Ms. Taitz directly and affirmatively confirmed to Mr. Klayman, during two separate telephone conversations, that Ms. Ruffley had stated that Mr. Klayman had been "convicted" of a crime and that the "donors should know." Ms. Taitz emphasized that Ms. Ruffley had, in fact, used the

term "convicted," as compared to "indicted." Further evidencing the circumstantial guarantees of trustworthiness, is the fact that, when Ms. Ruffley was asked whether she had told Ms. Taitz that Mr. Klayman had been "convicted of a crime, Ms. Ruffley conveniently maintained that she could not remember whether she had used the word "convicted" or "indicted." Ruffley Deposition at 26, lines 11-13.

Under such circumstances, given Ms. Ruffley's so-called inability to recall what she had said, Ms. Taitz' publication on her web posting, which reiterates Ms. Ruffley's use of the term "convicted," should be taken as true. Interestingly, Ms. Ruffley conceded, during her deposition, that she not only held a significant managerial position at Judicial Watch, but also had substantial experience as a legal secretary during her prior employment. Ruffley Deposition at 11. Ruffley, despite her managerial position at Judicial Watch and her self-admitted legal background, could not recall whether she had used the word "convicted" or "indicted," which are indisputably completely different terms resulting in extremely diverging perceptions and opinions. Thus, in light of the circumstances, it is clear that the web posting contains the requisite level of trustworthiness and credibility. Plaintiff also authenticates the web posting in his affidavit at paragraph 14.

The web posting is clearly being offered as a material fact, since it is establishes Ms. Ruffley's statement that Mr. Klayman had been "convicted" of a crime and that the information should be given to donors, which is undoubtedly false. Thus, the web posting presents a material fact essential to establishing Ms. Ruffley's publication of a defamatory statement to Ms. Taitz, particularly as Mr. Klayman had never been "convicted" of any crime, including the crime of not paying child support.  Similarly, the web posting is more probative than any other evidence Mr. Klayman can present through reasonable efforts, since Ms. Ruffley conveniently cannot recall

whether she had used the word "convicted," which would establish Mr. Klayman's defamation claim, or "indictment." Ruffley also testified that she has never known Taitz to lie and that she has a high regard for her. Ruffley Deposition at 19. Since Ms. Taitz's web posting was published near the time of Ms. Ruffley's statement, while Ms. Taitz's recollection of the discussion was still fresh in her mind, its significant probative value cannot be undermined through any other evidence available to Mr. Klayman or obtainable by Mr. Klayman through reasonable efforts.

Admitting the use of the web posting serves the purpose of the evidence rules as well as the interest of justice. As discussed above, since Ms. Ruffley conveniently cannot recall her exact statement, and given the circumstances in which Ms. Taitz published the web posting, which was under circumstantial guarantees of trustworthiness, the web posting is admitted pursuant to the Residual Exception of the Federal Rules of Evidence. Lastly, Taitz confirmed the accuracy of what Ruffley said and she republished. Klayman Aff. at 40.

Finally, the website itself is authenticated under Rule 902(6) of the Federal Rules of Evidence. And, Klayman's affidavit at paragraph 14 authenticates the website. "To authenticate printouts from a website, the party proffering the evidence must produce 'some statement or affidavit from someone with knowledge [of the website] . . . for example [a] web master or someone else with personal knowledge would be sufficient. See *In re Homestore.com, Inc. Se. Litig.*, 347 F.Supp.2d 769, 782 (C.D.Cal.2004).

## VIII.   <u>TORTIOUS INTERFERENCE WITH A CONTRACT.</u>

"The elements of tortious interference with a contract or business relationship are: (1) the existence of a business relationship, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to

the plaintiff as a result of the interference." *Salit v. Ruden*, 742 So. 2d 381, 385 (Fla. Dist. Ct.

App. 4th Dist. 1999).  Defendant only alleges that this tort was not committed because there was

no contract breached or disrupted. Mot. Summ. Judg. at 19.  However, Plaintiff's business

relations with Voeltz were indeed disrupted.[6]

## IX.    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

The elements of intentional infliction of emotional distress are "(1) The wrongdoer's

conduct was intentional or reckless, that is, he intended his behavior when he knew or should

have known that emotional distress would likely result; (2) The conduct was outrageous, that is,

as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a

civilized community; (3) The conduct caused emotional distress; and (4) The emotional distress

was severe." *Stewart v. Walker*, 5 So. 3d 746, 749 (Fla. Dist. Ct. App. 4th Dist. 2009).

Defendant only alleges that the statements were not extreme or outrageous. Mot. Summ. Judg. at

19.

Defendant's statements were intended to, and did in fact cause harm to Plaintiff in both

his personal and professional capacity.  Being convicted of crime, especially for someone who is

well known as a respectful attorney, is extreme and outrageous.

### CONCLUSION

---

[6]     Plaintiff's lawsuit filed on behalf of Voeltz was interfered with. The Voeltz lawsuit was being funded by third party donations, similar to how Judicial Watch funds its own lawsuits. Because of Defendant's defamatory statements, Plaintiff's ability to gain funding for this lawsuit was substantially harmed.  Klayman Aff. at 46. Judicial Watch, and Taitz, both appealing to a similar donor base, intended and succeeded in damaging Plaintiff's reputation so that they could "take out their competition" and eliminate a competitor of their potential donors.  Evidence of this is seen in Defendant's statement, through Ruffley, that "**donors** should know" about Plaintiff's alleged "conviction."

Defendant's false statements alleging that Plaintiff had been convicted of a crime, was not only contrary to the truth but was also, on its face, made with the malicious intent of harming Plaintiff in his trade and profession, as evidenced by the fact that the statements are clearly contrary to the public record, which is readily available and accessible to Defendant. Defendant's statements were undoubtedly published with the intent that it reach donors and detrimentally impact Plaintiff's donor base. Defendant's statements are per se defamatory, defamatory by implication, and otherwise defamatory, and constitute intentional infliction of emotional distress as well as intentional interference with a contractual relationship. Defendant must now pay the price for the damage caused to Plaintiff. Defendant can neither justify nor defend its actions since it has been caught with its hand in the cookie jar, attempting to damage the reputation of Plaintiff in order to profit from the harm done to the reputation of one of its competitors. Indeed, Defendant cannot even dispute the statements made by Ruffley, stating only instead that Ruffley conveniently "do[es] not recall" making the defamatory statements.

Plaintiff has demonstrated that Defendant's Motion for Summary Judgment must be denied and that this case must proceed to trial. **Plaintiff respectfully requests oral argument.**

Dated: March 17, 2014                    Respectfully Submitted,

                                         */s/ Larry Klayman*
                                         Larry Klayman, Esq.
                                         Florida Bar No. 246220
                                         2775 NW 49th Ave., Suite 205-346
                                         Ocala, FL 34483
                                         (310) 595-0800
                                         Email: leklayman@gmail.com
                                         Plaintiff Pro Se

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 17, 2014, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF filing system. I also certify that the foregoing document is being served this date on all counsel of record or pro se parties on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by the CM/ECF system or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Larry Klayman*
LARRY KLAYMAN

Plaintiff Pro Se

## <u>SERVICE LIST</u>

**Douglas James Kress**
Schwed Kahle & Jenks, P.A.
11410 North Jog Road
Suite 100
Palm Beach Gardens, FL 33418
561-694-0070
Fax: 561-694-0057
Email: dkress@schwedpa.com

VIA CM/ECF