UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.  13-20610-CIV-ALTONAGA

**LARRY KLAYMAN**,

Plaintiff,

vs.

**JUDICIAL WATCH**, **INC.,**

Defendant.

_____/

## ORDER

**THIS CAUSE** came before the Court upon Defendant, Judicial Watch, Inc.'s ("Judicial

Watch['s]") Motion for Summary Judgment . . . ("Motion") [ECF No. 83], filed with a Statement

of Material Facts . . . ("Defendant's SF") [ECF No. 81] on February 28, 2014.  Plaintiff, Larry

Klayman ("Klayman"), filed his Opposition to Defendant's Motion for Summary Judgment

("Response") [ECF No. 89], and a Response to Defendant's Statement of Material Facts

("Plaintiff's SF") [ECF No. 88] on March 17, 2014, as well as a supplement to the record on

March 27, 2014 (*see* [ECF No. 97]).  On March 28, 2014, Judicial Watch filed an Amended

Reply . . . ("Reply") [ECF No. 102].  The Court has carefully considered the parties' written

submissions, the record, and applicable law.

## I.     BACKGROUND

This case arises out of a claim for defamation, as well as three related claims, brought by

Klayman, an attorney licensed in Florida, against Judicial Watch, the only Defendant remaining

in the action.  (*See* Amended Complaint ¶¶ 12–20 [ECF No. 5]; September 5, 2013 Order 21

[ECF No. 36]).  Klayman alleges the defamatory statement at issue inaccurately characterized

legal proceedings regarding Klayman's failure to pay child support.   (*See generally* Am. Compl.).

On January 24, 2012, Klayman was indicted in Ohio county court on two counts of criminal nonsupport for failure to pay child support from September 25, 2009 to September 24, 2011.   (*See* Def.'s SF, Ex. 6, 1–3 [ECF No. 81-7]).   Klayman had previously been found in contempt of court on multiple occasions for failing to pay child support and alimony.   (*See* Def.'s SF, Ex. 7 [ECF No. 81-8]; Def.'s SF, Ex. 8 [ECF No. 81-9]; Videotaped Deposition of Larry Elliot Klayman, Esquire ("Klayman Deposition") 46:7–11 [ECF No. 79-1]).   As a result, *capias* arrest warrants were issued in March 2010 and October 2011.   (*See* Klayman Dep. 45:10–24). Klayman made the strategic decision to be held in contempt to permit him to raise issues on appeal.   (*See* Def.'s SF ¶ 25; Pl.'s SF ¶ 25; Klayman Dep. 43:5–10).   On April 20, 2012, the Ohio county court entered an agreed judgment establishing Klayman had satisfied all monthly child support payments owed through April 30, 2012, withdrawing the *capias* arrest warrant issued against Klayman on October 13, 2011, and dismissing the indictment.   (*See* Def.'s SF, Ex. 1-A, Attach. B [ECF No. 81-1]; Def.'s SF ¶ 26; Pl.'s SF ¶ 26).   Klayman was not convicted of nonpayment of child support.   (*See* Def.'s SF ¶ 14; Pl.'s SF ¶ 14).

Earlier, in 1994, Klayman founded the public interest group Judicial Watch, to serve as a government corruption watchdog.   (*See* Affidavit of Larry Klayman ("Klayman Affidavit") ¶ 4 [ECF No. 89-3]).   Klayman left Judicial Watch in 2003 to run for a U.S. Senate seat in Florida. (*See id.*).   Klayman has been involved in high-profile litigation, including lawsuits brought against the Clinton, Bush, and Obama administrations (*see id.* ¶¶ 6, 9–10; Def.'s SF ¶ 3; Pl.'s SF ¶ 3), advocating for the Cuban community in Miami and representing the family of "Elian Gonzales [sic]" (Klayman Aff. ¶ 7), as well as representing families of U.S. forces that fought in

Afghanistan (*see id.* ¶ 8).

In 2013, ABC News published an online profile of Klayman, highlighting his accomplishments and discussing his case against the NSA and Obama administration. (*See id.* ¶¶ 9–10; Def.'s SF, Ex. 1-A, Attach. A [ECF No. 81-1]). Klayman believes "a semi-fictitious character" on the TV series "West Wing" — "Harry Klaypool of Freedom Watch" — was created after him. (Def.'s SF ¶ 4; *see also* Pl.'s SF ¶ 4). Klayman is also the founder of Freedom Watch, another public interest group that fights government corruption, and he serves as the organization's chairman and general counsel. (*See* Klayman Aff. ¶ 5).

On February 22, 2012, Judicial Watch Office Administrator Constance Ruffley ("Ruffley") attended a California Coalition for Immigration Reform ("CCIR") meeting at which Orly Taitz ("Taitz"), a California candidate for U.S. Senate, spoke. (*See* Declaration . . . of Constance S. Ruffley ("Ruffley Declaration") ¶¶ 4, 7 [ECF No. 81-4]; Def.'s SF ¶ 10; Pl.'s SF ¶ 10). After the meeting, Taitz approached Ruffley at Judicial Watch's information table, and the two discussed a number of issues, including Klayman. (*See* Ruffley Decl. ¶ 7; Def.'s SF ¶ 11; Pl.'s SF ¶ 11).

Ruffley admits that during her conversation with Taitz she conveyed information about Klayman she had researched and learned from the public record, "including information related to court proceedings for failure to pay child support." (Ruffley Decl. ¶¶ 7, 9; *see also* Deposition of Constance S. Ruffley ("Ruffley Deposition") 32:15–16 [ECF No. 80-1]). According to Taitz, Ruffley stated, "Larry Klayman is not licensed in California, . . . that he no longer works with [] Judicial Watch[,] and that donors should know about litigation in Ohio, where [Klayman] was convicted just recentl[y] of not paying large amount[s] in child support." (Affidavit of Orly Taitz ("Taitz Affidavit") ¶ 3 [ECF No. 97-1] (alterations added)).

Case No. 13-20610-CIV-ALTONAGA/O'Sullivan

Ruffley insists she does not recall whether she said Klayman was indicted or convicted of failing to pay child support (*see* Ruffley Decl. ¶ 7; Ruffley Dep. 25:24–26:13), and she did not tell Taitz the information regarding Klayman's failure to pay child support in Ohio should be provided to donors (*see* Ruffley Dep. 26:14–27:2). Ruffley maintains she believed her conversation with Taitz was private, she had no expectation her comments would be published, and she did not give Taitz permission to publish them. (*See* Ruffley Decl. ¶ 8; Ruffley Dep. 32:18–21). Ruffley also states Judicial Watch employees did not advise or instruct her to convey any information about Klayman to Taitz. (*See* Ruffley Decl. ¶ 9).

Nevertheless, based on the conversation with Ruffley, Taitz published comments about Klayman on her website on February 23, 2012. (*See* Resp. Ex. 1 – "Feb. 23, 2012 Posting" 1–2 [ECF No. 89-1]). The posting accuses Klayman of being convicted of failing to pay child support, stating: "donors should know about litigation in Ohio, where he was convicted just recentlty [sic] of not paying large amount [sic] in child support." (*Id.* 2). Taitz also notes she "will publish only, [sic] what is a public record. I am not publishing anything, [sic] that is not in [sic] public record." (*Id.*). The posting then provides more detailed information regarding Klayman's legal proceeding, noting Klayman had been indicted:

> Larry Klayman, 60, of Los Angeles, California, was indicted on two (2) counts of criminal non-support. He owes $78,861.76 for his two children ages 11 and 14. Two hearings were held in Domestic Relations Court between 2009 and 2010. The last voluntary payment was made on August 30, 2011, in the amount of $1,014.26. Arraignment is scheduled for February 7, 2012.

(*Id.*). The posting also includes a link for additional information. (*See id.*).

On February 26, 2012, Taitz published a correction to the earlier post:

> I read the first post I made in regards to Mr. Klayman and I saw that indeed there was an error. I wrote, [sic] that Ms. Ruffley stated that Mr. Klayman was just recently convicted of non payment of child support. The link and the article right under it stated, that he was indicted in [sic] 2 counts of criminal non-support, that

he owes $78,861.76 and arrignment [sic] was scheduled for February 7, 2012.  So, there was an error.  Mr. Klayman was indicted in the state of Ohio on two counts of criminal non-support, but he was not convicted yet.  I am making this correction.  Ms. Ruffley made an error.  It was also self evident in the February 23, 2012 article, as I posted the link right underneath and the link stated, [sic] that he was **indicted and arrignement [sic] scheduled**.  The article was published just a couple of days ago, on February 23, 2012 and I corrected it today, February 26, 2012.

(Resp. Ex. 2. – "Feb. 26, 2012 Posting" 3–4 [ECF No. 89-2] (emphasis in original)).

Klayman's Amended Complaint brings four claims against Judicial Watch: defamation (Count I); defamation by implication (Count II); tortious interference with a contract (Count III); and intentional infliction of emotional distress (Count IV).  (*See* Am. Compl. 6–10).  Judicial Watch moves for final summary judgment on all counts.  (*See generally* Mot.).

## II.    LEGAL STANDARD

Summary judgment may only be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(a), (c).  "[T]he court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment."  *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995) (alteration added)).  "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case."  *Burgos v. Chertoff*, 274 F. App'x 839, 841 (11th Cir. 2008) (quoting *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (internal quotation marks omitted)).  "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Channa Imps., Inc. v. Hybur, Ltd.*, No. 07-21516-CIV, 2008 WL 2914977, at *2 (S.D. Fla. Jul. 25, 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

### III.    ANALYSIS[1]

Judicial Watch argues summary judgment against Klayman is appropriate as he has not presented sufficient evidence to establish defamation (*see* Mot. 1–2, 4, 8–15), and in any event, the statement at issue is substantially true (*see id.* 11–16; Reply 5–7).  Judicial Watch further argues Klayman's other related claims are barred under the single publication/single action rule. (*See* Mot. 2, 16–18).

### A.    Defamation (Count I)

In Count I, Klayman brings a claim for defamation *per se*, or in the alternative, for defamation.  Klayman argues Judicial Watch is liable for the defamatory statement made by Ruffley and republished by Taitz.  (*See generally* Resp.).  In particular, Klayman asserts Ruffley's false statement — that Klayman was convicted, rather than indicted, for failing to pay child support and this information should be shared with donors — is *per se* defamatory.  (*See id.* 5–7).  Klayman contends the statement qualifies as defamation *per se* because it (1) accuses Klayman of committing a crime that may constitute a felony, or (2) it impugns his trade and

---

[1] The Court applies Florida law after concluding in its September 5, 2013 Order that jurisdiction over Judicial Watch and venue in Florida are proper.  Applying Florida's "significant relationship test," the Court considers the location of the parties, where the conduct and injury occurred, and where the relationship between the parties is centered.  *Connell v. Riggins*, 944 So. 2d 1174, 1176–77 (Fla. 1st DCA 2006) (citing *Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980) (internal quotation marks omitted)).

The initial publication by Ruffley and Taitz's republication occurred in California, but once published online, the allegedly defamatory statement was readily available worldwide.  The parties have ties to Florida: Judicial Watch has an office in Miami, Florida and conducts business in Florida; and Klayman lives in Ocala, Florida, is licensed to practice law in Florida, and has a Florida driver's license and Florida concealed weapons permit.  (*See* September 5, 2013 Order 6–7).  Klayman also argues the defamatory statement was directed at Florida readers since he planned to file a high profile lawsuit in Florida in 2012, and as a result, he suffered injury in Florida.  (*See* Resp. 7; Klayman Aff. ¶ 23).  Florida law is appropriate as the statement published on Taitz's website constitutes an electronic communication into Florida where the online material is accessed by readers in Florida, and the content of the statement concerns a Florida resident.  *See Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1214–16 (Fla. 2010) (holding a nonresident defendant commits a tortious act in Florida by virtue of posting defamatory statements about a Florida resident on a website accessed in Florida).

6

profession.  (*See id.*).   *Per se* defamatory statements are "so obviously defamatory" and "damaging to [one's] reputation" that they "give[] rise to an absolute presumption both of malice and damage."  *Wolfson v. Kirk*, 273 So. 2d 774, 776 (Fla. 4th DCA 1973) (alterations added; citation omitted); *see also Campbell v. Jacksonville Kennel Club, Inc.*, 66 So. 2d 495, 497 (Fla. 1953) (proof of general or special damages is unnecessary where the words are actionable *per se*).

A claim for defamation *per se* may proceed under a theory of libel *per se* or slander *per se* depending on the facts of the case.[2]  *See generally Ordonez v. Icon Sky Holdings LLC*, No. 10-60156-CIV, 2011 WL 3843890 (S.D. Fla. Aug. 30, 2011) (libel *per se*); *Campbell*, 66 So. 2d 495 (slander *per se*).  In Florida, slander is actionable *per se*

> without a showing of special damage [] if it imputes to another (a) a criminal offense amounting to a felony, or (b) a presently existing venereal or other loathsome and communicable disease, or (c) conduct, characteristics, or a condition incompatible with the proper exercise of his lawful business, trade, profession, or office, or (d) the other being a woman, acts of unchasti[t]y.

*Campbell*, 66 So. 2d at 497 (alterations added; citation omitted).   A published statement is libelous *per se* if: "(1) it charges that a person has committed an infamous crime; (2) it charges a person with having an infectious disease; (3) it tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (4) it tends to injure one in his trade or profession."  *Richard v. Gray*, 62 So. 2d 597, 598 (Fla. 1953) (en banc) (citations omitted); *see also Ordonez*, 2011 WL 3843890, at *7.  Given the facts presented, and as acknowledged by Klayman (*see* Resp. 6–7),

---

[2] "Defamation encompasses both libel and slander. . . .  Slander is ordinarily confined to defamatory spoken words, whereas libel pertains to defamatory written statements."  *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1378 n.11 (S.D. Fla. 2006) (alterations, internal quotation marks, and citations omitted) (similarly treating the elements of libel and slander — or defamation generally).  The parties do not distinguish between defamatory oral communications and written statements.  (*See generally* Mot.; Resp.).

the only applicable grounds for Klayman to proceed under a theory of slander or libel *per se* are statements that (1) accuse a person of a felony[3] or (2) impugn a person's trade or profession.

Klayman's arguments fail regarding the first ground for defamation *per se*. Absent aggravating circumstances, the crime of nonpayment of child support is a misdemeanor in Ohio. *See* OHIO REV. CODE. § 2919.21(G)(1) (stating nonsupport of dependents is a misdemeanor in the first degree, unless the offender was previously convicted or failed to pay support for a period of twenty-six weeks out of 104 consecutive weeks (classified as a felony in the fifth degree), or the offender was previously convicted of a felony for nonpayment of child support (classified as a felony in the fourth degree)). The statement from Taitz's website that Klayman "was convicted just recentlty [sic] of not paying large amount [sic] in child support"[4] (Feb. 23,

---

[3] Any difference between a criminal offense amounting to a felony (required for slander *per se*) and an infamous crime (required for libel *per se*) is not relevant to this case. The reference to an "infamous crime" appears in the Fifth Amendment, which states, "No person shall be held to answer for a capital, or otherwise infamous crime . . . ." U.S. CONST. amend. V (alteration added). The Supreme Court has explained "capital" is characterized "by its punishment only," and "otherwise infamous crime" "include[s] any crime subject to an infamous punishment, even if they should be held to include also crimes infamous in their nature independently of the punishment affixed to them." *Mackin v. United States*, 117 U.S. 348, 350–51 (1886) (alteration added; internal quotation marks omitted). Crimes characterized as having an infamous nature are "murder, perjury, piracy, forgery, larceny, robbery, arson, sodomy or buggery." *King v. State*, 17 Fla. 183, 186 (Fla. 1879) (internal quotation marks and citation omitted). Where an offense does not fall into one of the designated categories of infamous crime, only a felony may be considered an infamous crime. *See Mackin*, 117 U.S. at 350–51; *Bannon v. United States*, 156 U.S. 464, 466 (1895). "[A] crime punishable by imprisonment in the state prison or penitentiary, with or without hard labor, is an infamous crime . . . [, and] it necessarily follows that such an offense is a felony." *Bannon*, 156 U.S. at 466 (alterations added) (citing *Mackin*, 117 U.S. at 350); *Brown v. State*, 232 So. 2d 55, 59 n.2 (Fla. 4th DCA 1970), *aff'd*, 237 So. 2d 129 (Fla. 1970) ("Any crime punishable by death, or imprisonment in the state prison, is a felony . . . . Every other offense is a misdemeanor." (alteration added) (citing FLA. STAT. § 775.08)). The statement at issue does not accuse Klayman of a crime having an infamous nature.

[4] Judicial Watch argues the website publication is inadmissible hearsay and cannot be considered on a motion for summary judgment. (*See* Mot. 9–10). The out-of-court statement does not constitute hearsay as it is not being offered for the truth of the matter asserted. *See* FED. R. EVID. 801 advisory committee's note (1972 amends. § (c)) ("If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." (citation omitted)).

2012 Posting 2), does not impute to Klayman a criminal offense "amounting to a felony," *Campbell*, 66 So. 2d at 497.

Nothing included in the online publication suggests the offense of nonpayment of child support amounts to a felony, as the posting does not list any aggravating factors indicative of a felony or otherwise characterize the offense as a felony. Without more, the publication lacks sufficient detail for a reader to conclude the crime involved is a felony. *See Scobie v. Taylor*, No. 13-60457-CIV, 2013 WL 3776270, at *4 (S.D. Fla. July 17, 2013) ("When context is considered and 'extrinsic facts and innuendo are needed to prove the defamatory nature of the words,' the statements are not defamatory *per se*." (quoting *Carlson v. WPLG/TV10, Post–Newsweek Stations of Fla.*, 956 F. Supp. 994, 1006 (S.D. Fla. 1996))). Furthermore, because it is the purportedly defamatory statement that must impute the criminal offense amounting to a felony, whether the underlying facts actually support a felony offense is not relevant. The statement does not qualify as defamation *per se* under the first example.

Klayman contends the defamatory statement is also defamation *per se* under the second ground, as the statement harmed his reputation as well as his business's reputation as a government ethics watchdog. (*See* Resp. 7). To qualify as defamation *per se*, Klayman must show the defamatory statement imputes conduct that injures or is incompatible with his profession as an attorney. Klayman generally asserts the statement constitutes defamation *per se* because it tarnishes the "principals [sic] and virtues" for which he is known. (*Id.*).[5]

_____

[5] Klayman also argues the defamatory statement affects his trade and profession because a "convicted attorney is subject to disbarment for a felony." (Resp. 7). As discussed, the statement does not mention or reasonably impute failure to pay child support is a felony. Klayman's argument is not only conclusory, but it requires a person reading the defamatory statement to consider extrinsic facts to infer Klayman is accused of a felony offense. *See Scobie*, 2013 WL 3776270, at *4 (explaining a publication that is defamatory *per se* does not require extrinsic facts and innuendo to establish the statement's defamatory nature).

*Per se* defamatory statements must impute conduct to plaintiffs "incompatible with the essential functions of their respective jobs." *Scobie*, 2013 WL 3776270, at *3. Where courts have found conduct to be incompatible with one's profession, the conduct referred to in the defamatory statement went directly to a person's ability to perform duties essential to his or her employment, or was sufficiently related to skills required of the profession:

> [T]he plaintiff was accused of being drunk on the job and that accusation was repeated to his manager and other employees . . . ; patients were told that a doctor's work quality was poor and that his procedures required subsequent corrective work, which impugned the doctor's professional competence and fitness as a surgeon . . . ; a former supervisor told a prospective employer that an interviewee was "bad news," that she was prone to file frivolous sexual harassment charges, and that "you don't want her in your company," all of which suggested conduct incompatible with the proper exercise of her employment duties . . . ; a lawyer stated that "if you wanted to influence Judge Hoch, you should send men in tight shorts before him," thereby suggesting that the judge's official duties could be improperly influenced and imputing to him conduct or a condition incompatible with the proper exercise of his judgeship . . . .

*Id.* (alteration added; internal citations omitted); *see also Drennen v. Westinghouse Elec. Corp.*, 328 So. 2d 52, 54 (Fla. 1st DCA 1976) (finding published statement actionable *per se* where it imputed offense that, under the circumstances, could only indicate stealing or misappropriation of employer's property); *Wolfson*, 273 So. 2d at 778 (concluding defamatory statement was actionable *per se* because it characterized plaintiff, a financier/businessman, as a "person with whom commercial relations were undesirable," and as such, was incompatible with plaintiff's ability to conduct a lawful business).

To find defamation *per se* under this second theory, a court must first determine whether the statement is capable of a defamatory meaning. *See Ragano v. Time, Inc.*, 302 F. Supp. 1005, 1010 (M.D. Fla. 1969). In *Ragano*, the district court explained that on a motion for summary judgment it is only necessary for the court to "determine whether or not the [statement's] characterization is reasonably capable of a defamatory meaning[,]" and if so, then the jury should

determine whether the statement is actually defamatory. *Id*. (citing *Belli v. Orlando Daily Newspapers, Inc.*, 389 F.2d 579, 583 (5th Cir. 1967)) (alterations added; footnote call number omitted) (requiring the court to determine in a libel action if the statement at issue is reasonably capable of a defamatory interpretation before the jury may decide whether the statement was in fact understood as defamatory).

A person reading the statement at issue could reasonably understand it to implicate Klayman's moral character and professional code of ethics. *See Belli*, 389 F.2d at 585 n.11 (measuring the defamatory statement "in part by reference to [former] Rule 11.02 of the Integration Rules of the Florida Bar 3(a): 'The commission by a lawyer of any act contrary to honesty, justice or good morals, whether the act is committed in the course of his relations as an attorney or otherwise * * * and whether or not the act is a felony or misdemeanor, constitutes a cause for discipline" (alteration added)). Under the present Rules Regulating the Florida Bar, "[a] lawyer shall not . . . willfully refuse, as determined by a court of competent jurisdiction, to timely pay a child support obligation." R. REGULATING FLA. BAR § 4-8.4(h) (Jan. 31, 2014) (alterations added). The advisory comments to section (h) explain an attorney's professional license may be suspended or denied for willful failure to pay child support. *See id.* (advisory comment). This rule applies to child support obligations both in and out of Florida. *See id.* On its face, the statement is reasonably capable of a defamatory meaning as it accuses Klayman of being convicted of a crime relating to his moral character.

Whether the statement actually impugns Klayman's trade or profession as an attorney, thereby constituting defamation *per se*, is a matter for the jury. *See Belli*, 389 F.2d at 581, 583 (remanding the case to the district court for a jury to determine whether the "common mind" would understand "the publication itself, without reference to extrinsic facts," as having a

"defamatory meaning" (internal quotation marks omitted)).   "[T]he jury determines whether language imputes to another conduct, characteristics or a condition incompatible with the proper conduct of his business, trade, profession or office." *Id.* at 583 (alteration added).   Accordingly, summary judgment is denied as to Klayman's claim for defamation *per se.*

As an alternative to defamation *per se*, Klayman argues he has provided sufficient proof for a traditional claim of defamation to survive summary judgment.  (*See* Resp. 7–14).  Judicial Watch asserts summary judgment is appropriate on Klayman's traditional defamation claim because the statement at issue is substantially true.  (*See* Mot. 11–16; Reply 5–7).

To establish a cause of action for defamation, a plaintiff must show: "(1) publication; (2) falsity; (3) the actor acted with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement is defamatory." *Five for Entm't S.A. v. Rodriguez*, No. 11-24142-CIV, 2013 WL 4433420, at *6 (S.D. Fla. Aug. 15, 2013) (citing *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008)); *see also Internet Solutions Corp.*, 39 So. 3d at 1214 n.8 (citation omitted).  If the plaintiff bringing a defamation claim is a public figure, he or she must also demonstrate with clear and convincing evidence "actual malice" by the person publishing the statement.  *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964); *see Levan v. Capital Cities/ABC, Inc.*, 190 F.3d 1230, 1239 (11th Cir. 1999) (citations omitted). "[A] public figure plaintiff must establish that the disseminator of the information either knew the alleged defamatory statements were false, or published them with reckless disregard despite awareness of their probable falsity." *Mile Marker, Inc. v. Petersen Publ'g, L.L.C.*, 811 So. 2d 841, 845 (Fla. 4th DCA 2002) (alteration added; citation omitted) (noting public figure status is a

question of law for the court).  Because of Klayman's notoriety and high-profile work in the public realm, the Court considers Klayman a public figure.

Judicial Watch challenges the first element required to show defamation on the basis it was not responsible for publishing the statement.  (*See* Mot. 9).  In particular, Judicial Watch contends: Klayman lacks proof Ruffley uttered a false statement (*see id.* 8–9); a third party other than Ruffley republished the statement online (*see id.* 9); and Judicial Watch did not authorize Ruffley or Taitz to publish the statement (*see id.* 1; Reply 1, 3).

The publication of a statement in a defamation claim only requires the dissemination of a false statement to a person other than the defamed person.  *See Doe v. Am. Online, Inc.*, 783 So. 2d 1010, 1016 (Fla. 2001) (citation omitted).  A plaintiff must show the defendant initially published the statement.  *See Five for Entm't*, 2013 WL 4433420, at *6 ("Because Plaintiffs have not clearly established that Baldiri, or any other Defendant, made the statements contained in the third-party web posts, Plaintiffs have not established that Defendants published the statements, a required element of their claim.").

Here, the parties have stipulated Taitz and Ruffley spoke about Klayman's failure to pay child support on February 22, 2012.  (*See* Def.'s SF ¶ 11; Pl.'s SF ¶ 11).  Ruffley cannot recall whether she stated Klayman was convicted of or indicted for the crime.  (*See* Ruffley Dep. 25:24–26:13; Ruffley Decl. ¶ 7).  Klayman submits Taitz's website posting from February 23, 2012 and her affidavit as circumstantial evidence Ruffley used the term convicted.  (*See* Feb. 23, 2012 Posting; Taitz Aff. ¶ 3).  Whether Ruffley actually made the statement referenced in Taitz's online posting is a triable issue of fact.

Regarding Taitz's republication of the statement, Judicial Watch asserts Ruffley cannot be liable for the republication unless republication was reasonably foreseeable.  (*See* Mot. 10–

11).  Klayman's Response is silent as to this argument.  Klayman only generally contends the publication element was satisfied when Ruffley initially made the statement to Taitz.  (*See* Resp. 8).  Even if Ruffley's statement to Taitz satisfies the publication element, Klayman must show Ruffley is liable for republication to recover the full extent of damages he seeks based on the online post.

Judicial Watch cites one case for the proposition a defendant may be liable for defamation if the republication by a third party was "reasonably foreseeable."  *Granda-Centeno v. Lara*, 489 So. 2d 142, 143 n.3 (Fla. 3d DCA 1986).  At least one other court has discussed that legal standard, declining to follow a theory of liability based on reasonable foreseeability.  *See Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, No. 6:08-cv-466-Orl-28GJK, 2010 WL 1408391, at *12 n.16 (M.D. Fla. Apr. 6, 2010) (refusing to apply the reasonably foreseeable standard expressed in dictum in *Granda-Centeno*).

While this jurisdiction does not appear to have applied the reasonably foreseeable standard since it was noted in *Granda-Centeno*, other circuit courts have recognized liability for republication by a third party under certain circumstances.  *See Tavoulareas v. Piro*, 759 F.2d 90, 136 n.56 (D.C. Cir. 1985) ("The maker of a slanderous statement may be held accountable for its republication if such republication was reasonably foreseeable." (citations omitted)), *rev'd in part on other grounds*, 763 F.2d 1472 (D.C. Cir. 1985); *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 59 (2d Cir. 2002) ("[A] plaintiff may not recover damages from the original author for . . . slander arising from the republication of defamatory statements by a third party absent a showing that the original author was responsible for or ratified the republication." (alterations added; citation omitted)); *Blue Ridge Bank v. Veribanc, Inc.*, 866 F.2d 681, 689 (4th Cir. 1989) ("It is well settled that the author or originator of a defamation is

liable for republication or repetition thereof by third persons, provided it is the natural and probable consequence of his act, or he has presumptively or actually authorized or directed its republication . . . .  However, the original author is not responsible if the republication is not the natural and probable consequence of his Act, but is the independent and unauthorized act of a third party." (alteration in original; citation omitted)).  Based on the circumstances of this case, a jury may reasonably find Ruffley is liable for the republication on the basis republication would likely occur.  *See Granda-Centeno*, 489 So. 2d at 143 n.3 (noting a defendant's liability for republication is a factual question to be resolved by the jury); *see also Blue Ridge Bank*, 866 F.2d at 689.

Next, Klayman must demonstrate Judicial Watch, as Ruffley's employer, is vicariously liable for the publication and/or republication.  A trier of fact may reasonably find Judicial Watch is vicariously liable for defamation under an agency theory of liability.  *See Thompson v. Orange Lake Country Club, Inc.*, 224 F. Supp. 2d 1368, 1381–82 (M.D. Fla. 2002) (citations omitted) (reserving for the jury the fact-specific inquiry of whether the employee was acting within the scope of his employment in making the purportedly libelous statements about plaintiff).

Klayman asserts he has established the second element — falsity — as the statement at issue is false.  (*See* Resp. 8; Klayman Aff. ¶¶ 18–22).  The statement accused Klayman of being convicted of a crime despite public records indicating he was merely indicted.  It is evident Klayman has not been convicted of a crime for failing to pay child support.  The choice of words used is sufficient to support Klayman's burden of showing the statement is false.

As to the third element, Klayman must prove the defamatory statement was published with actual malice — "with knowledge that it was false or with reckless disregard of whether it

was false or not." *Silvester v. Am. Broad. Cos., Inc.*, 650 F. Supp. 766, 777 (S.D. Fla. 1986) (citation and internal quotation marks omitted) (explaining reckless disregard is predicated upon whether "the defendant in fact entertained serious doubts as to the truth of his publication.").[6] Viewing the evidence in the light most favorable to Klayman, Ruffley may have had knowledge of the falsity. Ruffley testified the information she relayed to Taitz about Klayman was "gathered through [her] own independent research" (Ruffley Decl. ¶ 9 (alteration added)), and "learned from public records, including information related to court proceedings for failure to pay child support" (*id.* ¶ 7). If Ruffley used the word "convicted," as Taitz appears to have heard, then the trier of fact may find Ruffley gained sufficient knowledge from her research either to know the terminology "convicted" was false, or to harbor serious doubts as to its veracity. Klayman has proffered evidence of actual malice, and it is for the trier of fact to decide whether Ruffley knew after researching the issue that Klayman was merely indicted for failing to pay child support.

Regarding the fourth element of a defamation claim, Klayman asserts he has suffered actual damages. (*See* Resp. 8–9). Klayman relies on his virtues and honesty as an attorney and maintains his reputation impacts the number of clients who seek his legal advice and representation. (*See* Klayman Aff. ¶ 11). "[E]vidence of some actual injury," such as injury to reputation, personal humiliation, and mental anguish and suffering, is required for a plaintiff to recover for defamation. *Miami Herald Publ'g Co. v. Ane*, 458 So. 2d 239, 242, 243 n.3 (Fla. 1984) (alteration added; citations omitted). These general damages concerning a plaintiff's dignity, reputation, and emotional harm need not be proved, *see F.A.A. v. Cooper*, 132 S. Ct.

---

[6] Despite this definition, the parties' arguments regarding proof of actual malice center around whether Judicial Watch or Ruffley harbored animosity against Klayman. (*See* Resp. 9–14; Reply 7–9). This interpretation of the element as requiring a showing of ill will or hatred is largely misguided given the standard set forth in *New York Times Co.* and discussed in *Silvester*.

1441, 1454 (2012), but public figures must still show proof of actual malice to recover, *see Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 377 (1974).

As "it is often difficult for a plaintiff to prove actual damages," courts and juries have historically presumed some level of damage from defamatory publications. *Krauser v. Evollution IP Holdings, Inc.*, No. 12-80977-CIV, 2013 WL 5313403, at *9 (S.D. Fla. Sept. 20, 2013) (citations omitted) (explaining where a plaintiff does not proffer evidence of actual damages, presuming damages allows a defamation claim to survive summary judgment, and plaintiff may be awarded nominal damages at trial as vindication of his reputation). Klayman avers the defamatory statement harmed his reputation and deterred supporters from donating to his public interest litigation in Florida. (*See* Klayman Aff. ¶¶ 26, 47; Klayman Dep. 104:14–108:10). Klayman testifies he has also suffered severe emotional distress, including difficulty sleeping and concentrating at work as a result of the publication. (*See* Klayman Aff. ¶ 25). Klayman has proffered evidence of actual damages. *See Cooper*, 132 S. Ct. at 1452 n.9 (citation omitted).

Regarding the fifth element, Klayman must show the statement was defamatory. The meaning of the verb convicted is distinct from indicted: the former connotes a final adjudication, wherein a person is judged guilty of a crime; while the latter signifies a formal written accusation of a crime made by a grand jury, wherein the person has not yet been proven guilty but is presumed innocent. *Cf.* BLACK'S LAW DICTIONARY (9th ed. 2009) (definitions for "conviction" and "indictment"). (*See also* Resp. 10). As discussed, accusing a person of being convicted of a crime when he was not may be defamatory. Klayman has presented triable issues of fact as to all of the elements of his defamation claim.

Judicial Watch asserts as an affirmative defense the defamatory publication, taken as a whole, is substantially true.  (*See* Mot. 11–16; Reply 5–7).  "A false statement of fact is the *sine qua non* for recovery in a defamation action."  *Byrd v. Hustler Magazine, Inc.*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983).  "Under the substantial truth doctrine, a statement does not have to be perfectly accurate if the 'gist' or the 'sting' of the statement is true."  *Smith v. Cuban Am. Nat'l Found.*, 731 So. 2d 702, 706–07 (Fla. 3d DCA 1999) (citations omitted) (explaining falsity only exists where "the publication is substantially and materially false, not just if it is technically false").  "A statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced."  *Id.* at 706 (internal quotation marks omitted) (quoting *Masson v. New Yorker Magazine*, 501 U.S. 496, 517 (1991) (other citations omitted)); *see also Nelson v. Associated Press, Inc.*, 667 F. Supp. 1468, 1480 (S.D. Fla. 1987).

In the online post, the discussion refers to Klayman's indictment on two counts of criminal non-support, the amount of child support owed, the amount of Klayman's most recent payment, and the date of his future arraignment.  (*See* Feb. 23, 2012 Posting).  From the additional information directly following the statement Klayman was convicted of failing to pay child support, a trier of fact may or may not conclude the publication taken as a whole is substantially true.  In other words, while the statement Klayman was "convicted," as written on Taitz's website, is technically false, whether the falsity is negated because the online posting taken as a whole is substantially true is an issue for the jury.  *See, e.g.*, *Jews For Jesus, Inc.*, 997 So. 2d at 1108 (discussing Florida's standard jury instructions for defamation claims involving public figures); *Smith*, 731 So. 2d at 704–05 (concluding the trial court erred in refusing to give a jury instruction on the defense of substantial truth, although plaintiff must prove the defamatory

statement is false); Restatement (Second) of Torts § 617 (1977) ("[T]he question of whether the defamatory imputations are true . . . is ordinarily for the jury. . . .  [H]owever, if the evidence is so overwhelming that any other conclusion would be unreasonable, the court may direct the jury to make the proper finding." (alterations added; internal citations omitted)).

Because the trier of fact must consider the context of the publication in determining whether the gist or sting associated with it differs from the actual truth, the Court cannot grant summary judgment in favor of Defendant on its affirmative defense.  *Cf. Fidelity Warranty Servs., Inc. v. Firstate Ins. Holdings, Inc.*, 74 So. 3d 506, 515 (Fla. 4th DCA 2011) ("To determine whether a statement is actionable, the court must examine it in the context in which it was published." (internal quotation marks and citation omitted)).

### B.        Defamation by Implication (Count II)

In Count II, Klayman argues Judicial Watch is liable for defamation by implication. Klayman asserts Ruffley selectively included false facts and omitted certain facts to portray Klayman was convicted of a crime when he had not been convicted.  (*See* Resp. 14 & n.4). Judicial Watch argues Count II is precluded under the single publication/single action rule and the First Amendment (*see* Mot. 18), and is negated by Judicial Watch's substantial truth affirmative defense (*see id.* 19).  Judicial Watch further argues Klayman cannot satisfy the elements of defamation by implication because he has failed to prove actual malice.  (*See id.*). Klayman's claim of defamation by implication fails for other reasons.

"Defamation by implication arises, not from what is stated, but from what is implied when a defendant (1) juxtaposes a series of facts so as to imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts . . . ." *Jews For Jesus, Inc.*, 997 So. 2d at 1106 (internal quotation marks and citations omitted).  "All of the protections of

defamation law that are afforded to the media and private defendants are [] extended to the tort of defamation by implication." *Id.* at 1108 (alteration added; citation and footnote call number omitted).

The defamatory statement Klayman complains of does not fit squarely into either of the aforementioned categories of defamation by implication.  It is not a series of "literally true statements [that] are conveyed in such a way as to create a false impression," nor does the statement impute a defamatory characterization simply by omitting true facts.  *Id.* (alteration added).  Rather, the statement incorrectly uses the verb convicted in place of indicted.  Klayman acknowledges the statement — he was convicted of failing to pay child support — is actually false.  (*See* Resp. 14 n.4 ("Defendant simply chose to pick and choose bogus facts . . . ;" "Defendant ignored readily available public documents evidencing the falsity of Defendant's accusations that Plaintiff had not been convicted of a crime and, instead, willfully falsified facts . . . ." (alterations added)).

At issue is a statement that may be defamatory because it is false, not a factually true one that creates a false impression.  *See Jews For Jesus, Inc.*, 997 So. 2d at 1107 ("Defamation by implication is premised not on direct statements but on false suggestions, impressions and implications arising from otherwise truthful statements." (citation and internal quotation marks omitted)).  Although Klayman contends significant factual details were intentionally omitted from the publication to engender a false impression, his argument that the publication qualifies as defamation by implication fails to persuade.  The statement at issue — that Klayman was convicted — is false.  The publication, when considered as a whole, actually includes additional factual details regarding Klayman's indictment, as opposed to omitting them.  Klayman has not

asserted any other defamatory implication from the publication (apart from him being convicted) for the Court to consider. Accordingly, summary judgment is granted as to this Count.

### C.   Tortious Interference with a Contract (Count III) and Intentional Infliction of Emotional Distress (Count IV)

Klayman asserts claims for tortious interference with a contract in Count III and intentional infliction of emotional distress in Count IV. (*See* Resp. 23–24). Judicial Watch argues Florida's single publication/single action rule ("single action rule") bars these claims for relief. (*See* Mot. 16–17). Klayman urges the application of the single action rule is premature if his defamation claim survives summary judgment because the related tort counts depend on the success of his defamation claim. (*See* Resp. 19). Although Klayman's defamation claim survives summary judgment, the question remains whether the single action rule bars Klayman's related tort claims in Counts III and IV.

In Count III, Klayman asserts Judicial Watch tortiously interfered with one of his business contracts with a client he represents in a high-profile lawsuit in Florida. (*See id.* 23–24, 24 n.6). A claim for tortious interference with a contract or business relationship requires proof of: "(1) the existence of a business relationship . . . under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the interference." *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 385 (Fla. 4th DCA 1999) (alteration added; citations omitted). In Count IV, Klayman asserts he suffered emotional distress from the defamatory statement. (*See* Resp. 24). The elements of a claim of intentional infliction of emotional distress are:

> (1) [t]he wrongdoer's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result; (2) [t]he conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized

community; (3) [t]he conduct caused emotional distress; and (4) [t]he emotional
distress was severe.

*Stewart v. Walker*, 5 So. 3d 746, 749 (Fla. 4th DCA 2009) (alterations added; citation omitted).

Notwithstanding that Klayman may have presented sufficient facts to satisfy each of the
claims' elements, Judicial Watch maintains the claims are barred by the single action rule. "In
Florida, a single publication gives rise to a single cause of action." *Callaway Land & Cattle Co.
v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. 4th DCA 2002) (citation omitted).
Consequently, "[t]he various injuries resulting from it are merely items of damage arising from
the same wrong." *Id.* (citation omitted). "The rule is designed to prevent plaintiffs from
circumventing a valid defense to defamation by recasting essentially the same facts into several
causes of action all meant to compensate for the same harm." *Gannett Co., Inc. v. Anderson*, 947
So. 2d 1, 13 (Fla. 1st DCA 2006) (internal quotation marks and citation omitted). Pursuant to
the rule, courts dismiss concurrent counts for related torts based on the same publication and
underlying facts as the failed defamation count. *See Ortega Trujillo v. Banco Cent. Del
Ecuador*, 17 F. Supp. 2d 1334, 1339–40 (S.D. Fla. 1998) (dismissing false light privacy claim
arising from same allegedly defamatory publication); *Fridovich v. Fridovich*, 598 So. 2d 65, 70
(Fla. 1992) ("[T]he successful invocation of a defamation privilege *will* preclude a cause of
action for intentional infliction of emotional distress if the sole basis for the latter cause of action
is the defamatory publication." (emphasis in original)).

When claims are based on analogous underlying facts and the causes of action are
intended to compensate for the same alleged harm, a plaintiff may not proceed on multiple
counts for what is essentially the same defamatory publication or event. *See Kamau v. Slate*, No.
4:11cv522-RH/CAS, 2012 WL 5390001, at *7–8 (N.D. Fla. Oct. 1, 2012) (allowing plaintiffs to
amend their defamation claim, but dismissing counts for injurious falsehood and interference

with business reputation because they relied on same event as defamation claim).  A cause of action for intentional infliction of emotional distress is precluded when "it does not set forth an independent tort for the recovery of damages for emotional distress." *Boyles v. Mid-Florida Television Corp.*, 431 So. 2d 627, 636 (Fla. 5th DCA 1983) (emphasis omitted).  The court in *Boyles* concluded:

> The "outrageous conduct" alleged here is defamation, which gives rise to various elements of damage, including personal humiliation, mental anguish and suffering. . . .  In other words, the allegations of this count describe the tort of libel while characterizing it as "outrageous conduct."  As such, it is merely an imperfect repetition of Count I.  Therefore, Count II [intentional infliction of emotional distress] was properly dismissed . . . .

*Id.* (alterations added; internal citation omitted).

Recovery for separate causes of action is proper when they "are properly pled upon the existence of independent facts."  *Fridovich*, 598 So. 2d at 70; *see also Brown v. Suncoast Beverage Sales, LLP*, No. 2:09-cv-498-FtM-29DNF, 2010 WL 555675, at *3 (M.D. Fla. Feb. 10, 2010) (permitting plaintiff's claim for intentional infliction of emotional distress to proceed because it did not rely solely on the defamation claim where the complaint included allegations of race discrimination, wrongful termination, and unequal treatment).  Klayman has not shown the existence of any independent facts, distinct from the subject of his defamation claim, on which he bases these additional claims.  Counts III and IV rely on the same underlying facts and cause of action as Count I to assert different damages from the same injury — a single, online publication.  Klayman fails to cite any case law, nor has the Court found any, to support permitting Counts III and IV to proceed simply because the defamation claim in Count I survives summary judgment.  Counts III and IV are properly barred under Florida's single action rule.

## IV.  CONCLUSION

For the foregoing reasons, it is

Case No. 13-20610-CIV-ALTONAGA/O'Sullivan

**ORDERED AND ADJUDGED** that Defendant's Motion **[ECF No. 83]** is **GRANTED in part** and **DENIED in part**.  Trial will proceed on the claim stated in Count I only.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 23rd day of May, 2014.

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record

24