**IN UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 13-20610-CIV-ALTONAGA/Simonton

LARRY KLAYMAN,

               Plaintiff,

v.

JUDICIAL WATCH, et. al.


              Defendants.

_____/


**TRIAL BRIEF ON MATTERS RELATED TO**
**THE TESTIMONY OF GEORGE MILLER**

Introduction.

      Plaintiff brought this lawsuit against Defendant Judicial Watch ("Defendant") for

defamation *per se* and defamation. The action arises out of the false statements made by

Constance Ruffley ("Ruffley"), an Office Administrator and Management Representative of

Judicial Watch, who, while acting under the authority and direction of Judicial Watch's directors,

maliciously and willfully conveyed false and defamatory statements about Plaintiff, alleging that

Plaintiff had been "convicted" of a crime for not paying child support and that donors should

know about Plaintiff's alleged conviction.

      On May 23, 2014, Defendant took the deposition of George Miller, a key witness who

would testify to the events which led up to the defamation and the damage done by Defendant's

false statements.  During this deposition, Plaintiff, duly licensed to practice law within the state

of Florida, represented Mr. Miller for the purposes of the deposition.  During this deposition,

Plaintiff objected to Defendant's counsel's inappropriate and improper questions for the

deponent.  Several questions sought to break through the attorney client privilege and asked

about an attorney client discussion allegedly held between Mr. Miller and Mr. Klayman just prior to the deposition. (Miller did not assert attorney client privilege for any other questions, which related to the events leading up to suit having been filed.) Other questions by defense counsel were objected to on the grounds that they assumed facts not in evidence, lacked foundation or relevancy and were compound, designed to coax or induce Mr. Miller to give distorted testimony.[1]  In any event, upon reposing his questions, defense counsel had all of his questions answered and Mr. Klayman did not instruct Mr. Miller not to answer them. The few questions that Mr. Miller did not answer on the basis of attorney client privilege were the ones that dealt with the alleged telephone conversation before the deposition. In this regard, defense counsel arranged an emergency hearing before Magistrate Judge Sullivan but failed to follow up and left the court reporter's office, instead choosing to use this issue tactically to try to file his now denied motion in limine.[2]

　　　　If it cannot tactically exclude all of Mr. Miller's testimony – and Defendant has withdraw this request -- Defendant objects to the admission of statements made by George Miller concerning what donors had told him while contemporaneously reading the defamatory posting and about why they were no longer donating.

　　　　Both of these issues will be discussed below.

---

[1] When the questions were rephrased appropriately, Mr. Miller answered all questions.

[2] In any event, Defendant Judicial Watch, Inc. concedes to this Court that its attempt to exclude George Miller's testimony is non-meritorious and it has given up on it. Specifically, Defendant Judicial Watch now admits, "Judicial Watch's request for the exclusion of George Miller's testimony has been denied and Judicial Watch will not argue that point again in this Memorandum." Def's Mem. of Law at pg. 5.

<u>THE LAW</u>

<u>Plaintiff's Role as Attorney to Mr. Miller During His Deposition</u>

Defendant only offers the following argument, simply that "Mr. Miller is a witness to the litigation. Mr. Klayman should not be permitted to make his communications with Mr. Miller privileged by claiming that Miller is his client 'for the purposes of the deposition.'" Def. Mot. In Limine [ECF No. 126] at pp. 2.

Defendant cited to no relevant case law, nor can he. Mr. Miller has a right to choose whichever lawyer he wishes. *See, e.g. McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1257 (5th Cir.1983) ("The right to counsel, safeguarded by the constitutional guarantee of due process of law, includes the right to choose the lawyer who will provide that representation."); *Atty. Griev. Comm'n v. Potter*, 380 Md. 128, 157 (Md. Supr. Crt. 2004) ("The client has the right to choose the attorney or attorneys who will represent [him]."); *Potashnick v. Port City Construction Co.*, 609 F.2d 1101, 1118(5th Cir. 1980) ("The right of access to retained counsel is one of constitutional dimensions and should be freely exercised without impingement."); *Christensen v. Eggen*, 577 N.W.2d 221, 225 (Minn. Supr. Crt. 1998) ("Each client has a right to choose the attorney that he/she prefers and to be knowledgeable about the specifics of his/her case . . .").

Plaintiff, as an attorney licensed to practice law in Florida for 37 years and at all times a member in good standing with The Florida Bar, may represent anyone as long as it does not violate the Rules Governing the Florida Bar. Under The Rules Governing The Florida Bar, the only possible restriction on Plaintiff's representation of George Miller would be Rule 4-1.7, which prohibits representation when "(1) the representation of 1 client will be directly adverse to another client; or (2) there is a substantial risk that the representation of 1 or more clients will be

materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer."  R. Reg. Fl. Bar 4.1.7.

Neither of these prohibitions applies.  Mr. Miller's interests are the same as Plaintiff's. Plaintiff suffered harm at the hands of Defendant's statements, and so did Mr. Miller.  There is no risk that Mr. Miller's representation will be limited by the lawyer's responsibilities, as Mr. Miller was only being represented during the deposition.  Furthermore, even if another attorney had been chosen to represent Mr. Miller, the same objections would have applied to Defendant's counsel's inappropriate and improper question seeking to break through an attorney-client privilege, the highest and most sacrosanct of all privileges.

Finally, even if there was a potential conflict of interest, which there is not, Mr. Miller was aware that Plaintiff was representing himself pro se in these proceedings, and explicitly waived the alleged conflict of interest by still choosing Plaintiff to represent him at the deposition. Mr. Miller has a right to waive a possible conflict of interest, of which there is none here in any event.

<u>Mr. Miller's Statements About the Donors Are Not Hearsay</u>

Hearsay is defined by the Federal Rules of Evidence as a statement, other than one made by the declarant while testifying at the trial or hearing in which the statement is presented, offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c).

Defendant Judicial Watch claims that *Aamco* "appears to be on point." Defendant's Memorandum of Law at pg. 3. Defendants are wrong. Defendant's citation of *Aamco Transmissions, Inc. v. Baker*, 591 F.Supp.2d 788 (E.D. Pa. 2008) actually supports the introduction of testimony through Mr. Miller of what donors told him immediately after the defamatory publication was made through Judicial Watch. *Aamco* noted that present sense

impression, which will be discussed further below, has three requirements. "(1) first the declarant must have personally perceived the event described; (2) the declaration must be an explanation or description of the event rather than a narration; and (3) the declaration and event described must be contemporaneous." *Id*. at 795. The declarants' impressions satisfy all three. Immediately after this publication, donors informed Mr. Miller that they would not contribute as a direct result of what had just been published. Mr. Miller recorded these conversations in his mind and on paper. Some of these exhibits were referenced at the end of trial last Friday. Accordingly, *Aamco* does not stand for the proposition that these statements are hearsay or opinions. Rather, they are statements of fact made contemporaneously with the defamatory publication. *See also* footnote 4 to this Court's Order of May 23, 2014 (If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." Order of May 23, 2014 at fn. 4. Indeed, aside from the hearsay exception that clearly applies, the significance of these statements by donors lies solely in the fact that they were made and therefore are admissible under this theory as well.

With regard to the notice element of Rule 807, Defendant has had copious notice of Mr. Miller's identity and role in this entire sad affair. He was mentioned prominently even in the initial defamatory publications on Orly Taitz's website and Mr. Klayman testified at his deposition extensively about Mr. Miller, who indeed has his own website with contact information should defense counsel have wanted to contact him in any way.

Furthermore, even if these statements were inadmissible hearsay, which they are not, Mr. Miller can clearly testify as to cause and effect; namely that once the defamatory statements were made, contributions dried up. This cannot be considered hearsay under anyone's interpretation of the law.

<u>Mr. Miller's Statements Are Not Being Offered For the Truth of the Matter.</u>

An out-of-court statement does not constitute hearsay as it is not being offered for the truth of the matter asserted. *See* FED. R. EVID. 801 advisory committee's note (1972 amends. § (c)) ("If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." (citation omitted)).

Similar to the website publications that originally defamed Plaintiff, Plaintiff need not present the evidence of what the donors told Mr. Miller for the truth of the matter.

In *Luster v. Retail Credit Co.* 575 F.2d 609 (8th Cir.1978), a libel action where a prospective insurer related to plaintiff information received from defendant that plaintiff's recent fire was arsonous in origin, the court held that the statement was non-hearsay because it was being admitted only to prove that it was uttered, not that it is true. The U.S. Court of Appeals for the 8th Circuit held that, "plaintiff's exhibits 15 and 16, letters written from Davidson to Newell and Harlan, executive vice president of Bowes and Company, were not hearsay because they were not offered to prove the truth of anything asserted in the letters. Rather they were introduced only to show Davidson had written the letters after he had been informed of the report in an effort to secure insurance coverage for plaintiff. The trial court properly instructed the jury that the letters were only being admitted for this limited purpose." *Id.* at 615.

<u>Statements From Donors Fall Under Hearsay Exceptions.</u>

Even if the information relayed to Mr. Miller by the donors was hearsay, which it is not, the statements of the donors would fall under one of the exceptions to the hearsay rule.

<u>Present Sense Impression.</u>

Under the Present Sense Impression:

**(1)** *Present Sense Impression.* A statement describing or explaining an event or condition, made while or immediately after the declarant perceived it.

A present sense impression is admissible if made in a timely manner.  The timeliness of the making of the statement is designed to reduce the opportunity for fabrication or manipulation. This exception recognizes that in many, if not most instances, precise contemporaneity is not possible and hence a slight lapse is allowable. *State v. Odom*, 316 N. C. 306 (N.C. Supr. Crt. 1986).

In *Cargill, Inc. v. Boag Cold Storage Warehouse,* 71 F.3d 545, 43, (6th Cir. 1995) reh. en banc, den. (6th Cir. Feb. 1, 1996)*,* the court found that statements made by employees of plaintiff turkey producer in course of their investigation of warehouse to which plaintiff had shipped turkeys with suspect production codes to determine where all turkeys had gone, were properly admitted under the present sense impression exception to hearsay rule as notes were taken contemporaneously throughout course of investigation.

Here, Mr. Miller had made notes, in the form of emails to Plaintiff and others, that demonstrated, as they were occurring, that donors were concerned about the claimed conviction and were no longer going to contribute to Plaintiff's representation. Clearly Mr. Miller, at a minimum, can testify as to these exhibits, which are already in evidence.

Recorded Recollection.

The information from Mr. Miller about the donors would also fall under the recorded recollection exception.

(5) *Recorded Recollection.* A record that:

(A) is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately;
(B) was made or adopted by the witness when the matter was fresh in the witness's memory; and
(C) accurately reflects the witness's knowledge.

If admitted, the record may be read into evidence but may be received as an exhibit only if offered by an adverse party.

A hearsay exception for recorded recollection is generally recognized and has been described as having "long been favored by the federal and practically all the state courts that have had occasion to decide the question." *United States v. Kelly*, 349 F.2d 720, 770 (2d Cir. 1965). The guarantee of trustworthiness is found in the reliability inherent in a record made while events were still fresh in mind and accurately reflecting them. *Owens v. State*, 67 Md. 307, 316, (Md. Supr. Crt. 1887).

<u>Existing State of Mind.</u>

Any statements made by donors to Mr. Miller would also be admitted as an exception under the existing state of mind exception:

> **(3)** ***Then-Existing Mental, Emotional, or Physical Condition.*** A statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

In *Herman Schwabe , Inc. v. United Show Machinery Corp.* 297 F.2d 906, 914 (2nd Cir. 1962), cert. denied, 369 U.S. 865 (1962), plaintiff offered letters from five customers and a conversation with a sixth in support of its Section 1 Sherman Antitrust Act claims. The customer letters and the conversation set forth the reasons those customers chose not to do business with plaintiff. The U.S. Court of Appeals for the Second Circuit ruled that the letters were admissible as evidence and the testimony regarding the conversation as evidence of motive or reason pursuant to the state of mind exception to the hearsay rule.; see also *Lawlor v. Loewe*, 235 U.S. 522, 536 (1915) (reasons given by customers for refusing to deal with seller of plaintiff's hats, including letters from dealer, were admissible); *Hydrolevel Corp. v. American Society of*

*Mechanical Engineers, Inc.*, 635 F.2d 118, 128 (2d Cir. 1980) (alleged hearsay testimony

regarding responses of potential customers is excepted from the hearsay rule); *J.F. Feeser, Inc. v.

Serv-A-Portion, Inc.*, 909 F.2d 1524, 1535 (3d Cir. 1990) (district court erred in not considering

alleged "hearsay" testimony on the reasons why customers were not doing business with a

particular seller because: (1) the testimony was relevant to actual injury; and (2) testimony was

admissible under state of mind exception to the hearsay rule).

In *Callahan v. A.E.V., Inc.*, 182 F.3d 237, 252 (3d Cir. 1999), the U.S. Court of Appeals

for the Third Circuit reversed the district court and concluded that "statements of a customer as

to his reasons for not dealing with a supplier are admissible for this limited purpose, i.e., the

purpose of proving customer motive." *Id.*

These cases are analogous and right on point to this case. The donors that gave or upon

seeing Judicial Watch's defamatory statements refused to give money to Mr. Miller to fund

Plaintiff's legal representation are essentially just the same thing as customers. They are paying

Mr. Miller, who in turn is paying Plaintiff, for his legal services. The reasons that they stopped

paying are expressions of their state of mind and they are thus admissible as a hearsay exception

in that regard.

<u>Business Records Exception.</u>

Further, Mr. Miller's emails, regularly sent out to donors and to Plaintiff, were reports

that were kept regularly, and thus are admissible under the business records exception as well.

Rule 803(6) provides that the following is not excluded by the hearsay rule:

> A memorandum, report, record, or data compilation, in any form, of acts, events,
> conditions, opinions, or diagnoses, made at or near the time by, or from
> information transmitted by, a person with knowledge, if kept in the course of a
> regularly conducted business activity, and if it was the regular practice of that
> business activity to make that memorandum, report, record, or data compilation,
> all as shown by the testimony of the custodian or other qualified witness . . .

unless the source of the information or the method or the circumstances of preparation indicate a lack of trustworthiness.

"The element of unusual reliability of business records is said variously to be supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation."  McCormick §§281, 286, 287; Laughlin, Business Entries and the Like, 46 Iowa L.Rev. 276 (1961). The model statutes and rules have sought to capture these factors and to extend their impact by employing the phrase "regular course of business," in conjunction with a definition of "business" far broader than its ordinarily accepted meaning.

In *Phillip M. Adams & Assocs., L.L.C. v Dell, Inc.*, 621 F.Supp. 2d 1173 (D. Utah 2009), the court found that an emailed report was admissible as business record pursuant to *Fed. R. Evid. 803(6)* because its writer's activities were regularly recorded and reported, and typewritten report was created and emailed same day as events reported.

 In *Residential Funding Co., LLC v Terrace Mortg. Co.*, 725 F.3d 910 (8th Cir. 2013)*,* reh den 2013 U.S. App LEXIS 18874 (8th Cir. 2013), documents on which buyer relied to prove its damage satisfied business records exception to rule against hearsay (records were made in course of regularly conducted business at or near time of repurchase demands).

These cases are also on point.  Mr. Miller runs various organizations such as Obamaballotchallenge.com and art2superpac.com, both of which operate as businesses that collect money and contribute to various causes.  Any statements that were recorded that were made by the donors were proof that damage was done, same as in *Residential Funding Co.*

Mr. Miller's Testimony is Admissible as They Establish Cause and Effect.

Regardless of the issues discussed above, Mr. Miller's testimony is still admissible as it establishes a cause and effect relationship between Defendant's statements, and the damage that

it caused.  Specifically, Mr. Miller can testify to the fact that once Defendant's defamatory

statements were made public that the donations tried up.

<u>Plaintiff Can Use the Depositions For Any Purpose</u>

Defendant claims that it made objections to Plaintiff's designations for the use of Judicial

Watch officers, directors, and its managing agent, Constance Ruffley under FRCP 32(b)(3). In

fact, a review of this so-called objection at Attachment 2 of Defendant's Memorandum of Law

shows that they did not take into account Rule 32(b)(3) and objected for the use of entire

depositions if witnesses were available to testify at trial. They did not raise any substantive

objections and therefore waived any substantive objections now made untimely during trial:

"Defendant objects to all of the plaintiff's designations to the extent the witnesses are available

to testify at trial." Defendant's Counter Designation of Deposition and Objections to Plaintiff's

Designations at pp. 2. In any event, contrary to the misleading representations of Defendant in its

brief, Plaintiff does not intend to play the entire deposition of Fitton, Ruffley or Orfanedes. In

addition, Plaintiff has no intention of presenting overly cumulative testimony and was able to

elicit much what it required through Mr. Farrell. However, it reserves the right as the trial

progresses to use whatever is necessary to reinforce and support testimony and to impeach

witnesses as necessary. At this time, Plaintiff does not even think he will need to call Paul

Orfanedes as a witness but reserves his right as necessary. As for Mr. Fitton, given Mr. Farrell's

testimony, his testimony will be significantly shorter. As for Mrs. Ruffley, based on what she

testifies to at trial, Plaintiff reserves the right to introduce whatever portion of her deposition is

necessary to present to the jury true and correct factual testimony or to impeach Ms. Ruffley's

statements. In this regard, the testimony Chris Farrell gave at trial varied in some respects

significantly from what he testified to at deposition. However, Mr. Farrell's testimony was so

distorted and outrageous that it was not necessary to introduce his deposition testimony as plaintiff believed that the jury could discern his lack of honesty from his feigned claims not to understand questions sometime posed five times, hostile demeanor, and contrived and obviously false and misleading statements under oath.

In addition, Ruffley's testimony will confirm that she is a managing agent, as she controls the operations of Judicial Watch's west coast office - its most important office outside of Washington, D.C. - and that she had the authority to go to the event where she offered and suggested the publication of defamatory statements about Plaintiff Klayman and then did not correct them upon the authority and direction of the directors and officers of Judicial, who wanted to harm and actually did severely harm Klayman. In short, Ruffley is a managing agent and her deposition may be used for any purpose.

Finally, Plaintiff should respectfully be able to determine the order of witnesses in his case in chief, particularly given the fact that Fitton and Ruffley will only appear Monday, two days after Plaintiff had requested their presence. That Fitton and Ruffley were not made available sooner was intended by Defendant to impede and prejudice the logical flow of witnesses in Plaintiff's case in chief in an attempt to obfuscate and confuse the jury by preventing an orderly presentation of the facts.

Conclusion.

For the forgoing reasons, Plaintiff submits that there is no reason that Mr. Miller's testimony should be excluded for trial, and indeed Defendant has withdrawn this non-meritorious argument. Mr. Miller had the right to choose Plaintiff, an attorney licensed in Florida, to represent him, and no authority cited by Defendant is to the contrary – because no such authority exists. And, Mr. Miller may testify what donors told him immediately after the defamatory

publications. Finally, the depositions of Tom Fitton, Paul Orfanedes, and Constance Ruffley may be used for any purpose as explained above. In any event, Plaintiff has no intention of prolonging this trial any longer than necessary and will not to use cumulative testimony when it does not prove necessary.


Dated: June 1, 2014


Respectfully Submitted,

*/s/ Larry Klayman*_____
LARRY KLAYMAN
2520 Coral Way, Suite 2027
Miami, FL 33145
(310) 595-0800
leklayman@gmail.com

Plaintiff Pro Se

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 1, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF filing system. I also certify that the foregoing document is being served this date on all counsel of record or pro se parties on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by the CM/ECF system or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Larry Klayman
LARRY KLAYMAN

Plaintiff Pro Se

## SERVICE LIST

**Douglas James Kress**
Schwed Kahle & Jenks, P.A.
11410 North Jog Road
Suite 100
Palm Beach Gardens, FL 33418
561-694-0070
Fax: 561-694-0057
Email: dkress@schwedpa.com

VIA CM/ECF

14